UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| In re: | Chapter 11 |
| TH PROPERTIES, L.P., *et al.*[1] | Case No. 09-13201 (SR) |
| Debtors. | (Jointly Administered) |
|  | Hearing: September 17, 2009 @ 10:00 a.m. |
|  | Objection Deadline: September 15, 2009 @ 4:00 p.m. |

**MOTION OF DEBTORS AND DEBTORS-IN-POSSESSION TO
(I) OBTAIN POST-PETITION FINANCING FROM WILMINGTON TRUST FSB
PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363 AND 364; (II) GRANT
MORTGAGES, SECURITY INTERESTS, LIENS, AND SUPERPRIORITY
CLAIMS PURSUANT TO 11 U.S.C. §§364(C)(1), 364(C)(2), 364(C)(4), 364(D)(1)
AND 364(E); AND (III) USE OF PROCEEDS OF POST-PETITION FINANCING
TO REPAY SECURED INDEBTEDNESS PURSUANT TO 11 U.S.C. § 363**

TH Properties, L.P. ("THPLP"), TH Properties of New Jersey, LP ("THPNJ"), Northgate Development Company, LP ("Northgate"), Morgan Hill Drive, LP ("Morgan Hill"), and TH Properties, Inc. ("TH Inc.") debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), by and through their undersigned counsel, hereby file this Motion of Debtors and Debtors-in-Possession to (I) Obtain Post-Petition Financing From Wilmington Trust FSB Pursuant to 11 U.S.C. §§105, 361, 362, 363, and 364; (II) Grant Mortgages, Security Authorizing the Debtors to Use Proceeds of Post-Petition Financing to Repay Secured Indebtedness Pursuant to 11 U.S.C.§§ 364(c)(1), 364(c)(2), 364(c)(3), 364 (d)(1), and 364(e), and (III) Use of Proceeds of Post of Post-Petition Financing to Repay Secured Indebtedness Pursuant to 11 U.S.C. §363 (the "Motion"), and in support thereof, states as follows:

---

[1] The Debtors and the last four digits of their taxpayer identification numbers are: TH Properties, L.P. (4545); TH Properties of New Jersey, L.P. (5640); Northgate Development Company, LP (8803); Morgan Hill Drive, LP (4624); TH Properties, Inc. (1947). The principal place of business for the Debtors is 345 Main Street, Harleysville, PA 19438.

2465986v1

## JURISDICTION, VENUE, AND STATUTORY BASIS

1. The Court has jurisdiction over this matter under 28 U.S.C. §§157 and 1334. This is a core proceeding under 28 U.S.C. §157(b)(2).

2. Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§1408 and 1409.

3. The statutory predicates for the relief requested herein are sections 105(a), 361, 362, 363, and 364 of title 11 of the United States Code, 11 U.S.C. §§101-1532 (the "Bankruptcy Code"), and Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure ("Federal Rules"). This is a request for a final hearing.

## FACTUAL BACKGROUND

### A. General Background

4. On April 30, 2009 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

5. The Debtors continue as debtors-in-possession pursuant to sections 1107 and 1108 Bankruptcy Code.

6. An Official Committee of Unsecured Creditors (the "Committee") was formed by the Office of the United States Trustee ("UST") on May 22, 2009. No trustee or examiner has been appointed.

### B. The Debtors' History and Operations

7. The Debtors are part of a family of fully integrated homebuilder and real estate services companies (collectively, "THP") engaged in the acquisition, development, construction and sales with respect to premier housing communities located in Southeastern Pennsylvania and New Jersey.

2

8. THP was founded by brothers Todd and Tim Hendricks in 1992 with the goal of creating affordable, quality new homes to first time home buyers and first time "move-up" buyers. At its peak in 2005, THP delivered over 600 homes and generated over $170 million. It currently remains one of the largest privately-owned homebuilders in the Philadelphia and Lehigh Valley areas and has been selected to *Inc. Magazine's* list of 500 fastest growing private companies.

9. THP sells homes in residential communities consisting of single and multi-family homes averaging about $336,000 for single-family homes to $246,000 for town/twin homes. At the height of its success, THP owned and controlled over 7,000 lots, and by 2007 was selling a variety of projects in 18 active communities.

