## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| TH PROPERTIES, L.P., *et al.*[1] | : | Case No. 09-13201 (SR) |
|  | : | (Jointly Administered) |
| Debtors. | : |  |
|  | : |  |
|  | : | *Expedited Consideration Requested* |

### MOTION OF DEBTORS AND DEBTORS-IN-POSSESSION FOR AN INTERIM ORDER AUTHORIZING THE DEBTORS TO: (I) OBTAIN POST-PETITION FINANCING FROM HARLEYSVILLE NATIONAL BANK PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363 364 AND FED. R. BANKR. P. 4001(c)(2); AND (II) USE PROCEEDS OF POST-PETITION FINANCING TO REPAY SECURED INDEBTEDNESS PURSUANT TO 11 U.S.C. § 363

### PROVISIONS THAT IMPLICATE LOCAL RULE 1002-4

**Local Rule 1002-4 requires that certain provisions contained in motions requesting use of post-petition financing be highlighted. The Debtors note that the DIP Financing Documents and/or proposed order contain provisions dealing with Local Rule 1002-4 (2), (3), (8), (9) and (13) as follows: (i) findings of fact relating to the validity, perfection and amount of Harleysville National Bank's liens; (ii) findings of fact relating to the priority of Harleysville National Bank's liens; (iii) the automatic termination or modification of the section 362 of the Bankruptcy Code upon an event of default; and (iv) the granting of a superpriority lien as set forth at length herein.**

TH Properties, L.P. ("THPLP"), TH Properties of New Jersey, LP ("THPNJ"), Northgate

Development Company, LP ("Northgate"), Morgan Hill Drive, LP ("Morgan Hill"), and TH

Properties, Inc. ("TH Inc.") debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors"), by and through their undersigned counsel, hereby file this Motion

of Debtors and Debtors-in-Possession for an Interim Order Authorizing the Debtors To: (I)

---

[1]   The Debtors and the last four digits of their taxpayer identification numbers are: TH Properties, L.P. (4545); TH Properties of New Jersey, L.P. (5640); Northgate Development Company, LP (8803); Morgan Hill Drive, LP (4624); TH Properties, Inc. (1947). The principal place of business for the Debtors is 345 Main Street, Harleysville, PA 19438.

Obtain Post-Petition Financing From Harleysville National Bank ("Harleysville") Pursuant to 11

U.S.C. §§105, 361, 362, 363, 364 and Fed.R. Bankr. P. 4001(c)(2); and (II) Use Proceeds of Post

of Post-Petition Financing to Repay Secured Indebtedness Pursuant to 11 U.S.C. §363 (the

"Motion"), and in support thereof, state as follows:

## JURISDICTION, VENUE, AND PREDICATES

1.    The Court has jurisdiction over this matter under 28 U.S.C. §§157 and

1334.  This is a core proceeding under 28 U.S.C. §157(b)(2).

2.    Venue of these cases and this Motion in this district is proper under 28

U.S.C. §§1408 and 1409.

3.    The statutory predicates for the relief requested herein are sections 105(a),

361, 362, 363, and 364 of title 11 of the United States Code, 11 U.S.C. §§101-1532 (the

"Bankruptcy Code") and Fed.R.Bankr.P. 4001(c)(2).

## FACTUAL BACKGROUND

### A.    General Background

4.    On April 30, 2009 (the "Petition Date"), the Debtors filed voluntary

petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

5.    The Debtors continue as debtors-in-possession pursuant to sections 1107

and 1108 Bankruptcy Code.

6.    An Official Committee of Unsecured Creditors (the "Committee") was

formed by the Office of the United States Trustee ("UST") on May 22, 2009.  No trustee or

examiner has been appointed.

### B.    The Debtors' History and Operations

7.    The Debtors are part of a family of fully integrated homebuilder and real

estate services companies (collectively, "THP") engaged in the acquisition, development,

construction and sales with respect to premier housing communities located in Southeastern Pennsylvania and New Jersey.

8.    THP was founded by brothers Todd and Tim Hendricks in 1992 with the goal of creating affordable, quality new homes to first time home buyers and first time "move-up" buyers. At its peak in 2005, THP delivered over 600 homes and generated over $170 million. It currently remains one of the largest privately-owned homebuilders in the Philadelphia and Lehigh Valley areas and has been selected to *Inc. Magazine's* list of 500 fastest growing private companies.

