# EXHIBIT B

**DRAFT**

### DEBTOR-IN-POSSESSION CONSTRUCTION LOAN AGREEMENT

THIS DEBTOR-IN-POSSESSION CONSTRUCTION LOAN AGREEMENT (this "**Agreement**") is made as of this _____ day of October, 2009 (the "**Closing Date**") by and between **HARLEYSVILLE NATIONAL BANK AND TRUST COMPANY**, successor in interest to Willow Grove Bank, with an office at 483 Main Street, Harleysville, Pennsylvania 19438 ("Lender") and **TH PROPERTIES, L.P.** ("**TH, L.P.**"), a Pennsylvania limited partnership, and **TH PROPERTIES, INC.** ("**TH, Inc.**"), a Pennsylvania corporation, each with an address at 345 Main Street, Harleysville, Pennsylvania 19438 (jointly, severally and collectively, the "**Borrower**").

### BACKGROUND

A.    On or about January 25, 2006, Lender and TH, L.P. entered into two (2) Mortgage Notes and a Construction Loan Agreement (the "**Existing Loan Agreement**") pursuant to which Lender agreed to make available to TH, L.P. a revolving construction line of credit in the maximum principal amount of Two Million Five Hundred Thousand Dollars ($2,500,000) ("**Construction Line of Credit**") and a non-revolving land loan in the maximum principal amount of Seventeen Million Two Hundred Thirty-Nine Thousand Four Hundred Ninety Dollars ($17,239,490) ("**Land Loan**") (the Construction Line of Credit and the Land Loan shall be known collectively as the "**Existing Loans**") to finance the acquisition of real property and the development of single family townhouse dwellings at the Premises (as hereinafter described).

B.    The Existing Loans are evidenced by, inter alia, a Mortgage Note in the principal amount of Seventeen Million Two Hundred Thirty-Nine Thousand Four Hundred Ninety Dollars ($17,239,490) ("**Land Loan Note**"), and a Mortgage Note in the original principal amount of Two Million Five Hundred Thousand Dollars ($2,500,000) ("**Construction Line of Credit Note**").

C.    The Existing Loans are secured by, inter alia, a first priority lien in and to the real property known as "Coddington View" in Upper Pottsgrove Township, Montgomery County, Pennsylvania, and as more particularly described on Exhibit "A" attached hereto and made a part hereof (the "**Premises**").

D.    Those dwellings known as Units 16A, 16B, 16C, 16D, 16E, 16F, 19B, 19D, 19E and 19F are partially-constructed units, not currently subject to agreements of sale (collectively, the "**Units**" and each a "**Unit**").

E.    TH, Inc. serves as the general contractor for the Project (as defined in **Section 9(j)**).

F.    On or about April 30, 2009 (the "**Petition Date**"), Borrower filed a voluntary petition with the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "**Bankruptcy Court**") for relief under chapter 11 of Title 11, United States Code (the "**Bankruptcy Code**") in Case No. 09-13201 (the "**Chapter 11 Case**").

G.     Borrower has requested and Lender has agreed to debtor-in-possession financing pursuant to the terms and conditions set forth in this Agreement, to permit TH, L.P. to complete the Units as set forth in this Agreement.

H.     As of the date hereof, the current principal amount outstanding under the Existing Loans is Five Million Seven Hundred Thirty-Eight One Hundred Ninety-Six and 66/100 Dollars ($5,738,196.66), plus accrued and unpaid interest with respect thereto and additional reasonable fees, costs and expenses pursuant to the Existing Loans Agreement.

**NOW, THEREFORE,** in consideration of the terms and conditions contained herein, and of any extensions of credit now or hereafter made to or for the benefit of Borrower by Lender, the parties hereto, intending to be legally bound hereby, agree as follows:

1.     **The Loan.**  Lender will establish for Borrower, subject to the terms and conditions hereof, a non-revolving loan pursuant to which Lender will from time to time make advances to Borrower in an amount not to exceed an aggregate amount of up to Five Hundred Eighty-Eight Thousand Six Hundred Fifty Dollars ($588,650) (the "**Loan**").  The Loan shall be subject to all terms and conditions set forth in all of the Loan Documents, which terms and conditions are incorporated herein.  Borrower's obligation to repay the Loan shall be evidenced by Borrower's promissory note (the "**Note**") in the face amount of Five Hundred Eighty-Eight Thousand Six Hundred Fifty Dollars ($588,650).

2.     **Interest Rate.**  Interest will be charged on the outstanding principal balance of the Loan from the date hereof until the full amount of principal due hereunder has been paid in full. From the date of this Agreement until the Maturity Date (as hereinafter defined) interest on the outstanding principal balance shall accrue at the "Prime Rate." The Prime Rate, for purposes of this Agreement and the Note, shall mean the rate of interest equal to the highest prime rate of interest as published in the "Money Rates" section of The Wall Street Journal from time to time, or if such index or publication is no longer published, or available, a comparable index selected by the Lender. The "Prime Rate" is a reference rate and does not necessarily represent the lowest or best rate of interest actually charged by Lender to any particular class or category of customers.  Interest shall be calculated daily on the basis of the actual number of days elapsed over a three hundred sixty day (360) year.  Interest will continue to accrue on the Existing Loans at the rates set forth in the Existing Loan Agreement.

3.     **Term of Loan and Payment of Principal and Interest.**  The term of this Loan shall be from the date hereof until May 31, 2010 (the "**Maturity Date**"). During the term of this Loan, payments will be made to Lender upon the sale of each Unit.  At the closing of the sale of any Unit, an amount equal to the sum of (a) $57,068 (the "**A&D Release**") plus (b) 100% of the Loan and the Construction Line of Credit advanced for the hard costs of construction of such Unit (the "**Hard Cost Release**"), plus (c) if Borrower opted to receive the Pre Advance (as defined below), $10,000 (the "**Pre Advance Release**"), plus (d) one-half (½) of the Net Sales Proceeds of such Unit (collectively, the "**Release Price**") shall be

2

used to pay down the outstanding principal balance and accrued interest of the Loan and the Existing Loans and applied to the other costs and expenses as listed in clause B below.  For purposes of this Section 3, the term "Net Sales Proceeds" shall mean the gross sale price paid by the purchaser, as increased or reduced by customary apportionment of prepaid or accrued items of income or expenses, minus realty transfer taxes, commissions, and other closing costs paid by Borrower that customarily are paid by the sellers of land in Montgomery County, Pennsylvania, minus the A&D Release, the Hard Cost Release and the Pre Advance Release.

A) Use of DIP Loan

Subject to all other terms and conditions of the Loan Documents and the Order, $488,651 of the funds from the Loan will be advanced to pay back the hard costs of construction for the completion of the Units (the "**Construction Proceeds**"). The amount of the DIP Loan to be allocated to each Unit is as follows:

| Unit # | Per Unit Hard Costs of Construction To Be Funded From The DIP Loan | Per Unit Hard Costs of Construction Previously Funded From The Construction Line of Credit |
|---|---|---|
| 16A | $83,543 | $15,000 |
| 16B | $80,594 | $15,000 |
| 16C | $80,584 | $15,000 |
| 16D | $63,911 | $ 0 |
| 16E | $80,584 | $ 0 |
| 16F | $68,553 | $ 0 |
| 19B | $ 8,477 | $80,000 |
| 19D | $ 7,597 | $80,000 |
| 19E | $ 8,092 | $80,000 |
| 19F | $ 6,716 | $80,000 |

The remaining $100,000 of funds from the DIP Loan may, at Borrower's option, be advanced on the date hereof, to pay [additional costs of borrower] (the "**Pre Advance**").

B) Application of Sale Proceeds

1. Interest on the DIP Loan
2. Principal of the DIP Loan advances for the particular Unit
3. All other costs and expenses due and payable on the DIP Loan
4. Outstanding Construction Line of Credit Principal
5. Outstanding Land Loan Principal
6. Lender's Inspection Fees
7. Lender's Legal Fees

3

PHDATA 3238277_1

8. All other costs and expenses due and payable on the Existing Loans

All remaining principal, accrued and unpaid interest, attorneys fees and other cost and expenses due under this Agreement or the other Loan Documents shall be due and payable in full upon the occurrence of an Event of Default or on the Maturity Date.

4. **Payment Terms.** All payments made hereunder shall be made in immediately available funds and in lawful currency of the United States of America. All payments made hereunder shall be made to the Lender at its offices set forth in this Agreement or at such other address as the Lender shall notify the Borrower of in writing.

5. **Default Interest.** At the Lender's option, interest will be assessed on any principal which remains unpaid upon the occurrence of an Event of Default or at the maturity of the Loan, whether by acceleration or otherwise, at a rate which is six percent (6.00%) higher than the rate otherwise charged hereunder (the **"Default Rate"**) provided that at no time shall the Default Rate exceed the highest rate of interest allowed by law. Such Default Rate of interest shall be charged on the amounts owed by the Borrower to the Lender pursuant to any adjustment entered in favor of the Lender with respect to this Agreement.

6. **Prepayment.** The Borrower shall have the right at any time during the term hereof to prepay all or a part of the principal balance then outstanding under the Note without penalty.

7. **Security for Note.** As security for the payment of the monies owing under the Note and this Agreement, the Borrower has delivered or will cause to be delivered to the Lender an Open-End Mortgage and Security Agreement, a personal guaranty of Timothy P. Hendricks and W. Todd Hendricks, and the other Loan Documents. In addition, the Borrower hereby assigns to the Lender, as further security for the Loan, all of the Borrower's right, title and interest in and to all leases and rents affecting the Premises.

8. **Partial Release of Mortgage.** Provided no Event of Default has occurred and is continuing, the Lender will release its security lien held against any completed Unit provided the Borrower complies with the following terms and conditions:

   (a) Lender, in consideration for granting each release of each Unit, shall have received the Release Price. The Release Price shall be paid directly to Lender by the title company retained in connection with the sale of such Unit.

   (b) All instruments and documents executed and delivered in connection with any release pursuant to this **Section 8** shall be in form and substance reasonably satisfactory in all respects to Lender. Borrower shall provide Lender with such descriptions and other information as Lender may in its

4

reasonable discretion require in connection with the making of any release pursuant to this **Section 8**.

(c)    All costs and expenses incurred by Lender in connection with each release made pursuant to this **Section 8**, including, but not limited to, attorney's fees, recording fees and title charges, shall be paid by Borrower.

9.    **Definitions.**    As used herein, the following terms shall have the following meanings:

(a)    **Affiliate.**    The term "Affiliate" means Harleysville National Bank and Trust Company and any of its direct and indirect affiliates and subsidiaries.

(b)    **Borrower.**    The term "Borrower' means, jointly, severally and collectively, TH Properties, L.P., a Pennsylvania limited partnership and TH Properties, Inc., a Pennsylvania corporation.

(c)    **Guarantor.**    The term "Guarantor" shall mean, jointly, severally and collectively, Timothy P. Hendricks and W. Todd Hendricks.

(d)    **Liabilities.**    The term "Liabilities" means any and all obligations and indebtedness of every kind and description of the Borrower owing to the Lender or to any Affiliate, whether under the Loan Documents or not and whether such debts or obligations are primary or secondary, direct or indirect, absolute or contingent, sole, joint or several, secured or unsecured, due or to become due, or contractual, arising by operation of law or otherwise, or now or hereafter existing, including, without limitation, principal, interest, fees, late fees, expenses, attorneys' fees and costs and/or allocated fees and costs of Lender's legal counsel, that have been or may hereafter be contracted or incurred.

(e)    **Loan.**    The term "Loan" means the principal balance outstanding under the Note together with any accrued, unpaid interest thereon and any fees and/or expenses of the Lender payable hereunder.

(f)    **Loan Documents.**    The term "Loan Documents" means this Agreement, the Note, the Open-End Mortgage and Security Agreement and any and all credit accommodations, notes, loan agreements, and any other agreements and documents, now or hereafter existing, creating, evidencing, guarantying, securing or relating to any or all of the Liabilities, together with all amendments, modifications, renewals, or extensions thereof.

(g)    **Mortgage.**    The term "Mortgage" means that certain Open-End Mortgage and Security Agreement and an Assignment of Real Estate Leases, Rents, Plans, Contracts and Approvals from the Borrower to the Lender covering the Premises.

PHDATA 3238277_1

(h)     **Note.** The term "Note" means the Note together with all attachments hereto and all amendments and modifications hereto in effect from time to time.

(i)     **Obligor.** The term "Obligor" means the Borrower, Guarantor and each and every maker, endorser, guarantor or surety of or for the Liabilities.

(j)     **Project.** The term "Project" means the remaining construction of the Units at the Premises.

10.     **Advances.**

(a)     At closing, at Borrower's option, Lender shall advance the Pre Advance.

(b)     The Construction Proceeds, which, for each Unit, shall not exceed the amount of the "Per Unit Hard Costs of Construction To Be Funded From The DIP Loan," will be made for hard costs incurred in connection with Project improvements and shall be made only after each advance has been approved and certified by the Lender pursuant to the terms and conditions set forth in this Agreement.

11.     **Construction Advances.** Subject to compliance by the Borrower with the terms and conditions of this Agreement, the Lender shall make advances of the Construction Proceeds as work progresses. Notwithstanding the foregoing, at no time shall the undisbursed portion of the Construction Proceeds be, in the judgment of the Lender, less than an amount sufficient to complete the Project.

