UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| TH PROPERTIES, L.P., *et al.* [1] | : | Case No. 09-13201 (SR) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | **Emergency Hearing Requested** |
| | : | |

MOTION TO APPROVE THE SALE OF BILTMORE ESTATES
FREE AND CLEAR OF LIENS (EXCEPT CERTAIN MECHANICS LIENS),
CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO
11 U.S.C. §§ 105(A) AND 363, AND AUTHORIZING THE DEBTORS
TO ENTER INTO REAL ESTATE ASSET PURCHASE AGREEMENT

TH Properties, L.P. ("THPLP"), TH Properties of New Jersey, LP ("THPNJ"), Northgate Development Company, LP ("Northgate"), Morgan Hill Drive, LP ("Morgan Hill"), TH Properties, Inc. ("THP Inc."), THP LLC ("THP LLC"), and Swamp Pike, LP ("Swamp Pike"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), by and through their undersigned counsel, hereby move, pursuant to §§ 105(a) and 363 of Title 11, United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and move for entry of an order authorizing and approving the sale of Biltmore Estates located in Skippack Township, Montgomery County, Pennsylvania ("Biltmore") free and clear of all liens (except certain mechanics' liens), claims, interests and encumbrances, and authorizing the Debtors to enter into

---

[1] The Debtors and the last four digits of their taxpayer identification numbers are: TH Properties, L.P. (4545); TH Properties of New Jersey, L.P. (5640); Northgate Development Company, LP (8803); Morgan Hill Drive, LP (4624); TH Properties, Inc. (1947); TH Properties, LLC; (7147); and Swamp Pike, LP (7841). The principal place of business for the Debtors is 345 Main Street, Harleysville, PA 19438.

2710618v1

a real estate asset purchase agreement (substantially in the form annexed hereto as Exhibit "A"). In support of its Motion, the Debtors state as follows:

## JURISDICTION, VENUE, AND STATUTORY BASIS

1. The Court has jurisdiction over this matter under 28 U.S.C. §§157 and 1334. This is a core proceeding under 28 U.S.C. §157(b)(2).

2. Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§1408 and 1409.

3. The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a), 363 and 365 and Bankruptcy Rules 2002, 6004, 09007 and 9014.

## PROCEDURAL BACKGROUND

### A.  General Background

4. On April 30, 2009 (the "Initial Petition Date"), TH Properties, LP, TH Properties of New Jersey, L.P., Northgate Development Company, LP, Morgan HILL, LP, and TH Properties, Inc. (the "Initial Debtors") filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy Code.

5. On April 20, 2010, TH Properties, LLC ("THP LLC", along with the Initial Debtors, the "Affiliated Debtors"), filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. THP LLC's chapter 11 case is being jointly administered with the cases of the Initial Debtors under the above-referenced caption.

6. On September 14, 2010, Swamp Pike and Wynstone filed voluntary petitions for under chapter 11 of the Bankruptcy Code docketed as case numbers 10-17865 (SR) and 10-17863 (SR) in the United States Bankruptcy Court for the Eastern District of Pennsylvania. Thereafter, on February 10, 2011, an Order was entered dismissing the case filed

2710618v1

by Wynstone. The Swamp Pike case is being jointly administered along with the chapter 11 cases of the Affiliated Debtors under the above-referenced caption.

7. The Debtors continue as debtors-in-possession pursuant to sections 1107 and 1108 Bankruptcy Code.

8. The Committee was formed by the Office of the United States Trustee ("UST") on May 22, 2009.

9. No trustee or examiner has been appointed.

### B. The Debtors' History and Operations

10. The Debtors were part of a family of fully integrated homebuilder and real estate services companies (collectively, "THP") engaged in the acquisition, development, construction and sales with respect to premier housing communities located in Southeastern Pennsylvania and New Jersey.

11. THP was founded by brothers Todd and Tim Hendricks in 1992 with the goal of creating affordable, quality new homes to first time home buyers and first time "move-up" buyers. THP sold homes in residential communities consisting of single and multi-family homes averaging about $336,000 for single-family homes to $246,000 for town/twin homes. At the height of its success, THP owned and controlled over 7,000 lots, and by 2007 was selling a variety of projects in 18 active communities.

12. At its peak in 2005, THP delivered over 600 homes, generated over $170 million, and employed over 250 employees in site infrastructure, construction, sales, customer service and administration. The combination of the recent recession, severe slump in the housing market, as well as the credit crisis forced THP to cease operating in April 2009 as part of its

ongoing efforts to reorganize its core business and restructure its lender obligations. Shortly thereafter, THP filed for Chapter 11 protection.