10. THP projects typically start with the acquisition of raw land. The company then designs each project, obtains the necessary permits and approvals for the land-development, prepares the land for construction, and finally constructs the actual homes, town homes, condominiums, or a combination thereof, depending upon the project. As is typical with larger scale homebuilders, other affiliated companies market and sell the homes, and/or provide brokerage services as well as title insurance, closing services, and mortgage banking services. This efficient acquisition, development and sales model contributed significantly to THP's bottom line and enabled it to sell affordable, quality housing, consistent with its goals.

11. At the height of its operations, THP employed over 250 employees in site infrastructure, construction, sales, customer service and administration. The combination of the recent recession, severe slump in the housing market, as well as the credit crisis forced THP to cease operating in mid April as part of its ongoing efforts to reorganize its core business and restructure its lender obligations. Shortly thereafter, THP filed for Chapter 11 protection.

2465986v1

12. By reorganizing its business and restructuring its financial obligations, it is THP's goal to complete a limited number of existing projects ("Projects") in order to fulfill its commitments to deliver completed quality homes to existing purchasers who have entered into agreements of sale, as well as to market and sell the remaining units within these Projects. These include Biltmore Estates, Burbank Grove, Northgate, the Village at Wynstone, Whitfield, Coddington View, Kingston, Barton Ridge, Westport Farms, Hawthorne Estates, Cliffside Manor and Belmont Estates.

C. **Post-Petition Developments**

13. During the post-petition period, the Debtors have entered into stipulations for use of cash collateral with Continental Bank and Susquehanna Bank for the completion and sale of homes at Westport Farms (Hatfield) and Belmont/Hawthorne.

14. The Debtors have also obtained post-petition debtor-in-possession financing from Hyperion Bank to complete and sell additional homes at Cliffside Manor.

15. Since then, the Debtors have completed three homes, and they are in the process of completing an additional 9 homes, 6 of which are under contract.

16. During these bankruptcy cases, the Debtors have endeavored to reach agreement with their pre-petition project lenders for debtor-in-possession financing to complete each project that had ongoing construction as of the Petition Date. Currently, negotiations are ongoing (and in some cases, term sheets and/or draft loan documents have been circulated) with VIST, IndyMac Bank, National Penn, Harleysville National and Bank of America, with respect to completing existing homes and/or completing full project build outs. Additionally, the Debtors have reached a deal with Wilmington Trust FSB ("Wilmington Trust") for post-petition financing as set forth herein.

2465986v1

17. Further, the Debtors and the Committee have been engaged in meaningful and ongoing discussions regarding the formulation of an exit strategy from bankruptcy, and have agreed on a framework for a plan, the details of which are being negotiated.

### D. Wilmington Trust- Northgate I/Wynstone

18. As of the Petition Date, Northgate was truly and justly indebted to Wilmington Trust in the outstanding principal amount of $390,713.49 (the "Northgate Loan"), together with all accrued and unpaid interest and fees and expenses incurred in connection therewith pursuant to certain loan documents executed by and between Wilmington Trust and Northgate (the "Northgate Loan Documents") as described in more detail in the proposed order annexed hereto.

19. The Northgate Loan is secured by a first priority lien in the property known as Phase I, Northgate, in Upper Hanover Township, Montgomery County, Pennsylvania ("Northgate I") owned by Northgate (the "Northgate Collateral").

20. Northgate is a substantially complete development of single homes and townhomes. There are only six (6) homes remaining that need to be completed consisting of five (5) single homes and one townhome. Northgate I also includes a number of unimproved lots.

21. Additionally, as of the Petition Date, Wynstone Development Group, LP, a non-debtor affiliated company of the Debtors, was truly and justly indebted to Wilmington Trust in the outstanding principal amount of $2,579,046.86 (the "Wynstone Loan"), together with all accrued and unpaid interest and fees and expenses incurred in connection therewith pursuant to those certain loan documents executed by and between Wilmington Trust and Wynstone Development Group, LP ("Wynstone") (the "Wynstone Loan Documents"), as described in more detail in the proposed order annexed hereto.

2465986v1

22. The Wynstone Loan is secured by a first priority lien in the property known as the Davidheiser Property in New Hanover Township, Montgomery County, Pennsylvania (the "Wynstone Collateral"), as well as by a lien on Northgate I.