9.    Prior to the Petition Date, THP sold homes in residential communities consisting of single and multi-family homes averaging about $336,000 for single-family homes to $246,000 for town/twin homes. At the height of its success, THP owned and controlled over 7,000 lots, and by 2007 was selling a variety of projects in 18 active communities.

10.    The combined events of the recession, severe slump in the housing market, as well as the credit crisis, forced THP to cease operating in mid-April as part of its ongoing efforts to reorganize its core business and restructure its lender obligations. Shortly thereafter, THP filed for Chapter 11 protection.

11.    By reorganizing its business and restructuring its financial obligations, it is THP's goal to complete a limited number of existing projects ("Projects") in order to fulfill its commitments to deliver completed quality homes to existing purchasers who have entered into agreements of sale, as well as to market and sell the remaining units within these Projects. These include Biltmore Estates, Burbank Grove, Northgate, the Village at Wynstone, Whitfield, Coddington View, Kingston, Westport Farms, Hawthorne Estates, Cliffside Manor and Belmont Estates.

3

**C.    Post-Petition Developments**

12.    During the post-petition period, the Debtors have entered into stipulations for use of cash collateral with Continental Bank and Susquehanna Bank for the completion and sale of homes at Westport Farms (Hatfield) and Belmont/Hawthorne.

13.    The Debtors have also obtained final post-petition debtor-in-possession financing from Hyperion Bank to complete and sell additional homes at Cliffside Manor and interim post-petition financing with VIST Bank to complete and sell homes at Kingston Hill Phase IV.

14.    Since then, the Debtors have completed and delivered three homes, and they are in the process of completing an additional 9 homes, 6 of which are under contract.

15.    During these bankruptcy cases, the Debtors have endeavored to reach agreement with their pre-petition project lenders for debtor-in-possession financing to complete each project that had ongoing construction as of the Petition Date.  Currently, negotiations are ongoing (and in some cases, term sheets and/or draft loan documents have been circulated) with IndyMac Bank, National Penn and Bank of America, with respect to completing existing homes and/or completing full project build outs.  Additionally, the Debtors have reached agreement with Wilmington Trust FSB for final post-petition financing which is pending before the Court.

16.    The Debtors now seek the Court's authorization to obtain additional post-petition financing from Harleysville in the aggregate amount of $588,650.00, as set forth herein.

**D.    Harleysville and Coddington View**

17.    As of the Petition Date, the Debtors were indebted to Harleysville in the an amount exceeding $6,000,000, including accrued and unpaid interest with respect thereto and additional reasonable fees, costs and expenses outstanding under two Mortgage Notes in

4

connection with the Debtors' residential project known as Coddington View in Upper Pottsgrove

Township, Montgomery County, Pennsylvania (the "Harleysville Coddington View Loan"),

pursuant to those certain loan documents executed by and between Harleysville and certain of

the Debtors (the "Harleysville Coddington View Loan Documents"). The Debtors are also

indebted to Harleysville for loans extended in connection with the Debtors' projects known as

Village at Wynstone, Fleet Maintenance Building, Headquarters Property, Northgate, and several

additional properties. However, such loans and projects are not the subject of this Motion.

        18.    The Harleysville Coddington View Loan is secured by, *inter alia,* a first

priority lien in and to the all of the non-released land and improvements at the property known as

Coddington View.

        19.    Coddington View is a partially complete development. The ten (10) units

subject to this Motion need to be completed. Those dwellings, which are known as Units 16A,

16B, 16C, 16D, 16E, 16F, 19B, 19D, 19E and 19F, are partially-constructed units, not currently

subject to agreements of sale.

        20.    The Debtors have been in discussions with Harleysville both pre- and

post-petition regarding debtor-in-possession financing ("DIP Financing") sufficient to permit the

Debtors to complete these ten homes at Coddington View, and to "close in" an additional unit to

protect it from weather damage. The Debtors have reached an agreement to obtain DIP

Financing from Harleysville in accordance with a budget ("Budget") and negotiated loan

documents, in an amount up to $588,650.00. A true and correct copy of the Budget is attached

hereto as **Exhibit A**. True and correct copies of drafts of the Debtor-in-Possession Construction

Loan Agreement, and any other related documents (collectively, the "Post-Petition Financing

Documents") are attached hereto as **Exhibit B**. These drafts are subject to further negotiation and review by Harleysville and the Debtors.