12.     **Request for Advance of Construction Proceeds.** Each request by the Borrower to the Lender for an advance of the Construction Proceeds shall be made in accordance with the procedures set forth in the Existing Loan Agreement (or in such other form as shall be acceptable to the Lender) and signed by a duly authorized representative of the Borrower (any such request being hereinafter referred to as a **"Request for Construction Advance"**). Each Request for Advance shall be signed by TH, Inc., as the general contractor, shall certify in detail acceptable to the Lender the cost of the labor that has been performed and the materials, equipment or fixtures that have been incorporated into the Project since the date of the previous advance, shall be accompanied by such supporting data, vouchers, invoices and requisitions as the Lender may require and shall also be accompanied by a title bringdown, dated not earlier than five (5) days prior to the date the subject advance is requested to be made, evidencing that no mechanics lien is of record against the Premises. The proceeds of each advance shall be used by the Borrower solely to pay or as reimbursement for the obligations for which the advance is sought.

13.     **Inspection.** Upon receiving each Request for Construction Advance, the Lender's inspecting engineer will determine, in his own discretion, (a) whether the work completed to date of his inspection has been done satisfactorily and in accordance with the Plans and Specifications, as defined in the Existing Loan

PHDATA 3238277_1

Agreement, (b) the percentage of construction of the Project completed as of the date of such inspection, (c) construction costs actually incurred for work in place as part of the Project as of the date of such inspection, the actual sum necessary to complete construction of the Project in accordance with the Plans and Specifications, and (d) the amount of time from the date of such inspection which will be required to complete construction of the Project in accordance with the Plans and Specifications. The Borrower shall pay a reasonable inspection fee to the Lender upon demand for each advance requested.

Borrower acknowledges that any inspection of the Premises made by Lender is for the sole benefit of Lender. Borrower shall not rely upon such inspection and shall be responsible for its own independent inspection of the work.

14.    **Disbursement of Construction Proceeds.**  Each advance of the Construction Proceeds shall be made (a) to subcontractors or materialmen engaged in the construction of the Project by dual party check with the Borrower, or (b) in such other manner as shall be mutually agreed upon by the Borrower and the Lender. Notwithstanding the foregoing, the Lender's records of any advance made pursuant to this Agreement shall, in the absence of manifest error, be deemed correct and acceptable and binding upon the Borrower.

15.    **Limitations on Construction Proceeds.**  The Lender shall not be obligated to make advances of the Construction Proceeds more frequently than once every seven (7) days. The Lender shall not be required to make disbursements of the Construction Proceeds for costs incurred by the Borrower with respect to materials stored on or off the Premises unless the Lender shall, in its sole discretion, deem it advisable to do so.

16.    **No Representation by Lender.**  Anything in this Agreement or any Loan Document to the contrary notwithstanding, any advance of the Construction Proceeds or approval given by the Lender, whether or not before or after an inspection of the Project by the Lender or otherwise, shall not be deemed to be an approval by the Lender of any work or materials done or furnished with respect thereto or a representation by the Lender as to the fitness of such work or materials. In addition, nothing in this Agreement shall be deemed to impose on the Lender any obligation to determine that the Borrower or the general contractor or any subcontractor applied the proceeds of the Loan properly.

17.    **Conditions to Advance.**

(a)    **General Conditions.**  The Lender will have no obligation to make any advance under this Agreement:  (a) unless the Lender is satisfied, in its sole discretion, that the conditions precedent to the making of such advance have been satisfied by the Borrower; or (b) if an Event of Default or event which, with the giving of notice or the passage of time, or both, would constitute an Event of Default under any of the Loan Documents has occurred and is continuing.

(b) **Pre Advance.** The Lender will have no obligation to make the Pre Advance under this Agreement unless it has received the following from the Borrower, all in form and substance satisfactory to the Lender: (a) receipt of the Loan Documents duly executed by the Borrower or any other Obligor, as the case may be; (b) each of the other documents, certificates, affidavits and agreements required by the Lender as condition precedent to the Loan; (c) all representations and warranties made by Borrower herein and in the other Loan Documents, and by the Guarantors, shall be true and correct in all material respects; and (d) a copy of the executed Stipulated Order entered by the Bankruptcy Court for the Chapter 11 Case consenting to the Loan and granting Lender a super-priority lien in the form of Exhibit "D" attached hereto and made a part hereof (the **"Order"**).

(c) **Subsequent Advances.** The Lender will have no obligation to make any advance after the Pre Advance unless the conditions specified in **Section 17(b)** continue to be satisfied in all material respects and Lender has received all documents, certificates, affidavits, agreements that the Lender may request, as set forth herein.

(d) The Lender shall have the right to apply any funds which it agrees to advance hereunder to bring about the completion of the Units and to payment of any settlement costs, taxes, special assessments or any other charges which could be a lien on the Premises, or any premium on any insurance policy affecting the Premises.

(e) If the Lender shall receive any notice pursuant to Section 42 Pa.C.S. Section 8143(b) from a person having or claiming to have a lien or encumbrance on the Premises that is subordinate to the lien of the Mortgage, the Lender shall not be liable to the Borrower if the Lender shall thereafter fail or refuse to make any future advance requested by the Borrower to be made pursuant to this Agreement.

(f) The Borrower covenants and agrees that the Borrower will comply with all of the provisions of the Pennsylvania Contractor and Subcontractor Payment Act, 73 P.S. §501 et seq., as applicable.

18. **Representations and Warranties.** The Borrower represents and warrants to the Lender that:

(a) **Use of Proceeds.** The proceeds of the Loan will be used only for business purposes as set forth herein. The Construction Proceeds will be applied solely to hard costs incurred for the completion of the Units.

(b) **Financial Statements.** All financial statements heretofore delivered by the Borrower to the Lender are correct and complete in all material respects, fairly represent the Borrower financial condition and obligations

PHDATA 3238277_1

of the Borrower.  There have been no adverse changes in the Borrower financial condition.

(c)     **Due Authorization; No Legal Restrictions.**  The execution and delivery by Borrower of the Loan Documents, the consummation of the transactions contemplated by the Loan Documents and the fulfillment and compliance with the respective terms, conditions and provisions of the Loan Documents:   (a) have been duly authorized by all requisite partnership action of Borrower, (b) will not conflict with or result in a breach of, or constitute a default (or might, upon the passage of time or the giving of notice or both, constitute a default) under, any of the terms, conditions or provisions of any applicable statute, law, rule, regulation or ordinance, or Borrower's certificate of limited partnership or partnership agreement or any indenture, mortgage, loan, credit agreement or other document or instrument to which Borrower is a party or by which Borrower may be bound or affected, or any judgment or order of any court or governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, (c) will not result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of the property or assets of Borrower under the terms or provisions of any such agreement or instrument, except liens in favor of Lender, and (d) have been authorized by the Bankruptcy Court pursuant to the Order.

(d)     **Taxes.**  Borrower has paid when due all taxes and payments required to be paid by it by any law, regulation, or ordinance of any governmental or quasi-governmental authority.

(e)     **Suits and Defaults.**  There are no actions, suits, proceedings, or claims pending or threatened against the Borrower or any of their respective property except as set forth on **Schedule 18(e)** attached hereto and made a part hereof; and the Borrower's businesses are in compliance with all applicable orders, laws, rules and regulations.  The Borrower's execution of or performance under the Loan Documents will not create a default or any lien or encumbrance under any such agreement or instrument other than a lien or encumbrance in favor of the Lender.  Furthermore, there are no actions, suits, proceedings, or claims pending or threatened against the Borrower in anyway challenging its legal existence.

(f)     **Agreements of Sale.**  The Borrower has provided copies of all executed agreements of sale (together with any amendments or modifications thereof) for any Unit to Lender.

(g)     **Licenses.**  Subject to the rights of any licensor pursuant to Bankruptcy Code §365(c)(l), Borrower and its respective employees and agents have all licenses, registrations, approvals and other authority as may be necessary to enable Borrower to own and operate its business and perform

PHDATA 3238277_1

all services and business which Borrower has agreed to perform in any state, municipality or other jurisdiction and to complete the Project.

(h) **Enforceability.**   The Loan Documents have been duly executed by Borrower and delivered to Lender and constitute legal, valid and binding obligations of Borrower, enforceable in accordance with their terms, except as enforceability may be limited by any bankruptcy, insolvency, reorganization, moratorium or other laws or equitable principles affecting creditors' rights generally.

(i) **Governmental Consents.**   No consent, approval or authorization of or designation, declaration or filing with any governmental authority on the part of Borrower is required in connection with the execution, delivery or performance by Borrower of the Loan Documents or the consummation of the transactions contemplated thereby, other than entry of the Order and obtaining the necessary permits, approvals and certificates of occupancy from the appropriate governmental authority to complete construction of each Unit in the Project.

(j) **Current Compliance.** Borrower is currently in compliance with all of the terms and conditions of the Loan Documents.

(k) **Accuracy of Representations and Warranties.**   No representation or warranty by Borrower contained herein or in any certificate or other document furnished by Borrower pursuant hereto or in connection herewith fails to contain any statement of material fact necessary to make such representation or warranty not misleading in light of the circumstances under which it was made.  There is no fact which Borrower knows or should know and has not disclosed to Lender, which does or may materially and adversely affect Borrower, or any of its operations.

(l) **OFAC.**   None of the Borrower, any subsidiary of the Borrower or any affiliate of the Borrower, or any Guarantor: (i) is a person named on the list of Specially Designated Nationals or Blocked Persons maintained by the U.S. Department of the Treasury' Office of Foreign Assets Control ("OFAC") available at http://www.treas.gov/offices/enforcement/ofac/sdn/index.html or, as otherwise published from time to time; or (ii) is (A) an agency of the government of a country, (B) an organization controlled by a country, or (C) a person resident in a country that is subject to a sanctions program identified on the list maintained by OFAC and available at http://www.treas.gov/offices/enforcemment/ofac/programs/, or as otherwise published from time to time, as such program may be applicable to such agency, organization or person; or (iii) derives more that 15% of its assets or operating income from investments in or transactions with any such country, agency, organization or person; and (iv) none of the proceeds from the Loan will be used to finance any operations,

investments or activities in, or make any payments to, any such country, agency, organization, or person.

Each request for an advance of proceeds of the Loan hereafter made by the Borrower shall constitute the Borrower's representation and warranty that (i) the representations and warranties contained in this Section are true and correct as of, and as if made on, the date such request for an advance is made and (ii) all proceeds of the Loan theretofore disbursed by Lender to pay for labor and materials have been applied and paid in strict accordance with all prior requests for advances.

19. **Affirmative Covenants.** The Borrower covenants and agrees that so long as there are any outstanding Liabilities, the Borrower shall:

(a) **Financial Statements.** Subject to the requirements of the Bankruptcy Code, and the United States Trustee Operating Guidelines for Chapter 11 Cases (the "**Guidelines**"), keep and maintain complete and accurate books and records; permit, if requested, representatives and/or agents of the Lender full and complete access to the Premises (and any other real or personal property securing any of the Borrower's obligations to the Lender) and financial records, to make extracts from and/or audit the Borrower's books, records and financial information and to inspect the Borrower's facilities and properties related to its operations. Should the Loan not be repaid as of the close of any of the Borrower's fiscal year, the Borrower will furnish, annually within ninety (90) days after the close of each fiscal year, income and expense statements, a balance sheet, signed income tax return (unless on extension) and any other information requested by the Lender or required pursuant to the mortgage securing the Existing Loans. Said statement and balance sheet shall be satisfactory to the Lender in form, certified as true and correct by the Borrower and compiled by certified public accountants (including those retained by the Borrower in the Chapter 11 Case) satisfactory to the Lender. Borrower shall also furnish to the Lender all Monthly Operating Reports filed in the Chapter 11 Case, and with respect to the Project and the Loan Documents such other information regarding the operations, financial or otherwise of the Borrower, as the Lender may from time to time reasonably request, including but not limited to revised cash flow projections to the extent they are prepared on a monthly basis. The Guarantors shall likewise annually submit to the Lender updated personal financial statements and a copy of their federal personal income tax return (or requests for extension) no later than May 1 of each calendar year, unless otherwise on extension.

(b) **Notice of Certain Events.** Promptly give written notice to the Lender of: (i) the occurrence of any event which alone or with notice, the passage of time, or both, would constitute an Event of Default; (ii) the commencement of any proceeding or litigation which, if adversely determined, would adversely affect its financial condition or ability to

PHDATA 3238277_1

conduct its business; and (iii) subject to Bankruptcy Court approval in the event that the Chapter 11 Case is open, the formation of any subsidiary of the Borrower after the date of this notice, which notice shall be accompanied by the resolution of the officers of such subsidiary authorizing such subsidiary to execute a guaranty of the Liabilities, satisfactory in form and substance to the Lender, together with such guaranty duly executed by such subsidiary;

(c) **Insurance.** Keep and maintain certificates of insurance in favor of Lender evidencing comprehensive general public liability insurance, builder's risk and casualty insurance. In addition, evidence of public liability insurance coverage on any general contractor shall be provided to the Lender. All insurance policies shall be endorsed in form and substance acceptable to Lender as required by the United States Trustee and the Guidelines, which shall include naming Lender as an additional insured, loss payee or mortgagee thereunder, as its interest may appear. All such insurance policies and endorsements shall be fully paid for, shall be issued by appropriately licensed insurance companies, and shall be in such form, and shall contain such provisions, deductibles and expiration dates, as are required under the Guidelines. Each policy shall provide that such policy may not be canceled or materially changed except upon prior written notice of intention of non-renewal, cancellation or material change to the Borrower and if applicable, the Lender. If Borrower fails to maintain insurance in compliance with this **Section 19(c)**, Lender may obtain such insurance and pay the premium therefore and Borrower shall reimburse Lender for all expenses incurred in connection therewith.