### C.  Post-Petition Developments

13. During the post-petition period, THP spent a significant amount of time assessing the strengths and weakness of its various projects in an effort to consolidate its operations and exit bankruptcy a smaller but very viable local builder. To that end, it has made great strides. During the course of the cases, the Debtors have entered into numerous stipulations for use of cash collateral and/or obtained orders authorizing debtor-in-possession financing with multiple financial institutions to complete existing homes or work in progress as well as to build out certain other projects. With respect to other projects for which no deal could be had, the Debtors have either consensually agreeing to relief from the automatic stay to allow lenders to take possession of these properties, or with the agreement of the lender, conducted auction sales of properties pursuant to section 363 of the Bankruptcy Code.

14. The vast majority of THP's vendors has enthusiastically supported THP's post-petition efforts and has donated labor and equipment to maintain and/or clean up projects in order to move forward with construction and sales once agreements are in place. In addition, many of the vendors have agreed to complete work on the homes THP has sold in exchange for a promise (and actual) payment for their labor and supplies at the settlements of a particular home. This has worked out for all parties involved and has allowed THP to continue to successfully operate during these proceedings. Excluding debt service, payments to professionals and a set aside of funds for unsecured creditors, these vendors have been paid over $6.2 million to date and hundreds of people throughout the region have remained employed.

15. Furthermore, THP has completed or is in the process of completing numerous homes that were under construction when its reorganization case was filed, and, to date, has sold over 75 homes in its Belmont, Hawthorne, Westport Farms, Kingston Hill, Northgate 1C, 2 and 3, Biltmore Estates, Coddington, Burbank Grove, Cliffside Manor, Whitfield and Barton Ridge developments, generating revenue sufficient to pay over $11 million to its secured creditors and, as noted above, over $6.2 million to its contractors, suppliers and laborers. The Debtors also have 14 additional closings scheduled through early May that will generate an additional $1.6 million in revenue after the payment of the costs to construct these homes.

**D.     The Debtors' Exit Strategy**

16. With the cooperation of their bonding companies, lienholders, the townships and local authorities, as well as the support of their unsecured creditor base, the Debtors have put together an exit strategy that will allow them to satisfy the debt on Bank of America ("BofA") on the Biltmore Estates and Northgate projects in order to free up this revenue stream to fund a plan that will pay professionals, deposit holders, and employees in full and provide for a distribution to unsecured creditors.

17. The Debtors' exit strategy, includes, among other things, involves approval by the Court of several inter-related transactions regarding Biltmore and Northgate phases 2 and 3, the sale of Biltmore to a designee of Blooming Glenn Contractors, Inc. Reading Materials, Inc., Lehigh Valley Site Contractors, Inc. and Haines & Kibblehouse, Inc. (collectively, the "H&K Entities") (which is the subject matter of this Motion), the buyout of BofA's interest in both properties, and the continued development of these properties for the benefit of the estates. These developments were identified by the Debtors early in these cases as being integral to their reorganization plan.

2710618v1

18. In connection with that exit strategy, BofA has agreed to reduce its payout amount from the total sum of $18 million to $13 million for both projects and to extend the time to receive payment in full of this reduced payoff amount. This agreement has been memorialized in a consent order that has been filed with and approved by this Court on March 30, 2011 [Document No. 1728]. BofA has already been paid the sum of $4 million through a note purchase and assignment on Northgate by Turnervsile Estates, LP ("Turnervsille") on or about March 31, 2011. After crediting payments from closings to BofA in accordance with the Consent Order, Turnersville paid $3,530,695.83, and now holds BofA's lien on Northgate. The Debtors will be filing a separate motion to enter into an agreement with Turnersville to continue to continue the development of Northgate, once the terms are finalized.

19. Additionally, contemporaneously with the filing of this Motion, the Debtors are filing a motion to approve a settlement agreement with the H&K Entities (the "H&K Settlement Motion") which addresses the payment of their mechanics' liens, and also seeks approval of a payment structure that addresses the repayment of funds borrowed by the H&K Entities (and secured by Biltmore) to facilitate the buyout of BofA as well as various parties' obligations in connection with Northgate and Biltmore pursuant to Bankruptcy Rule 9019.