23. The Debtors have been in discussions with Wilmington Trust both pre- and post-petition regarding debtor-in-possession financing ("DIP Financing") sufficient to permit the Debtors to complete the remaining homes at Northgate I, and have reached an agreement to obtain DIP Financing from Wilmington Trust to complete the homes in accordance with a budget ("Budget") and negotiated loan documents substantially in the form and substance of the Debtor-in-Possession Construction Loan and Security Agreement, the Open-End Mortgage, Security Agreement, and Fixture Agreements, Promissory Note, and Unconditional Guaranty and Suretyship Agreements (collectively, the "Post-Petition Financing Documents") attached hereto as Exhibit A. A true and correct copy of the Budget is attached hereto as Exhibit B.

24. Given that the houses involved are all under construction, but construction has been suspended, and given that there are buyers that could be lost, it is imperative that these be completed without further delay. Accordingly, to preserve the value of these partially completed houses and the sales, which benefits all creditors as well as Wilmington Trust, the Debtors now seeks to move forward on the terms set forth in the Motion and the Post-Petition Financing Documents.

25. The Post-Petition Financing has two parts. Pursuant to the terms of the Budget and Post-Petition Financing Documents, the Debtors are authorized to borrow from Wilmington Trust up to an aggregate principal amount not to exceed $600,000 to complete the sale of six (6) homes located at Northgate I, as well as completion of improvements at Northgate I. The DIP Financing shall be disbursed in accordance with the Budget, subject to the

provisions of adequate protection of Wilmington Trust's interests in the DIP Collateral and the terms and conditions of the Post-Petition Financing Documents, provided that an initial draw may not exceed $155,000.00.

26. As set forth in more detail in the Budget, the proceeds of the DIP Financing shall be disbursed towards the following, among other things: $327,000 for the hardcosts of construction (varying per home); $129,000 for overhead ($21,500 per home); $48,000 for professional carveout ($8,000 per home); $36,000 for interest reserve ($6,000 per home); $12,000 for the bank commitment fee ($2,000 per home); and $48,000 for payment of the bank's professional fees ($8,000 per home), subject to the terms and conditions of the Post-Petition Financing Documents.

27. Additionally, Wilmington Trust agrees to make available an additional $150,000 for an additional lot, if the Debtors are able to obtain a firm agreement of sale for such additional lot, to be distributed as follows: $128,500 for construction and hardcosts with $25,000 to be escrowed for future sitework to be paid out of the proceeds of the sale of the home. Thus, the total amount of the DIP Financing would be in an amount not to exceed $750,000.

28. In exchange for DIP Financing, Wilmington Trust will receive a first priority senior priming lien in all of the Debtors' pre- and post-petition property constituting Northgate I, which liens shall prime any liens, claims or encumbrances on such property. Additionally, Wilmington Trust will receive a second priority lien on the Wynstone Collateral.

29. Upon information and belief, on the Petition Date, the Debtors had no equity in Northgate. By finishing these homes, the Debtors eliminate the debt owed to Wilmington Trust on the Northgate Loan, are able to satisfy their contractual obligations to the Northgate residents and homebuyers, and will obtain much needed cash to fund payroll and

2465986v1

direct operating services, and obtain goods and services. Accordingly, the relief requested herein is in the best interest of the estates and parties-in-interest, including the homeowners.

## REQUESTED RELIEF

30. The Debtors are seeking authority under sections 105, 361, 362, 363(c), 363(e), 364(c)(1), 364(c)(2), 364(c)(3), 364 (d)(1), and 364(e) of the Bankruptcy Code to obtain DIP Financing with Wilmington Trust Bank in the aggregate amount of up to $600,000 with an additional $150,000 made available to the Debtors in accordance with the Budget and Post-Petition Financing Documents.

31. In exchange for DIP Financing, Wilmington Trust will receive a first priority senior priming lien in all of the Debtors' pre- and post-petition property constituting Northgate I, which liens shall prime any liens, claims or encumbrances on such property. Additionally, Wilmington Trust will receive a second priority lien on the Wynstone Collateral. As set forth above, at the time of the Petition Date, the Debtors had no equity in the Northgate Collateral. Accordingly, no party is disadvantaged by the granting of a super-priority primary lien. The Debtors have not been able to obtain post-petition credit for the completion of Northgate otherwise. Further, Wilmington Trust's pre-petition liens will be adequately protected pursuant to the proposed order.

32. The Debtors have made reductions in sales and expense amounts so that they can compete in the current market place.

33. The Budget details all home construction costs and full payment of the outstanding principal balance of the Northgate Loan.