21.     Given that construction has been suspended, and given that there are buyers that could be lost in the event the homes under contract are not completed, it is imperative that work commence at Coddington View without further delay, especially since winter is fast approaching, and weather may become a factor, at least with respect to partially completed homes. Accordingly, to preserve the value of these partially completed houses as well as the sales, which benefit the Debtors' estates, their creditors, as well as Harleysville, the Debtors now seek to move forward on the terms set forth in this Motion and in the drafts of the Post-Petition Financing Documents, subject to further negotiation and review by Harleysville and the Debtors, which should be completed soon.

22.     The DIP Financing permits the Debtors in the short term to complete work on homes that are in progress. Upon closing of a sale, the proceeds shall be used to pay down the Debtors' obligations to Harleysville as set forth in the Budget and pursuant to the Post-Petition Financing Documents, subject to the provisions of adequate protection of Harleysville in the DIP Collateral and the terms and conditions of the Post-Petition Financing Documents.

23.     As set forth in more detail in the Budget, the proceeds of the DIP Financing shall be disbursed towards the following, among other things: $488,650 for the hard costs of construction (varying per home); and $100,000 for overhead, subject to the terms and conditions of the Post-Petition Financing Documents.

24.     As of the Petition Date, the Debtors submit that they had no equity in Coddington View. By finishing these homes, the Debtors will pay off a portion of the Harleysville Coddington View Loan, be able to satisfy their contractual obligations to the

6

Coddington View residents and homebuyers, obtain much needed cash to fund payroll and direct

operating services, and obtain necessary goods and services. Accordingly, it is respectfully

submitted that the relief requested herein is in the best interest of the estates and all parties-in-

interest.

<strong><u>REQUESTED RELIEF</u></strong>

25.    The Debtors are seeking authority under sections 105, 361, 362, 363(c),

363(e), 364(c)(1), 364(c)(2), 364(c)(3), 364 (d)(1), 364(e) of the Bankruptcy Code and Fed.R.

Bankr.P. 4001(c)(2) to obtain DIP Financing with Harleysville in the aggregate amount of up to

$588,650.00 in accordance with the Budget and Post-Petition Financing Documents.

26.    In exchange for DIP Financing, Harleysville will receive a first priority

senior priming lien in all of the non-released land and located at Coddington View, which liens

shall prime any liens, claims or encumbrances on such property. As set forth above, at the time

of the Petition Date, Harleysville's claim was undersecured. Accordingly, no party is

disadvantaged by the granting of a super-priority primary lien. Additionally, Harleysville shall

receive a super priority administrative claim. It is submitted that no party will be disadvantaged

by this claim as well, since the Debtors have made reductions in sales and expense amounts so

that they can compete in the current market place and the Budget details all home construction

costs, including repayment of all amounts advanced and outstanding under the DIP financing and

the Harleysville Coddington View Loan.

<strong><u>LEGAL ARGUMENT</u></strong>

27.    The Debtors propose to obtain financing in accordance with the Budget

and Post-Petition Financing Documents by providing security interests and liens as set forth

above pursuant to sections 364(c) and (d) of the Bankruptcy Code.

7

## Standard for Obtaining Credit Under Section 364(c) of the Bankruptcy Code

28.     Section 364(c) of the Bankruptcy Code allows the obtaining of credit or

incurrence of debt on an unsecured superpriority basis, or secured by liens on unencumbered

property, and junior liens on encumbered property. See 11 U.S.C, § 364(c). The statutory

requirement for obtaining post-petition credit under section 364(c) is a finding, made after notice

and hearing, that the debtors are "unable to obtain unsecured credit allowable under section

503(b)(l) of [the Bankruptcy Code]." 11 U.S.C. § 364(c); see In re Ames Dep't Stores, Inc., 115

B.R. 34, 37 (Bankr. S.D.N.Y. 1990) (debtor must show that it has made a reasonable effort to

seek other sources of financing under sections 364(a) and (b) of the Bankruptcy Code); In re

Crouse Group, Inc., 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (secured credit under section

364(c)(2) of the Bankruptcy Code is authorized, after notice and a hearing, upon showing that

unsecured credit cannot be obtained).