(d) **Taxes.** Pay and discharge, to the extent required under the Bankruptcy Code, all post-Petition Date taxes, assessments or other governmental charges imposed on them or any of their respective properties, when due, unless the same are currently being contested in good faith by appropriate proceedings pursuant to Bankruptcy Code §505.

(e) **Legal Requirements.** Borrower shall observe and comply with all legal requirements applicable to its existence and to the ownership, use and operation of the Premises. Borrower shall in the ordinary course of its operations maintain the Premises in good condition and promptly repair any damage or casualty. Unless related to the completion of the Project, Borrower shall not, without the prior written consent of Lender, undertake any material alteration of the Premises. Borrower shall permit Lender and its agents, representatives and employees, upon reasonable prior notice to Borrower, to inspect the Premises.

(f) **Compliance with Environmental Laws.** With respect to the Premises, unless otherwise disclosed on **Schedule 19(f)** annexed hereto, to the best of their knowledge, none of the Obligors or any operations thereon are in violation or alleged violation of all applicable federal, state and local

statutes, laws, regulations, ordinances, rules, judgments, orders, decrees, permits, licenses, or agreements relating to pollution and the protection of the environment or the release of any pollutant materials into the environment, including those related to hazardous substances or wastes, air emissions, and discharges to waste or public water treatment systems (the "**Environmental Laws**"). Borrower has no knowledge or information as to any past or present contamination of the Premises by any hazardous waste, hazardous substance, solid waste or contaminant as defined under any law, regulation or ordinance of the United States of America, the Commonwealth of Pennsylvania or Upper Pottsgrove Township. In the event that there shall be filed a lien against any property of the Borrower by any jurisdiction, political subdivision, agency or instrumentality thereof arising from an act or omission of the Borrower resulting in the dumping of hazardous substances or wastes into the atmosphere or waters or onto lands then, within thirty (30) days from the date that the Borrower is given notice that the lien has been placed against such property, or within such shorter period of time in the event that such jurisdiction, political sub-division, agency, or instrumentality thereof has commenced steps to cause such property to be sold pursuant to the lien, either (i) pay the claim and remove the lien from the applicable property or (ii) furnish to such jurisdiction political subdivision, agency or instrumentality thereof that imposed the lien a bond satisfactory to such jurisdiction, political sub-division, agency, or instrumentality thereof that imposed the lien in the amount of the claim out of which the lien arises. Should the Borrower cause or permit any act or omission resulting in damage to the natural resources without having obtained a permit issued by the appropriate governmental authorities, the Borrower shall promptly clean up same in accordance with all applicable federal, state, and local statutes, laws, ordinances, rules and regulations. The foregoing is subject to the Borrower's rights and remedies to contest any such liens, proposed sales, or other governmental authorities' actions with respect to alleged violations of Environmental Laws, pursuant to the Bankruptcy Code.

(g) **Indemnification.** Borrower shall indemnify, defend and hold Lender harmless from and against any and all losses, liabilities, claims, damages, expenses, obligations, penalties, actions, judgments, suits, costs and disbursements (including the reasonable fees and actual expenses of Lender's counsel) of any kind or nature whatsoever, in connection with any inspection, review or testing of or with respect to the Premises, any investigative, administrative, mediation, arbitration, or judicial proceeding, whether or not Lender is designated a party thereto, commenced or threatened at any time (including after the repayment of the Loan) in any way related to the execution, delivery or performance of any Loan Document or to the Premises, (3) any proceeding instituted by any person claiming a lien, and (4) any brokerage commissions or finder's fees claimed by any broker or other party in connection with the Loan, the Premises, or any of the transactions contemplated in the Loan Documents,

PHDATA 3238277_1

except to the extent any of the foregoing is caused by Lender's gross negligence or willful misconduct.

(h)     **Agreements of Sale.**   The Borrower shall deliver to the Lender all executed copies of any agreements of sale (together with any addendums, modifications or amendments thereto); and the Lender shall have the right to pre-approve every agreement of sale for Units (each agreement of sale approved by the Lender shall be referred to as an "**Approved Agreement of Sale**"). Further, the deposits (including, without limitation any deposit for options) delivered in connection with any such Approved Agreement of Sale shall be held in an escrow account with the Lender. The Borrower hereby grants to the Lender a security interest in and to the Borrower's rights, title, interest, and privileges in all deposits delivered in connection with an Approved Agreement of Sale for a Unit. In addition to the foregoing, any deposit forfeited as a result of buyer default under any Approved Agreement of Sale shall be retained by the Lender and applied to the Loan and the Existing Loans in such a manner as is determined by the Lender in its sole discretion.

(i)     **Chapter 11 Case.**   Borrower shall comply with all filing requirements of the Bankruptcy Court, the Bankruptcy Code, the United States Trustee, the Guidelines or any other requirements set forth as a result of the Chapter 11 Case.

(j)     **Completion.**   The Borrower shall re-commence construction of the Units according to the Plans and Specifications promptly after receiving approval from the Bankruptcy Court ("**Approval**") and shall thereafter proceed diligently, employing sufficient workmen and supplying sufficient materials so that the Units shall be fully completed and ready for normal use thereof not later than:

     (i)     forty-five (45) days after Approval with respect to Units 19B, 19D, 19E and 19F; and

     (ii)    ninety (90) days after Approval with respect to Units 16A, 16B, 16C, 16D, 16E and 16F.

PHDATA 3238277_1

(k) **Sales Covenants.** The Borrower covenants with the Lender that during the following periods, the Borrower shall obtain Approved Agreements of Sale and complete closings for no fewer than the specified number of Units on a cumulative basis:

| | Date | Closings |
|---|---|---|
| By: | Ninety (90) days after the date of this Agreement | four (4) |
| By: | One Hundred Fifty (150) days after the date of this Agreement | seven (7) |
| By: | Two Hundred Ten (210) days after the date of this Agreement | ten (10) |

(l) **Additional Affirmative Covenants.** The Borrower further affirmatively covenants and agrees that it shall perform any other affirmative covenants and construction requirements and conditions set forth in the Loan Documents and the Existing Loan Agreement to which the Borrower is a party.

(m) **Negative Covenants.** The Borrower covenants and agrees that it shall refrain from acting in violation of any negative covenant contained in the Existing Loan Agreement.

20. **Events of Default.** The occurrence of any one of the following shall constitute an Event of Default under this Agreement:

(a) **Breach.** A breach by any Obligor of any term, obligation, provision, covenant, representation or warranty, arising under (i) this Agreement, including, without limitation, failure to make any payment when due hereunder or under any other Loan Document; (ii) any present or future agreement with or in favor of the Lender and/or any Affiliate, including the failure to make any payment when due; or (iii) any present or future agreement or instrument for borrowed money or other financial accommodations with any person or entity;

(b) **Bankruptcy.** The appointment, or the filing of a motion seeking the appointment, of a custodian, receiver, trustee, or liquidator for any Obligor (other than the Borrower) or any of its property, or the taking of possession of any part of the property of any Obligor (other than the Borrower) at the instance of any governmental authority;

(c) **Dismissal or Conversion to Chapter 7.** The dismissal of the Chapter 11 Case or the Chapter 11 Case is converted to a Chapter 7 case under the Bankruptcy Code;

PHDATA 3238277_1

(d)  **Liens.** Any claims or liens, including, without limitation, mechanic's liens, are filed on the Premises or written notice has been received indicating the probability of such filing, which claims or liens have priority superior or pari passu to the liens in favor of Lender;

(e)  **Completion.** The Borrower fails to complete the construction of the Units in the time required pursuant to **Section 19(j)** of this Agreement;

(f)  **Sale of Units.** The Borrower fails to comply with the sales covenants contained in **Section 19(k)** of this Agreement;

(g)  **Material Misstatement.** Any statement, representation or warranty made in or pursuant to this Agreement or any other Loan Document or to induce the Lender to enter into this Agreement shall prove to be untrue or misleading in any material respect;

(h)  **Debt, Liens, Loans, Lease Payments.** The Borrower (i) incurs or assumes additional debt other than debt incurred for normal operating purposes, debt to the Lender and/or an Affiliate and/or trade debt and in the ordinary course of its business; (ii) makes any loans or advances to partners or affiliates of the Borrower or any Obligor; (iii) creates, permits or grants any lien or security interest in any of its property on which the Lender has a lien and/or security interest; or (iv) incurs, creates or assumes any commitment, either directly or indirectly, for rent, service fees or charges or finance charges under any lease, rental, sale-lease back or other agreement for use of the property of any person and/or entity other than the Borrower;

(i)  **Entry of Judgment.** The filing, entry, or issuance of any judgment (other than those covered by insurance), execution, garnishment, attachment, distraint, or lien against any Obligor or its property; the entry of any order enjoining or restraining any Obligor and/or restraining or seizing any property of any Obligor that is not otherwise stayed pursuant to the Bankruptcy Code or order of the Bankruptcy Court.

(j)  **Transfer of Assets.** Any Obligor transfers or sells all or substantially all of its assets, without the prior written consent of the Lender, or pursuant to the order of the Bankruptcy Court, other than in the ordinary course of business.

(k)  **Failure to Complete Project.** Implementation of the Project in the judgment of the Lender is not carried out with reasonable diligence or the Lender is of the opinion that the Project cannot be completed within the time periods required pursuant to **Section 19(j)** of this Agreement.

21.  **Remedies.**

    (a)  **Acceleration of Liabilities; Rights of Lender.**  In the event an Event of Default has occurred, the Lenders commitment, if any to make further advances to the Borrower under the Loan Documents, shall at the Lender's sole option, terminate and the Borrower agrees that Lender shall be entitled to immediate relief from the automatic stay pursuant to 11 U.S.C. §362 without further order of the Bankruptcy Court.  The Lender may at its sole option, declare that the Loan and all other liabilities shall become due and payable in full, all without protest, presentment, demand or further notice of any kind to the Borrower or any other Obligor, all of which are expressly waived.  Upon and following an Event of Default, the Lender, at its option, may exercise any and all rights and remedies it has under this Agreement, the other Loan Documents and under applicable law, including, without limitation, apply for and after an Event of Default, maturity, whether by acceleration or otherwise, unless otherwise stayed by the Bankruptcy Code, an entry of judgment with respect to any or all of the liabilities.  After an Event of Default, the Lender will charge and collect interest at the Default Rate after five (5) days written notice to Borrower unless, in its sole discretion, Lender permits Borrower to cure any Event of Default.  Upon and following an Event of Default hereunder, the Lender may proceed in accordance with applicable law to protect and enforce the Lender's rights under the Loan Documents and/or applicable laws by action at law, in equity, or other appropriate proceeding, including, without limitation, an action for specific performance to enforce or aid the enforcement of any provision contained herein or in any other Loan Document.

    (b)  **Right of Set-off.**  If any of the Liabilities shall be due and payable and whether or not the Lender shall have made any demand under this Agreement and regardless of the adequacy of any collateral for the Liabilities or other means of obtaining repayment of the Liabilities, the Lender shall have the right, without notice to the Borrower or to any other Obligor, subject to Bankruptcy Code § 553, and is specifically authorized hereby to set-off against and apply to the then unpaid balance of the Liabilities any items or funds of the Borrower and/or any Obligor held by the Lender or any Affiliate, any and all deposits (whether general or special, time or demand, matured or unmatured) or any other property of the Borrower and/or any Obligor, including, without limitation, securities and/or certificates of deposit, now or hereafter maintained by the Borrower and/or any Obligor for its or their own account with the Lender or any Affiliate, and any other indebtedness at any time held or owing by the Lender or any Affiliate to or for the credit or the account of the Borrower and/or any Obligor, even if effecting such set-off results in a loss or reduction of interest or the imposition of a penalty applicable to the early withdrawal of time deposits.  For such purpose, the Lender shall have, and the Borrower hereby grants to the Lender, a first lien on and

security interest in such deposits, property, funds and accounts and the proceeds thereof. The Borrower further authorizes any Affiliate, upon and following the occurrence of an Event of Default, at the request of the Lender, and without notice to the Borrower, to turn over to the Lender any property of the Borrower, including, without limitation, funds and securities held by the Affiliate for the Borrower's account, and to debit any deposit account maintained by the Borrower with such Affiliate (even if such deposit account is not then due or there results a loss or reduction of interest or the imposition of a penalty in accordance with law applicable to the early withdrawal of time deposits), in the amount requested by the Lender up to the amount of the Liabilities, and to pay or transfer such amount or property to the Lender for application to the Liabilities.

(c)     **Remedies Cumulative; No Waiver.** The rights, powers and remedies hereunder and under the other Loan Documents are cumulative and concurrent, and are not exclusive of any other rights, powers or remedies available to the Lender. No failure or delay on the part of the Lender in the exercise of any right, power or remedy shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or remedy preclude any other or further exercise thereof, or the exercise of any other right, power or remedy.

22.     **Miscellaneous.**

(a)     **Waiver of Demand.** The Borrower (i) waives presentment, notice of dishonor and protest of this Agreement; (ii) consents to any and all extensions of time, renewals, waivers, or modifications that may be granted by the Lender with respect to the payment or other provisions of this Agreement; and (iii) agrees that makers, endorsers, guarantors, and sureties for the indebtedness evidenced hereby may be added or released without notice to the Borrower and without affecting the Borrower's liability hereunder. The liability of the Borrower hereunder shall be absolute and unconditional.

(b)     **Indemnification.** Borrower indemnifies and holds harmless the Lender from all claims and expenses arising from this transaction. Any Lender action (or inaction) pertaining to the Project, including but not limited to approval of any appraisal, report, test, inspection, plan specification, periodic loan draw, etc., is solely for the Lender's benefit in administering the Loan. Consequently, neither the Borrower nor any other person is to infer any warranty or representation by Lender, and Borrower agrees to make no representation to the contrary. No person who is not a party to this Agreement shall have any beneficiary rights as a result of this Agreement.