20. Accordingly, the transactions set forth herein and in the H&K Settlement Motion are necessary to the Debtors' emergence from Chapter 11, and it is respectfully submitted that the Debtors be authorized to enter into them, including the 363 sale subject to this Motion.

**PROPOSED SALE**

21. The Debtors seek to sell Biltmore pursuant to Bankruptcy Code § 363 to a designee of the H&K Entities, Skippack Group LLC ("SGLLC") for the sum of $3.8 million and

2710618v1

to enter into the real estate asset purchase agreement substantially in the form annexed hereto as Exhibit" A" through a private sale. The H&K Entities have secured a $3.8 million loan which will be allocated to the purchase of Biltmore and the payoff of BofA's debt. The financial institution providing it, Abington Bank as a condition of making the loan, has required that SGLLC take ownership of Biltmore and pledge the property to the bank to secure the loan that will be paid off in accordance with the "waterfall" structure set forth below.

22. In exchange for taking on the risk of the risk as borrower, and for agreeing to post financial security of no more than $2.5 million for site improvements to allow the continued development at Northgate, the H&K Entities will receive a $500,000 (see H&K Settlement Motion). The Biltmore loan as well as the mechanics liens held by H&K Entities will be paid back from the sale of homes at Biltmore and Northgate 2 and 3 with the exception of a set aside of funds (to be determined) for overhead, professional fees, priority and unsecured claims. Once the Biltmore loan, liens held by the H&K Entities as well as the H&K fee is paid are paid off, the sales proceeds will be allocated to professionals, priority claimants, and unsecured claimants as well as TOP in accordance with its plan. Since all of the cash flow is used to pay operating costs, secured, unsecured debts and claims under the Debtors plan, there is no cash flow out of the Biltmore and Northgate projects that would make the projects of interest to third party bidders, and the parties, including the Committee have determined that a private sale to SGLLC is appropriate and in the best interests of the Debtors, their estates and all creditors.

23. As the Court is aware, time is of the essence, since the current settlement with BofA requires that the Biltmore Buyout be exercised by April 30, 2011. Accordingly, the Debtors are requesting expedited consideration of this Motion (as well as the Motion to Approve

2710618v1

the Settlement with the H&K Entities), in order to obtain the necessary funds to exercise the BofA buyout. The Debtors propose to serve this Motion by ECF and first class mail on all parties who receive electronic notice including the UST, counsel for the Committee, counsel for the H&K Entities, counsel for BofA, and all parties who have filed a request for notices under Rule 2002. Additionally, the Debtors propose to serve it by federal express on those parties who have requested notice pursuant to Rule 2002, but do not receive ECF notice. No brokers have been involved in this transaction and other than BofA and the H&K Entities; there are no other first lien holders except BofA.

## APPLICABLE LEGAL AUTHORITY

### A.    Sales Outside the Ordinary Course of Business

24.    Section 363 of the Bankruptcy Code provides that the Debtors, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." See 11 U.S.C. §363(b). To approve the use, sale or lease of property outside the ordinary course of business, this Court need only determine that the Debtors' decision is supported by "some articulated business justification." *See, e.g. Stephens Ind., Inc. v. McClung*, 789 F.2d 386, 389-90 (6th Cir. 1986); *Fulton State Bank v. Schipper*, 933 F.2d 513, 515 (7th Cir. 1991); *Committee of Equity Sec. Holders v. Lionel Corp.* (In re Lionel Corp.), 722 F2d 1063, 1070 (2d Cir. 1983); *see also In re Abbot Dairies of Pa., Inc.*, 788 F.2d 143, 145-47 (3d Cir. 1986); *In re Telesphere Communications, Inc.*, 179 B.R. 544, 552 (Bankr. N.D. Ill. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175-76 (D.Del. 1991).

25.    Once the debtor articulates a valid business justification, "[t]he business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company. *In re S.N.A. Nut Company*, 186 B.R. 98 (Bankr. N.D. Ill. 1995); *In re*

2710618v1

*Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992); *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a Debtors' management decisions.").

26. Indeed, when applying the "business judgment" rule, courts show great deference to the debtor's decision-making. *See Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981). Accordingly, this Court should grant the relief requested in this Motion if the Debtors demonstrate a sound business justification for that relief. *See Stephens Ind., Inc.*, 789 F.2d at 389-90; Schipper, 933 F.2d at 515; *In re Lionel Corp.*, 722 F.2d at 1071; *In re Delaware Hudson Ry. Co.*, 124 B.R. 169 at 179.