2465986v1

## LEGAL ARGUMENT

34. The Debtors propose to obtain financing in accordance with the Budget and Post-Petition Financing Documents by providing security interests and liens as set forth above pursuant to sections 364(c) and (d) of the Bankruptcy Code.

### Standard for Obtaining Credit Under Section 364(c) of the Bankruptcy Code

35. Section 364(c) of the Bankruptcy Code allows the obtaining of credit or incurrence of debt on an unsecured superpriority basis, or secured by liens on unencumbered property, and junior liens on encumbered property. See 11 U.S.C, § 364(c). The statutory requirement for obtaining post-petition credit under section 364(c) is a finding, made after notice and hearing, that the debtors are "unable to obtain unsecured credit allowable under section 503(b)(1) of [the Bankruptcy Code]." 11 U.S.C. § 364(c); see In re Ames Dep't Stores, Inc., 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990) (debtor must show that it has made a reasonable effort to seek other sources of financing under sections 364(a) and (b) of the Bankruptcy Code); In re Crouse Group, Inc., 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (secured credit under section 364(c)(2) of the Bankruptcy Code is authorized, after notice and a hearing, upon showing that unsecured credit cannot be obtained).

36. Courts have applied the following three-part test to determine whether a debtor is entitled to financing under section 364(c) of the Bankruptcy Code:

    (a)    the debtor is unable to obtain unsecured credit under section 364(b), i.e., by allowing a lender only an administrative claim;

    (b)    the credit transaction is necessary to preserve the assets of the estate; and

    (c)    the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender.

In re Crouse Group, Inc., 71 B.R. at 549. As discussed below, each of these elements is satisfied.

2465986v1

37. Here, the Debtors have been unable to obtain financing on more favorable terms from sources other than Wilmington Trust in order to complete the homes at Northgate I, and have been unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors also have been unable to obtain superpriority or secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Debtors granting to Wilmington Trust, subject to the carve-out as provided for herein, liens on a superpriority and/or equal basis under the terms and conditions set forth herein and in the annexed Order.

38. Moreover, the DIP Financing is necessary to preserve the estate assets as the homes at Northgate I can be concluded in the short term and turned over to homeowners. This is the one of several Projects the Debtors hope to obtain financing to complete and as such, is critical to the Debtors' successful reorganization efforts.

39. Finally, the terms are fair and reasonable. They allow the Debtors to complete the homes at Northgate I in an efficient and timely manner, provide for a carve-out to professionals, and pay off the Northgate debt.

**Standards for Obtaining Credit Under Section 364(d) of the Bankruptcy Code**

40. If a debtor is unable to obtain credit under the provisions of section 364(c) of the Bankruptcy Code, the debtor may obtain credit secured by a "priming" senior or equal lien on property of the estate that is already subject to a lien under section 364(d) of the Bankruptcy Code. Specifically, section 364(d)(1) of the Bankruptcy Code provides that a court may, after notice and a hearing, authorize the obtaining or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—

    (a) the trustee is unable to obtain such credit otherwise; and

10

  (b)  there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d); see also In re 495 Central Park Ave. Corp., 136 B.R. 626, 631-32 (Bankr, S.D.N.Y. 1992) (allowing post-petition lenders' liens to prime existing security interests because (i) debtor was unable to obtain financing otherwise and (ii) debtor's use of proceeds would provide adequate protection to existing secured creditors by increasing value of property securing their claims). As set forth below, unsecured credit was simply not available to the Debtors, and Wilmington Trust is being provided ample adequate protection of its interests in the pre-petition collateral.

## Adequate Protection Standards

41. What constitutes sufficient adequate protection, whether for a priming lien under section 364(d) or for the use of cash collateral under section 363, is fact-specific and is determined on a case-by-case basis. See In re Mosello, 195 B.R. 277, 288-89 (Bankr. S.D.N.Y. 1996). "Its application is left to the vagaries of each case." Id. at 289 (quoting In re Beker Indus. Corp., 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986)). Examples of adequate protection are provided in section 361 of the Bankruptcy Code and include, but are not limited to: (1) "periodic cash payments" to the extent that such use "results in a decrease in value of such entity's interest in the property;" (2) "additional or replacement lien[s] to the extent that the use [of cash collateral] results in a decrease in the value of such entity's interest in such property," and (3) "granting such other relief... as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property," 11 U.S.C. § 361.