29.     Courts have applied the following three-part test to determine whether a

debtor is entitled to financing under section 364(c) of the Bankruptcy Code:

(a)     the debtor is unable to obtain unsecured credit under section
        364(b), i.e., by allowing a lender only an administrative claim;

(b)     the credit transaction is necessary to preserve the assets of the
        estate; and

(c)     the terms of the transaction are fair, reasonable, and adequate,
        given the circumstances of the debtor-borrower and the proposed
        lender.

In re Crouse Group, Inc., 71 B.R. at 549.  As discussed below, each of these elements is satisfied.

30.     Here, the Debtors have been unable to obtain financing on more favorable

terms from sources other than Harleysville in order to complete the homes at Coddington View,

and have been unable to obtain adequate unsecured credit allowable under section 503(b)(l) of

the Bankruptcy Code as an administrative expense. The Debtors also have been unable to obtain

8

superpriority or secured credit allowable under sections 364(c)(l), 364(c)(2) and 364(c)(3) of the

Bankruptcy Code without the Debtors granting to Harleysville liens on a superpriority and/or

equal basis under the terms and conditions set forth herein and in the annexed Order.

31.    Moreover, the DIP Financing is necessary to preserve the estate assets as

several of the homes at Coddington View can be concluded in the short term and delivered to

homeowners, prior to winter. As these homes are sold, it is anticipated that additional

agreements of sale will be executed with the Debtors and the remaining homes will be sold. As

this is the one of several Projects the Debtors intend to complete and is part of the overall

completion of Coddington View, it is critical to the Debtors' successful reorganization efforts.

32.    Finally, the terms are fair and reasonable. They allow the Debtors to

complete certain homes at Coddington View in an efficient and timely manner and pay off a

portion of the debt owed to Harleysville under the Harleysville Coddington View Loan.

### Standards for Obtaining Credit Under Section 364(d) of the Bankruptcy Code

33.    If a debtor is unable to obtain credit under the provisions of section 364(c)

of the Bankruptcy Code, the debtor may obtain credit secured by a "priming" senior or equal lien

on property of the estate that is already subject to a lien under section 364(d) of the Bankruptcy

Code. Specifically, section 364(d)(l) of the Bankruptcy Code provides that a court may, after

notice and a hearing, authorize the obtaining or the incurring of debt secured by a senior or equal

lien on property of the estate that is subject to a lien only if—

(a)    the trustee is unable to obtain such credit otherwise; and

(b)    there is adequate protection of the interest of the holder of the lien
on the property of the estate on which such senior or equal lien is
proposed to be granted.

11 U.S.C. § 364(d); see also In re 495 Central Park Ave. Corp., 136 B.R. 626, 631-32 (Bankr.

S.D.N.Y. 1992) (allowing post-petition lenders' liens to prime existing security interests because

(i) debtor was unable to obtain financing otherwise and (ii) debtor's use of proceeds would

provide adequate protection to existing secured creditors by increasing value of property

securing their claims). As set forth below, unsecured credit was simply not available to the

Debtors, and Harleysville is being provided adequate protection of its interests in the pre-petition

collateral.

## Adequate Protection Standards

34.     What constitutes sufficient adequate protection, whether for a priming lien

under section 364(d) or for the use of cash collateral under section 363, is fact-specific and is

determined on a case-by-case basis. See In re Mosello, 195 B.R. 277, 288-89 (Bankr. S.D.N.Y.

1996). "Its application is left to the vagaries of each case." Id. at 289 (quoting In re Beker Indus.

Corp., 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986)). Examples of adequate protection are provided

in section 361 of the Bankruptcy Code and include, but are not limited to: (1) "periodic cash

payments" to the extent that such use "results in a decrease in value of such entity's interest in

the property;" (2) "additional or replacement lien[s] to the extent that the use [of cash collateral]

results in a decrease in the value of such entity's interest in such property," and (3) "granting

such other relief . . . as will result in the realization by such entity of the indubitable equivalent of

such entity's interest in such property," 11 U.S.C. § 361.

35.     Bankruptcy courts have broad flexibility under section 361 in deciding

what constitutes adequate protection:

> This section specifies the means by which adequate protection may be provided.
> It does not require the court to provide it. To do so would place the court in an
> administrative role. Instead, the trustee or debtor in possession will provide or
> propose a protection method. If the party that is affected by the proposed action
> objects, the court will determine whether the protection provided is adequate. The
> purpose of this section is to illustrate means by which it may be provided and to
> define the contours of the concept.