(c)     **Notices.** Notices and communications under this Agreement shall be in writing and shall be given by either (i) hand-delivery, (ii) first class mail

PHDATA 3238277_1

(postage prepaid), or (iii) reliable overnight commercial courier (charges prepaid) to the addresses listed in this Agreement. Notice shall be deemed to have been given and received (a) if by hand delivery, upon delivery, (b) if by mail, three (3) calendar days after the date first deposited in the United States mail, and (c) if by overnight courier, on the date scheduled for delivery. A party may change its address by giving written notice to the other party as specified herein.

| | |
|---|---|
| Lender: | Harleysville National Bank and Trust Company |
| | 483 Main Street |
| | Harleysville, PA 19438 |
| | Attn: William Campbell, Senior Vice President |
| | |
| Borrower: | TH Properties |
| | 345 Main Street |
| | Harleysville, PA 19438 |

(d)     **Costs and Expenses.** Whether or not the transactions contemplated by the Loan Documents are fully consummated, the Borrower shall promptly pay (or reimburse, as the Lender may elect) all costs and expenses which the Lender has incurred or may hereafter incur in connection with the negotiation, preparation, reproduction, interpretation, perfection, protection of collateral, administration and enforcement of this Agreement and the other Loan Documents, the collection of all amounts due under this Agreement and the other Loan Documents, and all amendments, modifications, consents or waivers, if any, to the Loan Documents. The Borrower's reimbursement obligations under this Paragraph shall survive any termination of this Agreement or any other Loan Document.

(e)     **Payment Due on a Day Other than a Business Day.** If any payment due or action to be taken under this Agreement or any other Loan Document falls due or is required to be taken on a day that the Lender is not open for business, such payment or action shall be made or taken on the next succeeding day when the Lender is open for business and such extended time shall be included in the computation of interest.

(f)     **Governing Law.** This Agreement shall be construed in accordance with and governed by the substantive laws of the Commonwealth of Pennsylvania without reference to conflict of laws principles.

(g)     **No Reliance.** All pre-conditions that are imposed by this Agreement on the right of the Borrower to obtain advances of the Loan are for the exclusive benefit of the Lender, its successors and assigns; no other persons shall be entitled to rely upon any of those pre-conditions, or to insist that any of them be satisfied, or to assume that any of them have been satisfied. The Lender reserves the right to waive any such preconditions, in its sole and absolute discretion.

PHDATA 3238277_1

(h)     **Integration; Amendment.**   This Agreement and the other Loan Documents constitute the sole agreement of the parties with respect to the subject matter hereof and thereof and supersede all oral negotiations and prior writings with respect to the subject matter hereof and thereof.  No amendment of this Agreement, and no waiver of any one or more of the provisions hereof shall be effective unless set forth in writing and signed by the parties hereto.

(i)     **Successors and Assigns.**  This Agreement (i) shall be binding upon the Borrower and the Lender and, where applicable, their respective heirs, executors, administrators, successors and permitted assigns, including a Chapter 7 or Chapter 11 Trustee, as applicable, and (ii) shall inure to the benefit of the Borrower and the Lender and, where applicable, their respective heirs, executors, administrators, successors and permitted assigns; provided, however, that the Borrower may not assign its rights or obligations hereunder or any interest herein without the prior written consent of the Lender, and any such assignment or attempted assignment by the Borrower shall be void and of no effect with respect to the Lender. The Lender may from time to time sell or assign, in whole or in part, or grant participation in the Loan and/or the Note and/or the obligations evidenced thereby.   The Borrower authorizes the Lender to provide information concerning the Borrower to any prospective purchaser, assignee or participant.

(j)     **Severability and Consistency.**   The illegality, unenforceability or inconsistency of any provision of this Agreement or any instrument or agreement required hereunder shall not in any way affect or impair the legality, enforceability or consistency of the remaining provisions of this Agreement or any instrument or agreement required hereunder.  The Loan Documents are intended to be consistent.  However, in the event of any inconsistencies among any of the Loan Documents, such inconsistency shall not affect the validity or enforceability of any Loan Document The Borrower agrees that in the event of any inconsistency or ambiguity in any of the Loan Documents, the Loan Documents shall not be construed against any one party but shall be interpreted consistent with the Lender's policies and procedures.

(k)     **Consent to Jurisdiction and Service of Process.**   The Borrower irrevocably appoints each other as its attorney upon whom may be served, by regular or certified mail at the address set forth in this Agreement, any notice, process or pleading in any action or proceeding against it arising out of or in connection with this Agreement or any of the other Loan Documents.  The Borrower hereby consents and agrees that (i) any action or proceeding against it may be commenced and maintained in any court within the Commonwealth of Pennsylvania, the United States District Court for the Eastern District of Pennsylvania or the United States Bankruptcy Court for the Eastern District of Pennsylvania by service of

PHDATA 3238277_1

process on any such owner, partner and/or officer and (ii) the courts of the Commonwealth of Pennsylvania and the United States District Court for the Eastern District of Pennsylvania and the United States Bankruptcy Court for the Eastern District of Pennsylvania shall have jurisdiction with respect to the subject matter hereof and the person of the Borrower and all collateral for the Liabilities. The Borrower agrees that any action brought by the Borrower shall be commenced and maintained only in a court in the federal judicial district or county in which the Lender has its principal place of business in the Commonwealth of Pennsylvania.

(l)     **Joint and Several Liability.** In the event that the Borrower consists of more than one person or entity, the Liabilities of each such person or entity shall be joint and several and the word "Borrower" means each of them, any of them and/or all of them.

23.     **Judicial Proceeding; Waivers.**

THE BORROWER AND THE LENDER ACKNOWLEDGE AND AGREE THAT (i) ANY SUIT, ACTION OR PROCEEDING, WHETHER CLAIM OR COUNTERCLAIM, BROUGHT OR INSTITUTED BY THE LENDER OR THE BORROWER OR ANY SUCCESSOR OR ASSIGN OF THE LENDER OR THE BORROWER, ON OR WITH RESPECT TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT OR THE DEALINGS OF THE PARTIES WITH RESPECT HERETO, OR THERETO, SHALL BE TRIED ONLY BY A BANKRUPTCY COURT WITHOUT A JURY; (ii) EACH WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER, IN ANY SUCH SUIT, ACTION OR PROCEEDING, ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES; AND (iii) THIS SECTION IS A SPECIFIC AND MATERIAL ASPECT OF THIS AGREEMENT AND THAT THE LENDER WOULD NOT EXTEND CREDIT TO THE BORROWER IF THE WAIVERS SET FORTH IN THIS SECTION WERE NOT A PART OF THIS AGREEMENT.   IN THE EVENT THE CHAPTER 11 CASE IS DISMISSED OR CONVERTED TO A CHAPTER 7 CASE AND DISMISSED, BORROWER WAIVES ANY RIGHT IT MAY HAVE TO A JURY TRIAL.

PHDATA 3238277_1

IN WITNESS WHEREOF, and intending to be legally bound, the Lender and Borrower have executed Lender this Agreement, as of the day and year first above written.

Address:
345 Main Street
Harleysville, Pennsylvania 19438

**TH PROPERTIES, L.P., A PENNSYLVANIA LIMITED PARTNERSHIP**

By:    TH Properties, LLC, its general partner

By:    _____
          Timothy P.  Hendricks, Member

By:    _____
          W. Todd Hendricks, Member

**TH PROPERTIES, INC., A PENNSYLVANIA CORPORATION**

By:    _____

**HARLEYSVILLE NATIONAL BANK AND TRUST COMPANY**

By:    _____
          William Campbell, Senior Vice President

Date:  October __, 2009

22

PHDATA 3238277_1

EXHIBIT "A"

LEGAL DESCRIPTION

See Attached

PHDATA 3238277_1

EXHIBIT "D"

INTERIM ORDER

See Attached.

## DEBTOR-IN-POSSESSION CONSTRUCTION LOAN NOTE

### HARLEYSVILLE NATIONAL BANK AND TRUST COMPANY

**$588,650.00**                                                                    **October __. 2009**

FOR VALUE RECEIVED, TH PROPERTIES, L.P. ("TH, L.P."), a Pennsylvania limited partnership, and TH PROPERTIES, INC. ("TH, INC."), a Pennsylvania corporation, each maintaining an address of 345 Main Street, Harleysville, Pennsylvania 19438 (the "Maker") promises to pay to the order of HARLEYSVILLE NATIONAL BANK AND TRUST COMPANY, having offices located at 483 Main Street, Harleysville, Pennsylvania 19438 (the "Payee"), the principal amount of Five Hundred Eight-Eight Thousand Six Hundred Fifty Dollars ($588,650.00), or as much as is advanced hereunder in lawful money of the United States of America, together with interest thereon, on the terms and provisions described below.

1.    Background.  This Note evidences a Debtor-In-Possession Construction Loan made available by the Payee to the Maker on the date hereof in the principal amount of Five Hundred Eighty-Eight Thousand Six Hundred Fifty Dollars ($588,650.00) (the "Loan") and the Maker's duty and obligation to repay the Loan on the terms and provisions hereinafter set forth.    This note is the Note referred to in the Debtor-in-Possession Construction Loan Agreement ("Loan Agreement") and Open-End Mortgage of even date herewith between the Maker and the Payee (the Loan Agreement, the aforementioned mortgage and this Debtor-in-Possession Construction Loan Note shall be referred to herein collectively as the "Loan Documents").    All capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Loan Agreement.

2.    Use of Loan Proceeds.  Advances under the Loan shall be used by the Maker solely for the purposes set forth in the Loan Agreement, including, without limitation, construction of houses at the Coddington View Subdivision in Upper Pottsgrove Township, Montgomery County, Pennsylvania (collectively, the "Premises").

3.    Advance Procedure.  The Loan shall be advanced in the manner set forth in the Loan Agreement and shall consist of a Pre-Advance of One Hundred Thousand Dollars ($100,000.00) and subsequent advances as approved and certified by Payee and after satisfaction of the Conditions to Advance as set forth in full in the Loan Agreement.

4.    Interest.  Interest on the outstanding and unpaid principal balance of this Note Interest will be charged on the outstanding principal balance of the Loan from the date hereof until the full amount of principal due hereunder has been paid in full. From the date of this Note until the Maturity Date interest on the outstanding principal balance shall accrue at the rate of interest equal to the highest prime rate of interest as published in the "Money Rates" section of The Wall Street Journal from time to time, or if such index or publication is no longer published, or available, a comparable index selected by the Lender.  Interest shall be calculated daily on the basis of the actual number of days elapsed over a three hundred sixty day (360) year. Interest will continue to accrue on the Existing Loans at the rates set forth in the Existing Loan Agreement.

A "Business Day" shall mean, in respect to any date that is specified in this Note to be subject to adjustment in accordance with applicable Business Day convention, any day on which the Payee is open for business.

5.  Repayment of Principal and Payment of Interest.  The Maker shall repay principal and pay interest to the Payee on this Note as invoiced by the Payee to the Maker in accordance with the terms and provisions set forth in the Loan Agreement.

6.  Maturity Date.  The entire unpaid principal balance of this Note, including accrued and outstanding interest an other amounts evidenced by this Note, shall be due and payable May 31, 2010 (the "Maturity Date").

7.  Place of Payment.  Payments of principal, interest and other amounts owed under this Note shall be made by the Maker to the Payee at 483 Main Street, Harleysville, Pennsylvania 19438, or to such other location as the Payee may hereafter designate in writing to the Maker.

8.  Prepayments.  The unpaid principal balance of this Note may be prepaid at any time and from time to time, in whole or in part, without premium or penalty.

9.  Security.  In addition to other security defined in the Loan Agreement, this Note is secured by, and entitled to all of the benefits of a second-lien priority Open-End Mortgage dated the date hereof granted by TH, L.P., as mortgagor, in favor of the Payee, as mortgagee, pursuant to which the TH, L.P. granted to the Payee a second priority lien upon and a security interest in, the Premises, together with all buildings, improvements and fixtures located thereon or to be constructed thereon (the "Mortgaged Property"), which Open-End Mortgage is intended to be forthwith recorded in the Office of the Recorder of Deeds, Montgomery County, Pennsylvania (the "Open-End Mortgage").

10.  Default.  The Maker shall be in default under this Note after the occurrence of an Uncured Event of Default as defined in the Loan Agreement.

11.  Rights and Remedies.  After the occurrence of any Uncured Event of Default as defined in the Loan Agreement, the Payee may exercise any and all rights and remedies set forth in this Note, the Loan Agreement, any other loan documents referred to in the Loan Agreement or given by the Maker to the Payee for the Loan or otherwise available under applicable law.

12.  Confession of Judgment.  The Borrower hereby irrevocably authorizes the Prothonotary or any attorney of any court of record in Pennsylvania or elsewhere to appear for and confess judgment against the Borrower for any and all amounts unpaid hereunder, together with any other charges, costs and expenses for which Borrower is liable under this Note, and together with fees of counsel in the reasonable amount often percent (10%) of all of the foregoing (but in no event less than $1,000.00) and costs of suit, releasing all errors and waiving all rights of appeal.  If a copy of this Note, verified by affidavit, shall have been filed in such proceeding, it shall not be necessary to file the original as a warrant of attorney.  The Borrower hereby waives the right to any stay of execution and the benefit of all exemption laws now or

2

hereafter in effect. No single exercise of this warrant and power to confess judgment shall be deemed to exhaust this power, whether or not any such exercise shall be held by any court to be invalid, voidable or void, but this power shall continue undiminished and may be exercised from time to time as often as the Lender shall elect until all sums due hereunder shall have been paid in full. Interest shall continue to accrue after entry of judgment hereunder, by confession, default, or otherwise, at the higher of the prevailing rate of interest under this Note, or the judgment rate of interest under applicable law.