27. As explained above, the Debtors have a sound business justification for selling Biltmore to SGLLC at this time.

28. For these reasons, the Debtors have determined in consultation with the Committee that the best option to maximize the value of their estates as well as the amount to be recovered by creditors is through the sale of Biltmore in the manner and in the time frame set forth herein.

**B. Sales Free and Clear of Liens, Claims and Encumbrances**

29. Under § 363(f) of the Bankruptcy Code, a debtor in possession may sell property free and clear of any lien, claim, or encumbrance in such property if, among other things:

 (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

 (2) such entity consents;

 (3) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;

 (4) such interest is in bona fide dispute; or

   (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

  30. Because Section 363(f) is drafted in the disjunctive, the Debtors' satisfaction of any one of its five requirements will be sufficient to permit the sale of Biltmore free and clear of all liens (except for certain mechanics' liens) claims, interests and encumbrances. Other than (i) BofA, which is being paid off by the transactions contemplated in this Motion and the companion motion being field contemporaneously herewith (ii) those mechanics lien holders retaining second priority liens on Biltmore, pursuant to settlement agreements approved by the Court [see docket entry no. 1548], which include the H&K Entities, there are no other lien holders on the Biltmore project. Accordingly, since the mechanics' lien holders right to payment has been fixed pursuant to agreements approved by the Court, and they remain unchanged, the lien holders will receive money satisfaction of these interests pursuant to 363(f)(5). Moreover, the H&K entities have consented to the sale and such consent satisfies the requirements of §363(f)(2).

  31. Based on the foregoing, the Debtors meet one or more of the standards set forth in Section 363(f) of the Bankruptcy Code, and that Biltmore may be sold free and clear of liens, claims and encumbrances.

**C.** **Good Faith Sale under Section 363(m) of the Bankruptcy Code**

  32. The Debtors also request that the Court find that the successful bidder is entitled to the benefits and protections provided by Section 363(m) of the Bankruptcy Code, as a purchaser who has acted in good faith in connection with the transaction. Section 363(m) protects a purchaser of assets sold pursuant to Section 363 from the risk that it will lose its interest in the purchased assets if the sale is reversed on appeal.

2710618v1

33. The Debtors shall demonstrate at the hearing that all negotiations that will have occurred with the H&K Entities have been conducted at arm's length and in good faith by all parties. Moreover, the Committee has been involved in all negotiations and has approved the transaction. Accordingly, the Debtors request that the Court make a finding that the SGLLC has acquired Biltmore in good faith within the meaning of Section 363(m) of the Bankruptcy Code.

34. By separate motion, the Debtors are seeking expedited consideration of this Motion, along with the Motion of the Debtors-in-Possession to Settlement with the H&K Entities Pursuant to Bankruptcy Rule 9019 which is being filed contemporaneously herewith.

## NOTICE

35. The Debtors have provided notice of this Motion by ECF and first class mail to: (a) the United States Trustee; (b) counsel to the Committee; (c) counsel for the H&K Entities and SGLLC (d) counsel for BofA; and (e) any party in interest that has requested notice pursuant to Rule 2002 of the Federal Rules. Additionally, the Debtors have provided notice by federal express on those parties who have filed a request for notices under Rule 2002 who do not receive ECF notice. In light of the nature of the relief requested, the Debtors submit that no further notice is required or needed under the circumstances.

## WAIVER OF STAY

36. As provided by Bankruptcy Rules 7062 and 9014, the Debtors request that the order approving the Motion be effective and enforceable immediately upon signing and shall not be subject to the 14-day stay provisions contained in Bankruptcy Rule 6004(h).

## NO PRIOR APPLICATION

37. No prior motion for the relief requested herein has been made to this Court or any other court.

2710618v1

## CONCLUSION

WHEREFORE, the Debtors request that the Court enter an order authorizing the Debtors' sale of Biltmore Estates free and clear of liens (except mechanics' liens), claims, interest, and encumbrances to the successful bidder presenting the highest and best bid and granting the Debtors such other and further relief as the Court deems just and proper.

Dated: April 21, 2011         MONTGOMERY, McCRACKEN, WALKER
                              & RHOADS, LLP

By: /s/ Joseph O'Neil, Jr.
Natalie D. Ramsey, Esquire
Laurie Krepto, Esquire
Joseph O'Neil, Jr., Esquire
123 South Broad Street
Philadelphia, PA 19109
215-772-1500

*Counsel for the Debtors and Debtors-in-Possession*

2710618v1