42. Bankruptcy courts have broad flexibility under section 361 in deciding what constitutes adequate protection:

2465986v1

> This section specifies the means by which adequate protection may be provided. It does not require the court to provide it. To do so would place the court in an administrative role. Instead, the trustee or debtor in possession will provide or propose a protection method. If the party that is affected by the proposed action objects, the court will determine whether the protection provided is adequate. The purpose of this section is to illustrate means by which it may be provided and to define the contours of the concept.

H.R. Rep. No, 95-595, at 338, 95th Cong., 1st Sess. 0977); see also Resolution Trust Corp. v. Swedeland Dev. Group. Inc. (In re Swedeland Dev. Group. Inc.), 16 F.3d 552, 564 (3d Cir. 1994) (Although section 361 provides examples of adequate protection, it allows "courts discretion in fashioning the protection provided to a secured party. Therefore, a determination of whether there is adequate protection is made on a case by case basis.") (citation omitted); In re 495 Central Park Ave. Corp., 136 B.R, at 631 ("The statute confers upon 'the parties and the courts flexibility by allowing such other relief as will result in the realization by the protected entity of the value of its interest in the property involved.'") (quoting H.R. Rep. No. 95-595, at 340).

43. The "Court is not obligated to protect the creditor better than it did itself when making the loan and obtaining security." In re Heatron, Inc., 6 B.R. 493,496 (Bankr. W.D. Mo. 1980). The interest to be protected by virtue of the adequate protection requirement is the lesser of the amount of the debt or the value of assets securing the debt as of the petition date. See Bankers Life Ins. Co. of Nebraska v. Alyucan Interstate Corp. (In re Alyucan Interstate Corp.), 12 B.R. 803, 808 (Bankr. D. Utah 1981) ("[T]he 'interest in property' entitled to protection is not measured by the amount of the debt but by the value of the lien."). Here, the adequate protection provided to Wilmington Trust comes in the form of replacement liens and paydown of the Wynstone loan and the repayment of the Northgate loan.

12

2465986v1

### Repayment of the Wilmington Trust Pre-Petition Debt

44.     Although established in the context of a proposed sale, the "business judgment" standard has been applied in non-sale situations. See, e.g., Institutional Creditors of Continental Air Lines. Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines, Inc.), 780 F.2d 1223, 1226 (5th Cir. 1986) (court applied "business judgment" standard in context of proposed "use" of estate property). Moreover, pursuant to section 105, the Court has expansive equitable powers to fashion any order or decree in the interest of preserving or protecting the value of the Debtors' assets. See Chinichian v. Campolongo (In re Chinichian), 784 F.2d 1440, 1443 (9th Cir, 1986) (noting that Section 105 permits "the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code").

45.     As noted above, the proposed repayment of the Debtors' pre-petition obligations to Wilmington Trust in connection with Northgate Loan and the partial paydown of the Debtors' pre-petition obligations to Wilmington Trust in connection with the Wynstone loan constitutes adequate protection and is supported by sound business judgment. The Debtors have been investigating other sources of financing to no avail and are already have a relationship with Wilmington Trust. The proposal set forth herein is in the best interests of the estates as it provides for the prompt start-up of operations at Northgate I and the sale of homes, thereby generating cash for the estate, as well as the payoff of Wilmington Trust's debt.

### NOTICE

46.     Notice of this Motion is being provided by regular mail to: (i) UST; (ii) counsel for the Committee; (iii) counsel for Wilmington Trust; (iv) all parties identified by the Debtors as possibly asserting mechanic's liens at Northgate I; and (v) the parties who have filed

2465986v1

a request for notices under Bankruptcy Rule 2002. The Debtors submit that, under the circumstances, no other or further notice is required.

### NO PREVIOUS REQUEST

47. No previous request for the relief requested herein has been made to this or any other court.

### CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an Order in substantially the form submitted herewith, and grant the Debtors such other and further relief as is just and proper.

| | |
|---|---|
| Dated: August 28, 2009<br>Philadelphia, Pennsylvania | **MONTGOMERY, MCCRACKEN,**<br>**WALKER & RHOADS, LLP** |

BY: _/s/ Natalie D. Ramsey_
Natalie D. Ramsey
Richard G. Placey
Joseph O'Neil, Jr.
Laurie A. Krepto
123 South Broad Street
Philadelphia, PA 19109
Tel.: (215) 772-1500/ Fax: (215) 772-7620

*Counsel for the Debtors and Debtors-in-Possession*

14

2465986v1