10

H.R. Rep. No, 95-595, at 338, 95th Cong., 1st Sess. 0977); see also Resolution Trust Corp. v.

Swedeland Dev. Group. Inc. (In re Swedeland Dev. Group. Inc.), 16 F.3d 552, 564 (3d Cir.

1994) (Although section 361 provides examples of adequate protection, it allows "courts

discretion in fashioning the protection provided to a secured party.  Therefore, a determination of

whether there is adequate protection is made on a case by case basis.") (citation omitted); In re

495 Central Park Ave. Corp., 136 B.R, at 631 ("The statute confers upon 'the parties and the

courts flexibility by allowing such other relief as will result in the realization by the protected

entity of the value of its interest in the property involved.'") (quoting H.R. Rep. No. 95-595, at

340).

36.    The "Court is not obligated to protect the creditor better than it did itself

when making the loan and obtaining security."  In re Heatron, Inc., 6 B.R. 493,496 (Bankr. W.D.

Mo. 1980).  The interest to be protected by virtue of the adequate protection requirement is the

lesser of the amount of the debt or the value of assets securing the debt as of the petition date.

See Bankers Life Ins. Co. of Nebraska v. Alyucan Interstate Corp. (In re Alyucan Interstate

Corp.), 12 B.R. 803, 808 (Bankr. D. Utah 1981) ("[T]he 'interest in property' entitled to

protection is not measured by the amount of the debt but by the value of the lien.").

37.    Here, the superpriority liens, as set forth herein, provide adequate

protection to Harleysville and therefore satisfy these requirements.

### Repayment of the Harleysville Pre-Petition Debt

38.    Although established in the context of a proposed sale, the "business

judgment" standard has been applied in non-sale situations.  See, e.g., Institutional Creditors of

Continental Air Lines. Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines, Inc.), 780

F.2d 1223, 1226 (5th Cir. 1986) (court applied "business judgment" standard in context of

11

proposed "use" of estate property). Moreover, pursuant to section 105, the Court has expansive

equitable powers to fashion any order or decree in the interest of preserving or protecting the

value of the Debtors' assets. See <u>Chinichian v. Campolongo (In re Chinichian)</u>, 784 F.2d 1440,

1443 (9th Cir, 1986) (noting that Section 105 permits "the bankruptcy court to fashion orders as

necessary pursuant to the purposes of the Bankruptcy Code").

      39.    As noted above, repayment of a portion of the Harleysville pre-petition

indebtedness is supported by sound business judgment. The Debtors have been investigating

other sources of financing to no avail and already have a relationship with Harleysville Bank.

The proposal set forth herein is in the best interests of the estates as it provides for the prompt

start-up of operations at Coddington View and the sale of homes, thereby generating cash for the

estate, as well as the payoff of a portion of Harleysville's debt.

## NOTICE

      40.    Notice of this Motion seeking interim relief is being provided by overnight

mail to: (i) the Office of the United States Trustee; (ii) counsel for the Committee; (iii) counsel

for Harleysville; (iv) all parties identified by the Debtors as possibly asserting mechanic's liens

at Coddington View; and (v) the parties who have filed a request for notices under Bankruptcy

Rule 2002. The Debtors submit that the Motion may be heard on an interim basis pursuant to

Fed. R. Bankr. P. 4001(c)(2) on less than 15 days notice on October 7, 2009, and further, that the

Interim Order set a final hearing on no less than 15 days notice also in accordance with Fed. R.

Bankr. P. 4001(c)(2). A separate motion for expedited consideration is being filed

contemporaneously herewith.

      41.    The Debtors further submit that, under the circumstances, no other or

further notice is required.

## NO PREVIOUS REQUEST

42.    No previous request for the relief requested herein has been made to this

or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an Order in

substantially the form submitted herewith, and grant the Debtors such other and further relief as

is just and proper.


Dated: October 1, 2009                    **MONTGOMERY, MCCRACKEN,**
Philadelphia, Pennsylvania                **WALKER & RHOADS, LLP**

BY:    _/s/ Natalie D. Ramsey_____
       Natalie D. Ramsey
       Joseph O'Neil, Jr.
       Laurie A. Krepto
       123 South Broad Street
       Philadelphia, PA 19109
       Tel.: (215) 772-1500/ Fax: (215) 772-7620

       *Counsel for the Debtors and Debtors-in-Possession*