13.    THIS NOTE CONTAINS, AT PARAGRAPH 12, A WARRANT OF ATTORNEY TO CONFESS JUDGMENT AGAINST THE BORROWER. IN GRANTING THIS WARRANT OF ATTORNEY TO CONFESS JUDGMENT AGAINST THE BORROWER, THE BORROWER HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY, AND ON THE ADVICE OF SEPARATE COUNSEL OF THE BORROWER, UNCONDITIONALLY WAIVES ANY AND ALL RIGHTS THE BORROWER HAS OR MAY HAVE TO PRIOR NOTICE AND AN OPPORTUNITY FOR HEARING UNDER THE RESPECTIVE CONSTITUTIONS AND LAWS OF THE UNITED STATES, THE COMMONWEALTH OF PENNSYLVANIA, OR OF ANY OTHER STATE.

14.    _Additional Remedies_. At any time after the occurrence of an Uncured Event of Default as defined in the Loan Documents, the Payee may, at the Payee's option and without notice or demand, do anyone or more of the following: (i) without declaring the unpaid principal balance to be due, collect all installments of interest and all other sums due under this Note from time to time, by any action provided in this Note or provided at law or in equity; (ii) declare the entire unpaid principal balance of this Note and all accrued, unpaid interest hereon to be due and payable immediately; (iii) impose the Default Rate as defined in the Loan Agreement; and/or (iv) exercise any other right or remedy that the Payee may have under this Note, the Loan Agreement, any other loan documents referred to in the Loan Agreement or given by the Maker to the Payee for the Loan or otherwise available at law or in equity, including that Payee shall be entitled to immediate relief from the automatic stay pursuant to 11 U.S.C. § 362 without further order of the Bankruptcy Court.

15.    _Waiver of Trial by Jury: Jurisdiction_.

a.    The Maker agrees that any suit, action, or proceeding, whether claim or counterclaim, brought or instituted by either party hereto or any successor or assign of any party on or with respect to this Note, the Loan Agreement or any loan document referred to in the Loan Agreement or given by the Maker to the Payee for the Loan or which in any way relates, directly or indirectly, to the Loan or any event, transaction, or occurrence arising out of or in any way in connection with the transaction contemplated by the Loan Agreement, or the dealings of the parties with respect thereto , shall be tried only by a court and not by a jury. THE MAKER HEREBY EXPRESSLY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION, OR PROCEEDING. THE MAKER ACKNOWLEDGES AND AGREES THAT THIS PARAGRAPH 15 is A SPECIFIC AND MATERIAL ASPECT OF THIS NOTE.

b.    For the purpose of any suit, action or proceeding arising out of or relating to this Note, the Loan Agreement or the other loan documents referred to in the

Agreement or given by the Maker to the Payee for the Loan, the Maker hereby irrevocably consents and submits to the jurisdiction and venue of any of the Courts of the Commonwealth of Pennsylvania including, without limitation, the Court of Common Pleas of Montgomery County and the Federal District Court for the Eastern District of Pennsylvania, and appoints and constitutes the Secretary of State of the Commonwealth of Pennsylvania as its agent to accept and acknowledge on its behalf all service of process in connection with any such matter, copies of which process shall be mailed or delivered to the Maker. The Maker irrevocably waives any objection which it may now or hereinafter have to the laying of the venue of any suit, action or proceeding brought in such court and any claim that such suit, action or proceeding brought in such a court has been brought in an inconvenient forum and agrees that service of process in accordance with the foregoing sentence shall be deemed in every respect effective and valid personal service of process upon the Maker.

The provisions of this Paragraph 15 shall not limit or otherwise affect the right of the Payee to institute and conduct an action in any other appropriate manner, jurisdiction or court.

16.    Costs and Attorneys' Fees.  In any action under this Note in which the Payee is the prevailing party, the Maker shall be responsible for the payment to the Payee of all reasonable costs, including without limitation, legal fees and expenses, incurred by the Payee in connection with such action.

17.    Late Charges.  If any payment due under this Note becomes overdue for a period of more than ten (10) days from the due date, Borrower shall pay to Lender a late charge of eight percent (8%) of each applicable monthly installment overdue for the purpose of defraying expenses incident to handling such delinquent amounts, as well as the loss of the use of the monies due, and Borrower acknowledges such amount as a reasonable estimate of the damages incurred by Lender in connection with any such late payment.

18.    Remedies Cumulative.  The rights and remedies provided to the Payee under this Note are not exclusive and are in addition to any other rights and remedies the Payee may have in the Loan Agreement, any other loan documents referred to in the Loan Agreement or given by the Maker to the Payee for the Loan or at law or in equity under applicable law; shall be cumulative in concurrence; may be pursued, singly, successively or together against the Maker; and may be exercised as often as occasion therefor shall allow.

19.    Waivers.  The Maker waives presentment for payment, demand, notice of dishonor, protest, and notice of protest with regard to this Note (other than, with respect to the foregoing waivers, those notices expressly required hereby), all errors, defects and imperfections in any proceedings instituted by the Payee under this Note, and all benefits that might accrue to the Maker by virtue of any present or future laws exempting any property (including the Mortgaged Property), real or personal, or any part of the proceeds arising from any sale of any such property, from attachment, levy, or sale under execution, or providing for any stay of execution, exemption from civil process, or extension of time for payment.

20.    Payee's Waivers.  The Payee shall not be deemed, by any act of omission or commission, to have waived any of its rights or remedies hereunder unless such waiver is in writing and signed by the Payee. Such a written waiver signed by the Payee shall waive the

4

Payee's rights and remedies only to the extent specifically stated in such written waiver. A waiver as to one or more particular Events of Default as defined in the Loan Agreement shall not be construed as continuing or as a bar to or waiver of any right or remedy as to another or subsequent Event of Default as defined in the Loan Agreement.

21.   Loan Agreement and Mortgage. The covenants, conditions, terms and provisions of the Loan Agreement are incorporated into this Note to the extent they are not inconsistent with the covenants, conditions, terms and provisions stated herein.

22.   Successors and Assigns. The provisions of this Note shall be binding upon and inure to the benefit of the Maker and the Payee and their respective heirs, successors, trustees and permitted assigns; provided, however, the Maker shall not be permitted to delegate any of its duties or obligations under this Note without the prior written consent of the Payee.

IN WITNESS WHEREOF, the Maker, intending to be legally bound hereby, has caused this Note to be duly executed the day and year first above written.

**MAKER:**

**TH PROPERTIES, L.P.**, a Pennsylvania limited partnership by:

**TH PROPERTIES, LLC**, a Pennsylvania limited liability company, general partner of TH Properties

By:_____
    W. Todd Hendricks, Managing Member


By:_____
    Timothy P. Hendricks, Managing Member



**TH PROPERTIES, INC.**, a Pennsylvania corporation


By:_____

5

**DRAFT**

**OPEN-END MORTGAGE FROM TH PROPERTIES,
A PENNSYLVANIA LIMITED PARTNERSHIP TO
HARLEYSVILLE NATIONAL BANK AND TRUST COMPANY
CODDINGTON VIEW SUBDIVISION, UPPER POTTSGROVE
TOWNSHIP, MONTGOMERY COUNTY, PENNSYLVANIA**

*(This is an Open End Mortgage and secures future advances
pursuant to 42 Pa. CS. §§8143 and 8144, Act No. 126 of 1990)*

THIS OPEN-END MORTGAGE ("Mortgage") is made this __ day of October, 2009, by and between TH PROPERTIES, L.P., a Pennsylvania limited partnership, maintaining an address of 345 Main Street, Harleysville, Pennsylvania 19438 ("Mortgagor"), and HARLEYSVILLE NATIONAL BANK AND TRUST COMPANY, having offices located at 483 Main Street, Harleysville, Pennsylvania 19438 ("Mortgagee").

## BACKGROUND

A.    Mortgagor is the owner of the premises known as the Coddington View Subdivision, Upper Pottsgrove Township, Montgomery County, Pennsylvania (collectively, the "Premises"). The Premises is more fully described in Exhibit "A" attached hereto.

B.    On or about January 25, 2006, Mortgagee and Mortgagor entered into two (2) Mortgage Notes and a Construction Loan Agreement pursuant to which Lender agreed to make available to Borrower a revolving construction line or credit in the maximum principal amount of Two Million Five Hundred Thousand Dollars ($2,500,000) (the "Construction Line of Credit") and a non-revolving land loan in the maximum principal amount of Seventeen Million Two Hundred Thirty-Nine Thousand Four Hundred Ninety Dollars ($17,239,490) (the "Land Loan") (the Land Loan and the Construction Line of Credit shall be know collectively as the "Existing Loans").

C.    The Existing Loans are evidenced by, <u>inter alia</u>, a Mortgage Note in the principal amount of Seventeen Million Two Hundred Thirty-Nine Thousand Four Hundred Ninety Dollars ($17,239,490) (the "Land Loan Note") and a Mortgage Note in the original principal amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) ("Construction Line of Credit Note"). The Existing Loans are secured by, <u>inter alia</u>, a first priority lien in and to the Premises.

D.    On or about April 30, 2009, Mortgagor filed a voluntary petition with the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court") for relief under chapter 11 of Title 11, United States Code (the "Bankruptcy Code") in Case No. 09-13201 (the "Chapter 11 Case").

E.    On or about October __, 2009, Mortgagee made available to Mortgagor and TH Properties, Inc. (the "Borrower") a non-revolving loan in the maximum principal amount of Five Hundred Eighty-Eight Hundred Thousand Six Hundred Fifty Dollars ($588,650) (the "DIP Loan").

F.     As a condition of Mortgagee making the DIP Loan to Borrowers, Mortgagee required Mortgagor to execute and deliver for the benefit of Mortgagee, this Mortgage and any other loan documentation required by Mortgagee including but not limited to a Debtor-in Possession Construction Loan Agreement dated October __, 2009 (the "Loan Agreement") (this Mortgage, the Debtor-in Possession Construction Loan Agreement, any note and all other loan documentation relating to the Loan, including documents related to the Existing Loans, are collectively referred to in this Mortgage as the "Loan Documents").

G.     As of the date hereof, the current principal amount outstanding under the Existing Loans is Five Million Seven Hundred Thirty-Eight Thousand One Hundred Ninety Six and 66/100 Dollars ($5,738,196.66), plus accrued and unpaid interest with respect thereto and additional reasonable fees, costs and expenses pursuant to the Existing Loan Agreement.

H.     Mortgagor desires to secure payment and performance of the amounts due under the Loan Documents and the performance of all other covenants, conditions, terms and provisions contained in the Loan Documents with this Mortgage.

NOW, THEREFORE, incorporating the foregoing recitals as a material part of this Mortgage and intending to be legally bound hereby, Mortgagor for the purpose of securing the payment and performance of the following liabilities (the "Liabilities"): (a) all amounts due or to become due under the Loan Documents and any renewals, modifications or extensions thereof;  (b) any present or future amounts advanced by Mortgagee pursuant to any of the provisions of this Mortgage, the Loan Documents, or any other document evidencing the Liabilities; and (c) any other amounts recoverable by Mortgagee, and all other obligations of Borrowers under the Loan Documents or any other documents evidencing the Liabilities or in any extension, renewal or modification thereof which wholly or partly secures the Loan.

AND IN CONSIDERATION of the Liabilities and according to the conditions of the Loan Documents and in consideration of the further amount of One Dollar ($1.00) in hand paid by Mortgagee, receipt whereof is hereby acknowledged, and the Mortgagor has granted, bargained, sold, alienated, enfeoffed, released, conveyed and confirmed and by these presents do grant, bargain, sell, alien, enfeoff, release, convey and confirm to Mortgagee its successors and assigns, the Premises, including the dwellings located thereon and all other structures and improvements erected on the Premises, as well as all alterations, additions and improvements now or hereafter made to the Premises (the "Improvements").

TOGETHER WITH all machinery, appliances, apparatus, equipment, fittings, fixtures, furniture, furnishings, inventory, goods and articles of personal property of every kind and nature whatsoever owned by Mortgagor, now or hereafter located on, about, under or in the Premises or the Improvements or at any time erected thereon, without regard to whether the same may be affixed to the premises or Improvements, at any time or from time to time, and used or usable in connection with any present or future operation and/or occupancy of the Improvements, and all parts and accessories therefore and all substitutions and replacements thereon, and the cash and non-cash proceeds of all of the foregoing, including but not limited to the proceeds of any policy or policies of insurance thereon (collectively, the "Equipment").

2

TOGETHER WITH all awards, decrees and settlements made to or for the benefit of Mortgagor by reason of damage to, destruction of or taking of the Premises or any part thereof or any Improvements or any Equipment, whether such award shall be made by reason ,of the exercise of the right of eminent domain or otherwise, or by any public or private authority, tribunal, corporation or other entity or by any natural person (the "Awards").

TOGETHER WITH all right, title and interest now owned or hereafter acquired by Mortgagor, in and to all leases and other agreements affecting the use or occupancy of any portion or all of the Premises or Improvements, whether heretofore or hereafter executed, and all rights of Mortgagor to payment under any such lease or agreement, including without limitation any deposits, rents (including additional rent), income, receipts, revenues, issues and profits, now or hereafter due (collectively the "Leases").

TOGETHER WITH all right, title and interest now owned or hereafter acquired by Mortgagor, in and to all rights, covenants, privileges, tenements, hereditaments, appurtenances and awards belonging to the Premises or any part thereof, or in any way appertaining thereto, and all streets, roads, lanes, alleys, passages, ways, water courses, and all leasehold estates, easements, licenses, privileges, agreements and covenants now existing or hereafter created for the benefit of Mortgagor, or any subsequent owner or tenant of the Premises over ground adjoining the Premises, all rights to enforce the maintenance thereof, and all other rights, liberties, and privileges of whatsoever kind or character, and the reversions and remainders, income, rents, issues, profits, fees, payments, grants, franchises, concessions and operating privileges arising therefrom, and all the estate, right, title, interest, property, possession, claim and demand whatsoever, at law or in equity, of Mortgagor in and to the Premises or any par thereof, together with all of Mortgagor's contract rights, accounts and general intangibles (the "Hereditaments").

All Improvements, Equipment, Leases and Hereditaments are declared and shall be deemed to be fixtures and a part of the Premises as between Mortgagor and Mortgagee, their respective successors and assigns, and all persons, including creditors, claiming by, through or under them or any of them, it being the intention of Mortgagor and Mortgagee that the Liabilities shall be secured inter alia, by the Improvements erected on the Premises as furnished and equipped and that all articles of real, personal or fixed property, furniture, furnishings, machinery and equipment as well as all building materials and plans, drawings and specifications, and contracts owned by Mortgagor or in which Mortgagor has an interest, necessary or useful for any purpose to which such Improvements are now or hereafter put, which may at any time hereafter be in, on or about the Premises, not limited to those enumerated above, as well as the proceeds thereof: shall be deemed to be a part of the security for the Liabilities and subject to the lien of this Mortgage. This Mortgage shall also constitute a security agreement under the Pennsylvania Uniform Commercial Code so that Mortgagee shall have and may enforce a security interest, to secure payment of the Liabilities, in the Improvements, Equipment, Awards, Leases, Hereditaments, and other articles of real, personal or fixed property in addition to (but not in limitation of) the lien upon the Premises imposed by the foregoing provisions hereof, such security interest to attach at the earliest moment permitted by law and also to include and attach to all contract rights, accounts, leases, chattel paper, instruments, receivables, proceeds, including but not limited to, insurance proceeds, any policy or policies of insurance thereon and general intangibles of Mortgagor obtained in connection with or relating to the operation,

3

construction and maintenance of the Premises, whether now existing or hereafter arising, as well as any and all additions, accessions and attachments to the foregoing and all substitutions and replacements of the foregoing now existing or hereafter acquired. Mortgagor shall execute, deliver, file and refile any financing statements, continuation statements, or other security agreements Mortgagee may reasonably require from time to time to perfect, conform, preserve and maintain the validity and priority of this security interest.

TO HAVE AND TO HOLD the Premises, together with the Improvements, Equipment, Awards, Leases and Hereditaments, to Mortgagee, it successors and assigns, forever (all the property of whatever kind secured by this Mortgage, shall be referred to as the "Mortgaged Property")

PROVIDED ALWAYS, that if Mortgagor shall pay or cause to be paid to Mortgagee, the Liabilities and all other indebtedness secured by this Mortgage, and Mortgagor shall perform and comply with all the agreements, conditions, covenants, provisions and stipulations contained in this Mortgage and the Loan Documents, then this Mortgage and the estate granted shall cease, determine and become void, and Mortgagor shall pay all satisfaction costs, including without limitation the cost of preparing, recording and acknowledging the satisfaction of this Mortgage.

Mortgagor represents, warrants and covenants as follows:

1.      Title.  As of the date of this Mortgage: (a) Mortgagor has good and marketable title to an indefeasible fee estate in the Premises free and clear of all liens and encumbrances, except those enumerated in Mortgagee's title insurance policy insuring the lien of this Mortgage and approved by Mortgagee; (b) this Mortgage is and shall remain a valid and enforceable second lien on the Mortgaged Property; (c) Mortgagor has full power and lawful authority to create this Mortgage on the Mortgaged Property and there is no restriction or limitation on the right of Mortgagor to encumber the Mortgaged Property as intended by this Mortgage; and (d) Mortgagor shall preserve such title and shall forever warrant and defend the validity and priority of the lien of this Mortgage against the claims of all persons and entities whomsoever claiming by, through or under Mortgagor.

2.      Payment and Performance.  Mortgagor shall punctually pay the Liabilities and all other indebtedness secured by this Mortgage, in the amounts and at the times and places that the same may be due, and perform and comply with all of the terms, covenants, conditions and obligations contained in this Mortgage and the Loan Documents.

3.      Taxes and Other Charges. Subject to the terms of this Mortgage, Mortgagor shall pay or cause to be paid all taxes of every kind and nature which may become a lien against any part of the Mortgaged Property, all general and special assessments, water and sewer rents and charges, and all levies, permits, inspection and license fees and other public charges now or hereafter levied or assessed against the Mortgaged Property as liens or assessments (individually called a "Tax" and collectively called the "Taxes") as the same shall become due and payable from time to time; provided, however, that Mortgagor shall not be required to pay any Tax to the extent that nonpayment thereof is permitted while the validity thereof is being contested, Mortgagor notifies Mortgagee in writing of its intention to contest the

4

validity thereof, the validity thereof is being contested diligently and in good faith by Mortgagor and deposits into an escrow account if Mortgagee so requests an amount sufficient to make such payment if the contest is unsuccessful. Notwithstanding the foregoing, Mortgagor shall under no circumstances permit the Mortgaged Property to be sold for nonpayment of any Tax. Subject to Mortgagor's right to contest any Tax as hereinabove provided, Mortgagor shall deliver to Mortgagee receipts evidencing the payment of such Tax as soon as such receipts are available, but in no event later than thirty (30) days after the date when due and payable.

4.    Insurance. Mortgagor shall maintain such types of insurance on the Mortgaged Property as Mortgagee may reasonably require from time to time. Such insurance shall include, but may not be limited to, the following:

a.    Commercial general liability insurance on an "occurrence basis" against claims for "personal injury", including bodily injury, death and property damage occurring on, in or about the Mortgaged Property or the adjoining streets, sidewalks, passageways, alleys, driveways, easements, vaults, way or water courses, with minimum coverage as may be reasonably required by Mortgagee. Each policy of such insurance shall contain an endorsement naming Mortgagee as an additional insured.

b.    Property insurance on an all-risk form for the greater of the replacement value of the Mortgaged Property and the amount of the Liabilities upon all of its real and personal property (including without limitation sprinkler, boiler and machinery insurance covering pressure vessels, air tanks, boilers, machinery and pressure piping, and sprinkler, fire extinguishing, heating, air conditioning, elevator and escalator systems (to the extent that such systems exist), machinery and equipment unless no such equipment is part of the Mortgaged Property, and insurance against loss of occupancy or use arising from the breakdown of any such equipment), with insurance companies permitted to insure risks in Pennsylvania, reasonably satisfactory to Mortgagee, naming Mortgagee as the first mortgagee and loss payee.

c.    Such other insurance as may be reasonably required by Mortgagee.

d.    All of the above described insurance policies shall have the standard mortgagee and loss payee clauses attached in a form reasonably satisfactory to Mortgagee and copies of such policies, certificates and endorsements thereto shall be delivered to and held by the Mortgagee until the Liabilities are fully repaid. Each of the above-described insurance policies shall contain a provision that it cannot be amended, modified, canceled or terminated without giving thirty (30) days' prior written notice to Mortgagee. In the event Mortgagor receives notice that any such insurance will lapse, be terminated or otherwise become unavailable, then Mortgagor shall, prior to the date of such lapse, termination or unavailability, provide replacement policies in form and substance similar to that previously in place in the same principal amount of such prior policy of insurance. No less than thirty (30) days prior to any date upon which any premium or installment thereof for such insurance shall be due and payable, Mortgagor shall deliver to Mortgagee satisfactory evidence that the entire year's premiums have been paid, and further, not less than thirty (30) days prior to the expiration of any insurance policy, Mortgagor shall deliver to Mortgagee satisfactory evidence of the renewal of such policies.

e.    Mortgagor shall notify Mortgagee in writing immediately upon the occurrence of any loss required to be insured under this Mortgage.

f.    In the event Mortgagor fails to cause the insurance policies in this Paragraph to be written and pay the premiums therefor and deliver such policies and renewal certificates thereof to Mortgagee upon Mortgagee's request (notwithstanding Mortgagee's right to declare an Event of Default), Mortgagee shall nevertheless have the right, without being obligated to do so, to effectuate such insurance and pay the premiums therefor. All such premiums paid by Mortgagee shall be repaid by Mortgagor to Mortgagee on demand, together with any interest at the rate specified in the Loan Documents from the date such payment was made, and the aggregate amount thereof, including such interest, shall become part of the Liabilities.

g.    Mortgagor shall comply with and conform to (i) all provisions of each insurance policy and (ii) all requirements of the insurers, applicable to Mortgagor or the Mortgaged Property or to the use, manner of use, occupancy, possession, operation, maintenance, alteration or repair of any of the Mortgaged Property, even if such compliance necessitates structural changes or improvements or results in interference with the use or enjoyment of any of the Mortgaged Property. Mortgagor shall not use any of the Mortgaged Property in any manner which would permit the insurer to cancel or increase the premium for any insurance policy.

h.    In the event that the Mortgaged Property is partially or totally damaged or destroyed, the insurance proceeds shall be paid to the Mortgagee. Mortgagor shall have the right to use the insurance proceeds to reconstruct, repair or restore the damaged portion of the Mortgaged Property under the following conditions:

i.    There has occurred no Event of Default, as defined in this Mortgage;

ii.    Mortgagee is satisfied that Mortgagor has the ability to continue making regular payments on account of the Liabilities during the period of reconstruction, repair or restoration of the damaged portion of the Mortgaged Property;

iii.    Mortgagor presents Plans and Specifications for the proposed reconstruction, repair and restoration of the Mortgaged Property, in a form reasonably satisfactory to Mortgagee;

iv.    The insurance proceeds are deposited with Mortgagee plus any other additional amounts necessary to reconstruct, repair or restore the Mortgaged Property;

v.    Mortgagor and Mortgagee enter into a construction loan agreement mutually satisfactory to Mortgagor and Mortgagee setting forth how advances from the insurance proceeds deposited with Mortgagee are to be made; and

vi.    Any excess insurance proceeds after the reconstruction, repair and restoration of the Mortgaged Property shall be applied to the Liabilities.

In the event these conditions are not complied with, Mortgagee may apply the insurance proceeds on account of the Liabilities.

i.      If Mortgagee shall acquire title to the Mortgaged Property either by virtue of a deed in lieu of foreclosure or a judicial sale of the Mortgaged Property, then all of Mortgagor's estate, right, title and interest in and to an such policies, including unearned premiums on such polices and the proceeds of such policies, shall vest in Mortgagee.

5.      Preservation of Lien.  Mortgagor shall pay from time to time as and when the same shall become due, all claims and demands of any persons or entities which, if unpaid, might result in or permit the creation of a lien on the Mortgaged Property, and in general shall do or cause to be done everything necessary so that the lien hereof shall be fully preserved as a second lien and so that there shall not be created, permitted or suffered to exist any liens, encumbrances or charges affecting the Mortgaged Property.

6.      No Transfer of Title.  Except in the ordinary course of business, Mortgagor shall not cause or permit any transfer of any legal or equitable interest, rights or title in or to the Mortgaged Property or any part thereof, voluntarily or by operation of law (other than by execution on any of the Liabilities or foreclosure under this Mortgage); including, without limitation, by sale, exchange, conveyance, merger, consolidation or otherwise.

7.      Future Advances.  This Mortgage shall also cover present and future loans and advances made pursuant to this Mortgage and the Loan Documents including, but not limited to, payment of taxes, assessments, maintenance charges, insurance premiums and other costs incurred for the protection of the Mortgaged Property or the lien of this Mortgage and expenses incurred by Mortgagee by reason of default including but not limited to attorney's fees and late charges. Such loans and advances shall become part of the Liabilities and shall relate back to the date of this Mortgage.

8.      Condemnation.  In the event that the whole or any part of the Mortgaged Property secured by this Mortgage is condemned or taken for any period of time, or there is any other injury to or material decrease in value of the Mortgaged Property as a result of any public or quasi-public authority or corporation exercising the power of eminent domain or otherwise, all amounts awarded as damages for such condemnation or taking to which Mortgagor is entitled shall be paid over immediately to Mortgagee for the benefit of Mortgagor and applied toward the repayment of the Liabilities. Any proceeds in excess of the condemnation proceedings and settlement thereof shall be paid to the Mortgagor.    Mortgagee may participate in the condemnation proceedings and settlement thereof, and deduct the reasonable costs of same from these proceeds. If Mortgagor fails to proceed in a timely manner, Mortgagee may settle all condemnation proceedings and may demand and receive all monies becoming payable under such settlements and proceedings.

9.      Maintenance and Repair.  Mortgagor shall cause the Mortgaged Property to be maintained in good order, condition and repair (normal wear and tear excepted), and shall not commit or suffer waste with respect thereto. The Improvements and the Equipment shall not be removed, demolished or materially altered other than in the normal course of business without prior written consent of Mortgagee which shall not be unreasonably withheld or delayed and any

7

such removal, demolition or alteration shall not materially reduce the value of the Improvements or Equipment. Mortgagor shall promptly and at all times comply with all laws, orders, ordinances, regulations, restrictions and requirements of governmental authorities and courts applicable to Mortgagor or affecting the Mortgaged Property or the use thereof.

10. <u>Leases or Other Agreements</u>. Mortgagor shall not enter into any lease, license or similar agreement relating to the Mortgaged Property without the prior written consent of Mortgagee.

11. <u>No Other Financing or Liens</u>. Mortgagor shall not, without the prior written consent of Mortgagee, create, cause or permit to exist any lien on, or security interest in the Mortgaged Property, nor incur any indebtedness for money borrowed to purchase or improve the Mortgaged Property or any part thereof, except for the Liabilities.

12. <u>Required Notice</u>. Mortgagor shall give Mortgagee prompt written notice of any action or proceeding purporting to affect the Mortgaged Property including, without limitation, the following:

a. A fire or other casualty causing damage to the Mortgaged Property in excess of Ten Thousand Dollars ($10,000.00);

b. Receipt of notice of condemnation of all or any portion of the Mortgaged Property;

c. Receipt of notice from any governmental authority relating to the use or occupancy of the Mortgaged Property to the extent such notice is material and adverse to the Mortgaged Property;

d. Receipt of any notice (other than notices concerning routine operations) from any lessee or occupant of all or any portion of the Mortgaged Property to the extent such notice is material and adverse to the Mortgaged Property;

e. Commencement of any legal or governmental proceeding, or any threat thereof, the outcome of which could materially or adversely affect the Mortgaged Property or the use thereof or Mortgagor's financial condition, business or operations. Mortgagee shall have the right to appear in or defend any such action or proceeding to the same extent as Mortgagor. Furthermore, Mortgagee shall have the right to bring any action or proceeding, in the name and on behalf of itself or Mortgagor, which Mortgagee, in its discretion, decides should be brought to protect its interest in the Mortgaged Property or any part thereof;

f. Any material adverse change in the financial condition of Mortgagor; and

g. Any Event of Default (as defined herein) or any default of Mortgagor of any provision of the Loan Documents.

13. <u>Mortgagee's Right to Cure</u>. Mortgagee may, at Mortgagee's election, upon written notice to Mortgagor, cure any default by Mortgagor under this Mortgage or the Loan

8

Documents including, without limitation, the making of necessary repairs to the Mortgaged Property. The amount of any payments made or expenses incurred by Mortgagee in the exercise of such right shall be repayable on demand by Mortgagor, together with interest at the rate specified in the Loan Documents from the date such payment was made or such expense was incurred, and the aggregate amount thereof, including such interest, shall become part of the Liabilities.

14.    Right to Inspect. Mortgagee and its agents may enter and inspect the Mortgaged Property or any part thereof at all reasonable times after reasonable prior written notice to Mortgagor.

15.    Environmental Requirements. Mortgagor represents and warrants to Mortgagee that no materials or substances previously have been or are now located in, on or near the Mortgaged Property which, under federal, state, or local law, statute, ordinance or regulation, or court or administrative order or decree, or private agreement (collectively, "Environmental Requirements"), require special handling in collection, storage, treatment, or disposal Mortgagor shall not place or permit to be placed any such materials or substances in, on or near the Secured Property, and all leases affecting the Secured Property shall contain a covenant to that effect. If at any time it is determined that there are materials or substances located in, on or near the Mortgaged Property which, under any Environmental Requirement, require special handling in collection, storage, treatment or disposal, Mortgagor shall, within thirty (30) calendar days after written notice thereof, commence or cause to be commenced and diligently pursued to completion within thirty (30) calendar days thereafter, at Mortgagor's sole expense, such actions as may be necessary to comply with all Environmental Requirements. If Mortgagor shall fail to take such action, Mortgagee may make advances or payments toward performance or satisfaction of the same but shall be under no obligation so to do; and all sums so advanced or paid, including all sums advanced or paid in connection with any judicial or administrative investigation or proceeding relating thereto, including, but not limited to, attorneys' fees, and fines or other penalty payments, shall be at once repayable by Mortgagor and shall bear interest at the highest rate provided in the Note, from the date the same shall become due and payable until the date paid, and all sums so advanced or paid, with interest as aforesaid, shall become a part of the Liabilities. Mortgagor shall indemnify and hold harmless Mortgagee from all loss, liability, damage, cost and expense, including reasonable attorneys' fees (to the extent not prohibited by law), for failure of the Mortgaged Property to comply in all respects with all Environmental Requirements. The provisions of this paragraph shall survive payoff, release, or foreclosure of this Mortgage. Mortgagor, promptly upon the written request of Mortgagee from time to time, shall provide Mortgagee from time to time with an environmental site assessment or report, all in scope, form, and content satisfactory to Mortgagee. Mortgagee, or its designated agent, may interview any or all of Mortgagor's agents and employees regarding environmental matters, including any consultants or experts retained by Mortgagor, all of whom are directed to discuss environmental issues fully and openly with Mortgagee or its designated agent and to provide such information as may be requested. All of the costs and expenses incurred by Mortgagee with respect to the audits, tests, inspections, and examinations which Mortgagee may conduct, including the fees of the engineers, laboratories, and contractors, shall be paid by Mortgagor. Mortgagor shall remain liable hereunder regardless of any other provisions hereof which may limit Mortgagor's liability. The foregoing is subject to the Mortgagor's rights and remedies to

9

contest any governmental authorities' actions with respect to alleged violations of Environmental Requirements pursuant to Title 11, United States Code.

16.    Indemnification.    Mortgagor agrees to defend, indemnify and hold harmless Mortgagee, its directors, officers, employees, agents, contractors, subcontractors, licensees and invitees, from and against any and all claims, demands, judgments, damages, actions, causes of action, injuries, administrative orders, consent agreements and orders, liabilities, injuries, penalties, costs and expenses of any kind whatsoever, including claims arising out of loss of life, injury to persons, property or business and/or damage to natural resources, whether or not occasioned wholly or in part by any condition, accident or event caused by any act or omission of Mortgagor which arises out of the actual or threatened storage, processing, distillation, treatment, manufacturing, disposal, release or any other use of any hazardous substance or waste on, under or about the Mortgaged Property. Mortgagor shall bear, pay and discharge when and as the same become due and payable, any and all such judgments or claims for damages, penalties or otherwise against Mortgagee and shall hold Mortgagee harmless for such judgments or claims, and shall assume the burden and expense of defending all suits, administrative proceedings and negotiations of any description with any and all persons, political subdivisions or governmental agencies arising out of any of the occurrences set forth in this Mortgage except for such judgments or claims for damages, penalties or otherwise directly arising out of or directly related to acts committed by Mortgagee after Mortgagee has taken possession of the Mortgaged Property in accordance with the Documentation.

17.    Events of Default.    The occurrence of anyone or more of the following events shall constitute an Event of Default under this Mortgage:

a.    Any Event of Default as defined in the Debtor-in-Possession Construction Loan Agreement; and

b.    The failure to comply with, keep and perform any covenant, agreement or condition is not specifically addressed in any of the other Loan Documents and is specifically contained in this Mortgage.

18.    Remedies.    After the occurrence of any Event of Default:

a.    Mortgagee shall be entitled to immediate relief from the automatic stay pursuant to 11 U.S.C. § 362 without further order of the Bankruptcy Court.

b.    The Liabilities shall become due and payable immediately without presentment, demand, notice of nonpayment, protest, notice of protest or other notice of dishonor, all of which are expressly waived by Mortgagor. Mortgagee may institute appropriate proceedings at law or equity to collect the Liabilities or for specific performance of any of the covenants of Mortgagor under this Mortgage or the Loan Documents (and Mortgagor acknowledges that all such covenants may be specifically enforced by Mortgagee by injunction or other appropriate equitable remedy), or to recover damages for any breach thereof, or to foreclose this Mortgage (and upon commencement of any such suit or any such foreclosure of this Mortgage, the Liabilities, if not previously declared due and payable in its entirety, shall at once become due and payable in its entirety. Upon and following an Event of Default the Lender,

10

at its option, may exercise any and all rights and remedies it has under this Mortgage or other Loan Documents and under applicable law, including, without limitation, apply for and after an Event of Default, maturity, whether by acceleration or otherwise, unless otherwise stayed by the Bankruptcy Code, an entry of judgment with respect to any or all of the liabilities.

c.      With or without demand upon Mortgagor for the surrender of possession, Mortgagee may enter upon and take possession of the Mortgaged Property, breaking locks if necessary and without liability for trespass, damages or otherwise and, upon so doing, Mortgagee may, in its discretion and in addition to any of its other rights, as mortgagee-in-possession, alter, improve, complete or repair the Mortgaged Property (and in so doing shall have the right to use the Mortgaged Property and to expend such amounts for that purpose as Mortgagee shall deem best, all of which, with interest thereon at the rate specified in the Loan Documents from date of payment, shall be repayable by Mortgagor on demand and shall be secured by this Mortgage), and operate, rent, sell or lease the same in the name of Mortgagor or Mortgagee upon such terms and conditions as Mortgagee shall deem best.

d.      Mortgagee may initiate an action for possession, dispossess any tenants, users or occupiers of the Mortgaged Property in default in the payment of any rent or other charge for the use thereof, and any tenants or other users or occupiers whose leasehold estates or rights to use the Mortgaged Property are subordinate to the lien of this Mortgage, whether or not any such tenant, user or occupier is so in default; Mortgagor irrevocably appoints Mortgagee attorney-in-fact for Mortgagor for such purposes. If Mortgagor remains in possession after demand by Mortgagee for surrender of possession of the Mortgaged Property, such continued possession by Mortgagor shall be as tenant of Mortgagee, and Mortgagor agrees to pay monthly in advance to Mortgagee such rent for the Mortgaged Property so occupied as Mortgagee may demand, and in default of so doing, Mortgagor may also be dispossessed. In case of the appointment of a receiver of the rents, the foregoing agreement of Mortgagor to pay rent shall inure to the benefit of such receiver.

**Following the occurrence of an Event of Default as defined in this Mortgage, Mortgagor irrevocably authorizes and empowers any attorney of record, or the Prothonotary or Clerk or Deputy Clerk of any court in the Commonwealth of Pennsylvania or elsewhere, as attorney for Mortgagor, as well as for all persons claiming under, by or through Mortgagor, to enter judgment in ejectment for possession of the Mortgaged Property, without the necessity of filing any bond and without any stay of execution or appeal against Mortgagor and all persons claiming under, by or through Mortgagor, and therein confess judgment for the recovery by Mortgagee of possession of the Mortgaged Property for which this instrument (or a copy thereof verified by affidavit) shall be a sufficient warrant; whereupon a writ of possession or other appropriate process to obtain possession of the Mortgaged Property may be issued. Mortgagor releases and agrees to release Mortgagee and any such attorney from all procedural errors and defects whatsoever in entering such action or judgment or in causing such writ of process to be issued or in any proceeding thereon or concerning the same, provided that Mortgagee shall have filed in such action an affidavit made on Mortgagee's behalf setting forth the facts necessary to authorize the entry of such judgment according to the terms of this Mortgage, of which facts such affidavit shall be prima facie evidence; and it is expressly agreed that if for any reason after any such action has been commenced, the same shall be discontinued,**

PHDATA 3238701_1

marked satisfied of record or be terminated, or possession of the Mortgaged Property remain in or be restored to Mortgagor or anyone claiming under, by or through Mortgagor, Mortgagee may, whenever and as often as Mortgagee shall have the right to take possession again of the Mortgaged Property, confess one or more further judgments in ejectment to recover possession of the Mortgaged Property, and the authority and power above given to any such attorney shall extend to all such further judgments in ejectment. Mortgagee shall have the right to confess judgment in ejectment whether before or after an action of mortgage foreclosure is brought or other proceedings in execution are instituted upon this Mortgage and after judgment thereon and after a judicial sale of the Mortgaged Property.

e.      With or without taking possession of the Mortgaged Property, Mortgagee may collect and receive all income, rents and profits thereof, and after deducting the reasonable cost of all alterations, improvements, repairs, completion, partial completion, operation, sale, rental, leasing, commissions and charges, including attorney's fees, incurred by Mortgagee, apply the net income to the Liabilities in such manner as Mortgagee in its discretion shall determine. Mortgagee shall be liable to account only for income, rents and profits actually received by Mortgagee.

f.      To the extent permitted by law and subject to the rights of tenants in security deposits, all deposits held in connection with the rental, lease, license, or use of space or other facilities on the Mortgaged Property at the time of the occurrence of an Event of Default, all interest of Mortgagor in all premiums for, or dividends upon, any insurance for the Mortgaged Property, and all refunds or rebates of taxes and assessments upon the Mortgaged Property which are received by Mortgagor during the continuance of an Event of Default, are assigned to Mortgagee as further security for the payment of the Liabilities.

19.     Remedies Cumulative, Etc.

a.      No right or remedy conferred upon or reserved to Mortgagee under this Mortgage or the Loan Documents or with respect to the Mortgaged Property or now or hereafter existing at or in equity or by statute or other legislative enactment, is intended to be exclusive of any other such right or remedies and each and every such right or remedy shall be cumulative and concurrent, and shall be in addition to every other such right or remedy, and may be pursued separately, concurrently, successively or otherwise, at the sole discretion of Mortgagee, and shall not be exhausted by anyone exercise thereof but may be exercised as often as occasion therefore shall occur. No act of Mortgagee shall be deemed or construed as an election to proceed under anyone such right or remedy, to the exclusion of any other such right. or remedy; furthermore, each such right or remedy of Mortgagee shall be separate, distinct and cumulative and none shall be given effect to the exclusion of any other. The failure to exercise or delay in exercising any such right or remedy, or the failure to insist upon strict performance of any term of this Mortgage or the Loan Documents shall not be construed as a waiver or release of the same, or of any default or Event of Default thereunder, or of any obligation or liability of Mortgagor thereunder.

b.      The recovery of any judgment by Mortgagee or the levy or execution under any judgment upon the Mortgaged Property shall not affect in any manner or to

any extent the lien of this Mortgage upon the Mortgaged Property, or any security interest in any other collateral, or any rights, remedies or powers of Mortgagee under this Mortgage or the Loan Documents or with respect to any collateral, but such lien and such security interest and such rights, remedies and powers of Mortgagee shall continue unimpaired as before. Further, the entry of any judgment by Mortgagee shall not affect in any way the interest payable under this Mortgage or the Loan Documents on any amounts due to Mortgagee.  Interest shall continue to accrue on such amounts at the rate specified in this Mortgage or the Loan Documents after the entry of any judgment and continuing until distribution of the proceeds of any Sheriffs sale.

c.      Mortgagor waives presentment, demand, notice of nonpayment, protest, notice of protest or other notice of dishonor, and all other notices in connection with any default in the payment of, or any enforcement of the payment of: the Liabilities. To the extent permitted by law, Mortgagor waives the right to any stay of execution and the benefit of all exemption laws now or hereinafter in effect.

d.      Mortgagor agrees that Mortgagee may release, compromise, forbear with respect to, waive, suspend, extend or renew any of the terms of this Mortgage or the Loan Documents and that Mortgagee may resort to any collateral in such order and manner as it may think tit, or accept the assignment, substitution, exchange or pledge of any other collateral or guarantee in place of, or release for such consideration, or none, as it may require, all or any portion of any collateral, without in any way affecting the validity of its lien over or other security interest in the remainder of any such collateral; and any action taken by Mortgagee pursuant to any of the foregoing shall in no way be construed as a waiver or release of any right or remedy of Mortgagee, or of any Event of Default, or of any liability or obligation of Mortgagor under this Mortgage or the Loan Documents.

20.     Costs and Expenses.  Following the occurrence of any Event of Default, Mortgagor shall pay upon demand all costs and expenses (including reasonable attorney's fees) reasonably incurred by Mortgagee in the exercise of any of its rights, remedies or powers under this Mortgage or the Loan Documents.  Any amount not paid promptly following demand together with interest at the rate specified in the Loan Documents from the date of the payment of such cost or expense shall become part of the Liabilities.

21.     Severability.  In the event that for any reason one or more of the provisions of this Mortgage or their application to any person or circumstance shall be held to be invalid, illegal or unenforceable in any respect or to any extent, such provisions shall nevertheless remain valid, legal and enforceable in all other respects and to such extent as may be permissible.  In addition, any such invalidity, illegality or unenforceability shall not affect any other provision of this Mortgage.

22.     Notices. Any notice required to be given under this Mortgage may be made by personal service by any nationally recognized courier service or by the United States mail, such notice shall be deemed effective when personally delivered, deposited with such nationally recognized courier service or in the United States mail sent first class, registered or certified mail, postage and all registration or certification fees prepaid, return receipt requested, addressed to the Mortgagee and the Mortgagor at the addresses set forth below or at such other address as each party may designate from time to time, in writing.

PHDATA 3238701_1

If to the Mortgagee:

Harleysville National Bank and Trust Company
483 Main Street
Harleysville, PA  19438
Attention:  William Campbell, Senior Vice President

If to Mortgagor:

TH Properties, L.P., a Pennsylvania limited partnership
345 Main Street
Harleysville, PA  19438

23.   Captions.   The captions of the paragraphs in this Mortgage are for convenience only and shall not control or affect the meaning or construction of any of the terms or provisions of this Mortgage.

24.   Open-End Mortgage.

a.   This Mortgage is a construction mortgage and secures future advances made pursuant to this Mortgage or pursuant to the Loan Agreement.  Without limiting the foregoing, this Mortgage secures all advances made by Mortgagee of any kind or nature described in 42 Pa. C.S. §8144.  The maximum principal amount that may be secured by this Mortgage is $1,000,000; provided that in no event shall Mortgagee be obligated to advance to or for the benefit of Mortgagor in excess of the stated principal amount of the Note, as defined in the Loan Agreement.

b.   If Mortgagor sends a written notice to Mortgagee which purports to limit the indebtedness secured by this Mortgage and to release the obligation of Mortgagee to make any additional advances to Mortgagor, such a notice shall be ineffective as to any future advances made: (i) to enable completion of the improvements on the Mortgaged Property for which the loan secured hereby was originally made; (ii) to pay taxes, assessments, maintenance charges and insurance premiums; (iii) for costs incurred for the protection of the Mortgaged Property or the lien of this Mortgage, (iv) expenses incurred by Mortgagee by reason of a default of Mortgagor hereunder or under the Note or Loan Agreement; and (v) any other costs incurred by Mortgagee to protect and preserve the Mortgaged Property.  It is the intention of the parties hereto that any such advance made by Mortgagee after any such notice by Mortgagor shall be secured by the lien of this Mortgage on the Mortgaged Property.  This Mortgage further secures the performance of all covenants contained in the Loan Documents, and all extensions, renewals, modifications and amendments thereof.

25.   Governing Law.   This Mortgage shall be governed by, construed and interpreted in accordance with the laws of the Commonwealth of Pennsylvania.

26.   Successors and Assigns.   This Mortgage shall be binding upon and inure to the benefit of Mortgagor and Mortgagee and their respective successors and assigns, it being

14

understood that Mortgagor may not assign its rights or obligations under this Mortgage without the prior written consent of the Mortgagee.

27.    No Implied Waiver.  Mortgagee shall not be deemed to have modified or waived any of its rights or remedies hereunder unless such modification or waiver is in writing and signed by Mortgagee and then only to the extent specifically set forth therein.  A waiver in any one event shall not be construed as continuing or as a waiver of or bar to the exercise of such right or remedy with respect to any subsequent event or occurrence.

28.    **WAIVER OF JURY TRIAL.  MORTGAGOR HEREBY WAIVES, AND MORTGAGEE BY ITS ACCEPTANCE HEREOF THEREBY WAIVES, TRIAL BY JURY IN ANY LEGAL PROCEEDING INVOLVING, DIRECTLY OR INDIRECTLY, ANY MATTER (WHETHER SOUNDING IN TORT, CONTRACT OR OTHERWISE) IN ANY WAY ARISING OUT OF OR RELATED TO THIS MORTGAGE OR THE RELATIONSHIP EVIDENCED HEREBY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR MORTGAGEE TO ACCEPT AND RELY UPON THIS MORTGAGE.**

29.    Jurisdiction.  SUBJECT TO THE PROVISIONS OF ANY APPLICABLE RULE OF CIVIL PROCEDURE TO THE CONTRARY, IN ANY LEGAL PROCEEDING INVOLVING, DIRECTLY OR INDIRECTLY, ANY MATTER ARISING OUT OF OR RELATED TO THIS MORTGAGE OR THE RELATIONSHIP EVIDENCED HEREBY, MORTGAGOR HEREBY IRREVOCABLY SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED IN OR SERVING MONTGOMERY OR ANY CONTIGUOUS COUNTY IN THE COMMONWEALTH OF PENNSYLVANIA AND AGREES NOT TO RAISE ANY OBJECTION TO SUCH JURISDICTION OR TO THE LAYING OR MAINTAINING OF THE VENUE OF ANY SUCH PROCEEDING IN SUCH COUNTY. MORTGAGOR AGREES THAT SERVICE OF PROCESS IN ANY SUCH PROCEEDING MAY BE DULY EFFECTED UPON IT BY MAILING A COPY THEREOF, BY REGISTERED MAIL, POSTAGE PREPAID, TO MORTGAGOR.

30.    Business Purpose.  Mortgagor warrants that this Mortgage is delivered in connection with a business or commercial loan transaction.

31.    Modification.  This Mortgage may only be modified by a writing executed by Mortgagor and Mortgagee.

32.    No Merger.  It is the intention of the Mortgagee and Mortgagor that this Mortgage shall not merge into any judgment in mortgage foreclosure or other judgment entered pursuant to this Mortgage or Note and that all rights, remedies, covenants, obligations, and agreements in this Mortgage shall survive the entry of such judgment or judgments.

**(SIGNATURE PAGE FOLLOWS)**

PHDATA 3238701_1

IN WITNESS WHEREOF, and intending to be legally bound, Mortgagor has caused this Mortgage to be duly executed on the day and year first above written.

**MORTGAGOR:**

**TH PROPERTIES**, a Pennsylvania limited partnership by:

**TH PROPERTIES, LLC**, a Pennsylvania limited liability company, general partner of TH Properties
Federal Tax Identification Number 23-2684545

By:_____
    W. Todd Hendricks, Managing Member

By:_____
    Timothy P. Hendricks, Managing Member

I HEREBY CERTIFY that the address of the Mortgagee is:

    Harleysville National Bank and Trust Company
    483 Main Street
    Harleysville, Pennsylvania  19438

_____

16

COMMONWEALTH OF PENNSYLVANIA        :
                                                                          :
COUNTY OF PHILADELPHIA                         :

On this, the _____ day of _____, 200__, before me, the undersigned officer, personally appeared W. Todd Hendricks, who acknowledged himself to be a Managing Member of TH PROPERTIES, LLC, a limited liability company and the sole general partner of TH PROPERTIES, L.P., a limited liability company, and that he as such Member being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of TH PROPERTIES, LLC by himself as a Managing Member in its capacity as sole general partner of TH PROPERTIES, L.P. and that he received a true and correct copy of such instrument and of all other documents referred to therein.

IN WITNESS WHEREOF, I hereunder set my hand and official seal.

_____
Notary Public

My Commission Expires:

COMMONWEALTH OF PENNSYLVANIA       :
                                                                  :
COUNTY OF PHILADELPHIA                      :

On this, the ____ day of _____, 200__, before me, the undersigned officer, personally appeared Tim Hendricks, who acknowledged himself to be a Managing Member of TH PROPERTIES, LLC, a limited liability company and the sole general partner of TH PROPERTIES, L.P., a limited liability company, and that he as such Member being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of TH PROPERTIES, LLC by himself as a Managing Member in its capacity as sole general partner of TH PROPERTIES, L.P. and that he received a true and correct copy of such instrument and of all other documents referred to therein.

IN WITNESS WHEREOF, I hereunder set my hand and official seal.

_____
Notary Public

My Commission Expires:

**DRAFT**

## <u>CERTIFICATION – CONFESSION OF JUDGMENT</u>

   The undersigned TH PROPERTIES, L.P., a Pennsylvania limited partnership, and TH PROPERTIES, INC., a Pennsylvania corporation ("Borrower") and TIMOTHY P. HENDRICKS and W. TODD HENDRICKS ("Guarantors"), hereby certify to HARLEYSVILLE NATIONAL BANK AND TRUST COMPANY ("Lender") in connection with a certain loan by Lender to Borrower in the amount of $588,650, being consummated on or about the date of this Certification, the following:

   1. Borrower and Guarantors have been represented by legal counsel in connection with the preparation of the Debtor-in-Possession Construction Loan Agreement, Debtor-in-Possession Construction Loan Note, Open-End Mortgage and Security Agreement, Guaranty and other documents dated the date of this Certification relating to or otherwise evidencing the loan (the "Loan Documents").

   2. Borrower and Guarantors have received advice as to the meaning and consequences of the provisions in the Loan Documents authorizing confession of judgment, execution and attachment and have executed the Loan Documents following receipt of such advice of counsel.

   3. Borrower and Guarantors recognize that Lender, in the exercise of the remedies provided for under the Loan Documents, may enter a judgment by confession against Borrower and Guarantors, and thereafter seize by execution, attachment or garnishment assets of Borrower and Guarantors, including, in particular, bank accounts in which any of them may have an interest and which may be "frozen" by the bank in which such accounts are located immediately upon receipt of Lender's execution papers, all without notice or hearing (except to the extent that notice is required by the Loan Documents) as a condition to such unilateral remedial enforcement actions of Lender.

   4. Borrower and Guarantors, in furtherance of the above, hereby certify to Lender that they have elected to execute the Loan Documents with a full understanding of the consequences of such election, being fully aware that such election by Borrower and Guarantors waive procedural and due process rights to which Borrower and Guarantors would otherwise be entitled. Without limiting the foregoing, Borrower and Guarantors waive all rights to notice or hearing before the entry of any judgment or execution against Borrower and Guarantors, or any of them, under the Loan Documents, except to the extent that notice is required by the Loan Documents, including the opportunity for notice or hearing before seizure of bank accounts or other debts or obligations owed by third parties to Borrower or Guarantors. Borrowers and Guarantors acknowledge that such notice provisions that are contained in the Loan Documents are fair and adequate and Guarantors, being either officers, partners, shareholders, members or affiliates of Borrower and being able to receive from Borrower copies of all notices delivered to

Borrower, accept such notice provisions as satisfying all of Guarantors' rights to notice, including but not limited to all constitutional rights.

Witness our hands and seals the _____ day of October, 2009.

TH PROPERTIES, L.P., a Pennsylvania limited partnership

By:  TH Properties, LLC, its general partner

_____
Witness

By: _____
     Timothy P. Hendricks, Member

_____
Witness

By: _____
     W. Todd Hendricks, Member

TH PROPERTIES, INC., a Pennsylvania corporation

_____
Witness

By: _____

_____
Witness

_____ (SEAL)
Timothy P. Hendricks

_____
Witness

_____ (SEAL)
W. Todd Hendricks

2