# Appendix A

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| TH PROPERTIES, L.P., *et al.*[1] | : | Case No. 09-13201 (SR) |
| Debtors. | : | (Jointly Administered) |

# THIRD AMENDED JOINT CHAPTER 11 PLAN OF THE DEBTORS AND DEBTORS-IN- POSSESSION AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

The above-captioned debtors and debtors in possession and the Official Committee of Unsecured Creditors hereby submit their Third Amended Joint Chapter 11 Plan.

Dated: Philadelphia, Pennsylvania
December 8, 2011

Natalie D. Ramsey, Esquire
Joseph O'Neil, Jr., Esquire
Laurie A. Krepto, Esquire
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109

*Counsel for the Debtors and Debtors-in-Possession*

and

Brubacher Excavating
Reading Materials, Inc.
Central Concrete Co., Inc.
Vernon & Janet Ruth
Norman D. Rittenhouse
Andrea Construction, Inc.

*The Official Committee of Unsecured Creditors*

[1] The Debtors and the last four digits of their taxpayer identification numbers are: TH Properties, L.P. (4545); TH Properties of New Jersey, L.P. (5640); Northgate Development Company, LP (8803); Morgan Hill Drive, LP (4624); TH Properties, Inc. (1947); TH Properties, LLC (7147); and Swamp Pike LP (7841). The principal place of business for the Debtors is 345 Main Street, Harleysville, PA 19438.

**TABLE OF CONTENTS**

**Page**

ARTICLE 1 DEFINITIONS, INTERPRETATION AND EXHIBITS .............................. 1

Section 1.01 Definitions ........................................................................ 1

Section 1.02 Exhibits ........................................................................ 12

ARTICLE 2 CLASSIFICATION OF CLAIMS AND INTERESTS .............................. 12

Section 2.01 Generally ........................................................................ 12

Section 2.02 Unclassified Claims ........................................................ 12

Section 2.03 Unimpaired Classes ........................................................ 13

Section 2.04 Impaired Classes Entitled to Vote .................................... 13

Section 2.05 Impaired Classes Deemed to Reject .................................. 13

ARTICLE 3 PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS AND INTERESTS ........................................................................ 14

Section 3.01 Satisfaction of Claims and Interests .................................. 14

Section 3.02 Unclassified Claims, Classified Unimpaired and Impaired Claims and Classified Interests .................................................. 14

Section 3.03 Administrative Claims ...................................................... 14

Section 3.04 Class 1: Miscellaneous Secured Lender Claims ................ 15

Section 3.05 Class 2 Secured Lender Claim of TE at the Northgate Phase I Project (subject to Reading Materials, Inc. first priority lien as set forth in Class 5) and the Northgate Phase IIA Project ................ 16

Section 3.06 Class 3: Secured Lender Claim of First Niagara Bank, a National Banking Association, successor by merger to Harleysville Bank and Trust Company at Coddington View in Upper Pottsgrove Township ................................................ 16

Section 3.07 Class 4: Certain Mechanics Lienholders Claims ............... 17

Section 3.08 Class 5: Miscellaneous Secured Vendor Claims ............... 17

Section 3.09 Class 6: Secured Claims of Taxing Authorities ................ 17

Section 3.10 Class 7: Priority Employee Wage & Benefit Claims .......... 18

Section 3.11 Class 8: Deposit Holders .................................................. 18

Section 3.12 Class 9: General Unsecured Claims ................................. 18

Section 3.13 Class 10: Limited Partner Interests in the LP Debtors ....... 18

Section 3.14 Class 11: General Partner Interests in the LP Debtors ....... 18

Section 3.15 Class 12: Interests in the GP Debtor and THP, Inc. .......... 18



2800302v10

**TABLE OF CONTENTS**
(continued)

Page


Section 3.16 Class 13: Intercompany Claims ..... 18

ARTICLE 4 ACCEPTANCE OR REJECTION OF THE PLAN; CRAMDOWN ..... 19

Section 4.01 Acceptance by Impaired Classes of Claims and Interests ..... 19

Section 4.02 Voting Classes ..... 19

Section 4.03 Ballot Instructions ..... 19

Section 4.04 "Cramdown." ..... 19

ARTICLE 5 PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN ..... 20

Section 5.01 Timing of Distributions ..... 20

Section 5.02 Distributions to Holders of Allowed Claims ..... 20

Section 5.03 Delivery of Distributions ..... 20

Section 5.04 Method of Cash Distributions ..... 20

Section 5.05 Failure to Negotiate Checks ..... 20

Section 5.06 Unclaimed Distributions ..... 21

Section 5.07 Limitation on Distribution Rights ..... 21

Section 5.08 Fractional Dollars ..... 21

Section 5.09 Compliance With Tax Requirements ..... 21

Section 5.10 Character of Distributions ..... 21

Section 5.11 De Minimis Distributions ..... 22

ARTICLE 6 EXECUTORY CONTRACTS AND UNEXPIRED LEASES; INDEMNIFICATION OBLIGATIONS; BENEFIT PROGRAMS ..... 22

Section 6.01 Treatment of Executory Contracts and Unexpired Leases ..... 22

Section 6.02 Cure of Defaults for Assumed Contracts and Leases ..... 22

Section 6.03 Bar Date for Claims for Rejection Damages ..... 22

Section 6.04 Treatment of Rejection Claims ..... 22

ARTICLE 7 MEANS FOR IMPLEMENTATION OF THE OF THE PLAN ..... 22

Section 7.01 The Contribution and Buildout of Northgate Phases IV and V ..... 22

Section 7.02 The Buildout of the Real Property Owned by the Debtors ..... 23

Section 7.03 Project Budgets ..... 24

Section 7.04 No Substantive Consolidation and New General Partners ..... 24

Section 7.05 Abandoned Projects ..... 24

**TABLE OF CONTENTS**
(continued)

**Page**


Section 7.06 The Board/Boards ........ 24
Section 7.07 Management Agreement ........ 25
Section 7.08 Salary ........ 25
Section 7.09 Reconstitution of the THP, Inc. Board ........ 25
Section 7.10 Other Projects ........ 25
Section 7.11 Powers of the THP, Inc. Board ........ 25
Section 7.12 Disbursement of Proceeds from the Projects ........ 26
Section 7.13 Project Budgets ........ 27
Section 7.14 Completion of Projects and Option to Purchase Projects ........ 27
Section 7.15 Release by the Debtors, the Estates and the Committee of Hendricks and the Affiliated Entities ........ 27
Section 7.16 Corporate Action ........ 28
Section 7.17 Income Taxes ........ 28
Section 7.18 Revesting of Assets ........ 28
ARTICLE 8 PRESERVATION OF CAUSES OF ACTION AND RIGHT TO DEFEND AND CONTEST ........ 28
Section 8.01 Preservation of Rights ........ 28
Section 8.02 Rights of Action ........ 29
Section 8.03 Setoffs ........ 29
Section 8.04 No Payment or Distribution Pending Allowance ........ 29
Section 8.05 Objections to Claims ........ 29
ARTICLE 9 CONDITIONS TO CONSUMMATION OF THE PLAN ........ 30
Section 9.01 Confirmation Order ........ 30
Section 9.02 Conditions to Effective Date ........ 30
Section 9.03 Waiver of Conditions to Consummation ........ 30
Section 9.04 Effect of Failure or Absence of Waiver of Conditions Precedent to the Effective Date of the Plan ........ 30
ARTICLE 10 EFFECTS OF CONFIRMATION ........ 31
Section 10.01 Discharge ........ 31
Section 10.02 Injunction ........ 31
Section 10.03 Exculpation ........ 32

**TABLE OF CONTENTS**
(continued)


| | | Page |
|---|---|---|
| Section 10.04 | Releases | 33 |
| Section 10.05 | Other Documents and Actions | 33 |
| Section 10.06 | Term of Injunctions or Stays | 33 |
| Section 10.07 | Preservation of Insurance | 33 |
| Section 10.08 | Claims Against Multiple Debtors | 33 |
| Section 10.09 | Final Orders to Remain in Effect | 34 |
| ARTICLE 11 | RETENTION OF JURISDICTION | 34 |
| Section 11.01 | Exclusive Jurisdiction of Bankruptcy Court | 34 |
| Section 11.02 | Failure of Bankruptcy Court to Exercise Jurisdiction | 36 |
| ARTICLE 12 | MISCELLANEOUS PROVISIONS | 36 |
| Section 12.01 | Binding Effect of Plan | 36 |
| Section 12.02 | Withdrawal of the Plan | 36 |
| Section 12.03 | Final Order | 36 |
| Section 12.04 | Modification of the Plan | 37 |
| Section 12.05 | Business Days | 37 |
| Section 12.06 | Severability | 37 |
| Section 12.07 | Governing Law | 37 |
| Section 12.08 | Dissolution of Committee | 37 |
| Section 12.09 | Payment of Statutory Fees | 37 |
| Section 12.10 | Post-Confirmation Operating Reports | 38 |
| Section 12.11 | Notices | 38 |
| Section 12.12 | Filing of Additional Documents | 38 |
| Section 12.13 | Section 1125 of the Bankruptcy Code | 39 |
| Section 12.14 | Section 1146 Exemption | 39 |
| Section 12.15 | Sales Free and Clear | 39 |
| Section 12.16 | Mechanic's Liens | 39 |
| Section 12.17 | Time | 39 |
| Section 12.18 | No Attorneys' Fees | 40 |
| Section 12.19 | No Injunctive Relief | 40 |
| Section 12.20 | Continued Confidentiality Obligations | 40 |

**TABLE OF CONTENTS**
(continued)

**Page**


| | | |
|---|---|---|
| Section 12.21 | No Admissions or Waivers | 40 |
| Section 12.22 | Entire Agreement | 40 |
| Section 12.23 | Waiver | 40 |
| Section 12.24 | Bar Date for Professionals | 40 |

## INTRODUCTION

This Third Amended Joint Chapter 11 Plan (as amended or modified hereafter in accordance with its terms, the "Plan"), dated as of December 8, 2011, is proposed by TH Properties, L.P., T.H. Properties of New Jersey, L.P., Northgate Development Company, L.P., Morgan Hill Drive, L.P., TH Properties, Inc., TH Properties, LLC, and Swamp Pike, LP, (each a "Debtor" and collectively, the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee"). Reference is made to the Disclosure Statement accompanying the Plan for a discussion of the Debtors' history, business, results of operations, historical financial information, properties, projections for future operations and risk factors, a summary and analysis of the Plan, and certain related matters. The Debtors and the Committee are proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL CREDITORS OF THE DEBTORS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019 AND THE PLAN, THE DEBTORS AND THE COMMITTEE RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

Capitalized terms used herein shall have the meanings set forth in Article I hereof. The Debtors have obtained Bankruptcy Court authority to have the Chapter 11 Cases jointly administered for administrative and procedural purposes only.

## ARTICLE 1

## DEFINITIONS, INTERPRETATION AND EXHIBITS

Section 1.01 Definitions. Unless the context requires otherwise, the following terms shall have the following meanings whether presented in the Plan or the Disclosure Statement with initial capital letters or otherwise. As used herein:

"Administrative Claim" means a Claim for: (a) any cost or expense of administration (including, without limitation, the fees and expenses of Professionals) of any of the Chapter 11 Cases asserted or arising under sections 503, 507(a)(l), 507(b) or 1114(e)(2) of the Bankruptcy Code including, but not limited to (i) any actual and necessary post Petition Date cost or expense of preserving the Debtors' respective Estates or operating the businesses of the Debtors, (ii) any post Petition Date cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtors in the ordinary course of their respective businesses, (iii) compensation or reimbursement of expenses of Professionals to the extent Allowed by the Bankruptcy Court under sections 330(a) or 331 of the Bankruptcy Code, and (iv) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under section 546 of the Bankruptcy Code; (b) any fees or charges assessed against the Debtors' respective Estates under section 1930 of title 28 of the United States Code; (c) any Allowed administrative claim or superpriority claim granted to a lender pursuant to Cash Collateral Orders; (d) Claims of the DIP Lenders in connection with the DIP Financing Facilities; and (e)

Claims of the H&K Entities for amounts posted as financial security pursuant to Final Order of the Bankruptcy Court.

"Affiliate" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

"Affiliated Entities" means Adams Road, LLC, Adams Road, LP, Greater Phil. Leasing Group LLC, Greater Phil. Leasing Group LP, Hendricks Abstract, Inc., Hendricks Mortgage, LLC, Hendricks of New Jersey, LLC, Hills at Perkiomen, LP, Keystone Land Acquisitions Inc., Lincoln Woods, LLC, Lincoln Woods, LP, Marina Land Holdings, LLC, Morgan Hill Drive, LLC, Newport Landing, LP, Northgate Development Company, LLC, Swamp Pike, LLC, The Hendricks Group Investments LLC, The Hendricks Group, LP, THP Investments, LLC, THP of NJ, Inc., THP Realty Services Inc., Windmill Court LLC, Windmill Court LP and Wynstone Development Group LLC.

"Allowed" means, with reference to any Claim, (a) any Claim against any of the Debtors that has been listed by the Debtors in the Schedules, as such Schedules may have been amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent, and with respect to which no contrary proof of claim has been filed, (b) any Claim specifically allowed under the Plan, (c) any Claim the amount or existence of which has been determined or allowed by a Final Order, or (d) any Claim as to which a proof of claim has been timely filed before the Bar Date, provided that at the time of the Effective Date the Debtors have not identified such Claim as being objectionable in part or in whole and no objection to the allowance thereof has been filed by the Claims Objection Deadline; provided, however, that the term Allowed, with reference to any Claim, shall not include (x) any unliquidated claim or (y) interest or attorneys' fees on or related to any Claim that accrues from and after the Petition Date unless otherwise expressly provided for in the Plan.

"Allowed Claim" means a Claim that is Allowed.

"Allowed Interest" means an Interest that is Allowed.

"Avoidance Actions" means any and all Causes of Action which a trustee, debtor in possession, the Estates or other appropriate party in interest may assert under sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code (other than those which are released or dismissed as part of and pursuant to the Plan) or under other similar or related state or federal statutes or common law, including fraudulent conveyance laws.

"Ballot" means the forms of ballots accompanying the Disclosure Statement upon which Holders of Impaired Claims and Interests entitled to vote on the Plan shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the instructions regarding voting.

"Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as in effect on the Petition Date, together with all amendments and modifications thereto that subsequently may be made applicable to the Chapter 11 Cases.

"Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of Pennsylvania or, if such court ceases to exercise jurisdiction over these proceedings, the court or adjunct thereof that exercises jurisdiction over the Chapter 11 Cases.

"Bankruptcy Rules" means: (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of title 28 of the United States Code; (b) the Federal Rules of Civil Procedure, as amended and promulgated under section 2072 of title 28 of the United States Code; (c) any local rules applicable to the Bankruptcy Court; and (d) any standing orders governing practice and procedure issued by the Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

"Bar Date" means the applicable bar date by which a proof of Claim must be, or must have been, Filed, as established by an order of the Bankruptcy Court.

"Barton Ridge Project" means the project commonly referred to as Barton Ridge and located in Winslow Township, New Jersey.

"Biltmore Estates Project" means the project commonly referred to as Biltmore Estates and located in Skippack Township, Pennsylvania that was transferred to Skippack Group, LLC pursuant to an Order of the Bankruptcy Court entered on April 28, 2011 [D.I. 1780] (the "Transfer Order") and will be developed by the Debtors pursuant to that certain settlement agreement approved by the an Order of the Bankruptcy Court entered on April 28, 2011 [D.I. 1778], as well as the Land Development Agreement and related agreements for Biltmore Estates with Skippack Township, as amended, (including without limitation that Second Amendment to Land Development Agreement and Financial Security Agreement also annexed to the Transfer Order) and assumed by the Debtors pursuant to an Order of the Bankruptcy Court entered on July 29, 2010 {D.I. 1305].

"Board" or "Boards" means the board of directors of each Debtor, and the general partner of each Debtor limited partnership, which as of the Effective Date shall be, or reconstituted so as to be comprised of the five (5) following members, Timothy P. Hendricks, W. Todd Hendricks, two Committee members (to be selected by the Committee), and one additional member to be mutually agreed upon by each member of the Boards.

"Business Day" means any day which is not a Saturday, a Sunday, a "legal holiday" as defined in Bankruptcy Rule 9006(a), or a day on which banking institutions in the State of Pennsylvania are authorized or obligated by law, executive order or governmental decree to be closed.

"Cash" means money, currency and coins, negotiable checks, balances in bank accounts and other lawful currency of the United States of America and its equivalents.

"Cash Collateral Order(s)" means the interim or Final Order(s), as in effect from time-to-time, entered by the Bankruptcy Court authorizing and approving the Debtors' use of cash collateral pursuant to section 363 of the Bankruptcy Code, and any extensions or amendments thereof.

"Cause(s) of Action" means any and all actions, claims, rights, defenses, third-party claims, damages, executions, demands, crossclaims, counterclaims, suits, choses in action, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, accruing to the Debtors, including, but not limited to, the Avoidance Actions.

"Chapter 11 Cases" means the cases under Chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court on the Petition Date(s).

"Claim" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

"Claims Objection Deadline" means the latest of: (a) 75 days after the Effective Date; (b) 75 days after the date on which any Claim is Filed; or (c) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clauses (a) and (b) above.

"Class" means each class, subclass or category of Claims or Interests as classified in Article II of the Plan.

"Cliffside Manor Phase II Project" means the remaining units in the project commonly known as Cliffside Manor Phase II and located in Bedminster Township, Pennsylvania.

"Coddington View Project" means the 14 units in the project commonly known as Coddington View and located in Upper Pottsgrove Township, Pennsylvania.

"Committee" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code by the United States Trustee, as the membership of such committee is from time to time constituted and reconstituted.

"Committee Members" mean the members of the Committee.

"Confirmation" or "Confirmed" means the entry by the Bankruptcy Court of the Confirmation Order.

"Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court with respect to the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

"Confirmation Hearing" means the hearing held before the Bankruptcy Court to consider Confirmation of the Plan pursuant to sections 1128 and 1129 of the Bankruptcy Code.

"Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

"Creditor" means any Person that is the Holder of any Claim against any of the Debtors.

"Debtors" shall mean collectively, TH Properties, L.P.; TH Properties of New Jersey, L.P.; Northgate Development Company, L.P.; Morgan Hill Drive, L.P.; THP, Inc.; TH Properties, LLC ; and Swamp Pike LP.

"Deposits" means security deposits for the purchase of homes.

"Deposits Holder Claims" means claims held by holders of Deposits.

"DIP Financing Facilit(ies)" means the post-petition financing facility(ies) provided to the Debtors by the various DIP Lenders pursuant to the DIP Financing Orders and related documents.

"DIP Financing Order(s)" means the interim or Final Order(s), as in effect from time-to-time, entered by the Bankruptcy Court, authorizing the Debtors to enter into the DIP Financing Facilities pursuant to section 364 of the Bankruptcy Code, and any extensions or amendments thereof.

"DIP Lender(s)" means any of the secured parties identified herein in their capacity as post-petition lender to the Debtors under the DIP Financing Facilit(ies).

"Day(s)" means, unless expressly otherwise provided, calendar day(s).

"Disallowed" means, with respect to any Claim or Interest or portion thereof, any Claim against or Interest in the Debtors which: (a) has been withdrawn, in whole or in part, by agreement of the Debtors or the Board, as applicable, and the Holder thereof; (b) has been withdrawn, in whole or in part, by the Holder thereof; or (c) has been disallowed, in whole or part, by Final Order of a court of competent jurisdiction. In each case a Disallowed Claim or a Disallowed Interest is disallowed only to the extent of disallowance or withdrawal.

"Disallowed Claim" means a Claim, or any portion thereof, that is Disallowed.

"Disallowed Interest" means an Interest, or any portion thereof, that is Disallowed.

"Disbursing Agent" means such other Entity that is designated to disburse Property pursuant to the Plan.

"Disclosure Statement" means the Disclosure Statement With Respect to the Third Amended Joint Chapter 11 Plan Dated as of December 8, 2011, including all exhibits, appendices, schedules and annexes, if any, attached thereto, as submitted by the Debtors and the Committee, as the same may be altered, amended, supplemented or modified from time to time, and which was prepared and distributed in accordance with sections 1125 and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018.

"Disputed" means any Claim or Interest that has been neither Allowed nor Disallowed.

"Disputed Claim" means a Claim, or any portion thereof, that is Disputed. For purposes of the Plan, a Claim that has been neither Allowed nor Disallowed shall be considered a Disputed Claim.

"Disputed Interest" means an Interest, or any portion thereof, that is Disputed. For purposes of the Plan, an Interest that has been neither Allowed nor Disallowed shall be considered a Disputed Interest.

"Effective Date" means the first Business Day following the date on which all conditions to consummation set forth in Article 9 of the Plan have been satisfied or waived (if capable of being duly and expressly waived), provided that no stay of the Confirmation Order is then in effect.

"Employee Wage & Benefit Claims" means holders of priority wage & benefit claims pursuant to section 507(a)(4) and (5) of the Bankruptcy Code.

"Entity" means any individual, corporation, limited or general partnership, joint venture, association, joint stock company, limited liability company, estate, trustee, United States Trustee, unincorporated organization, government, governmental unit (as defined in the Bankruptcy Code), agency or political subdivision thereof.

"Estates" means the estates created in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code upon commencement of the Chapter 11 Cases.

"Exculpated Persons" means: (a) directors, officers and employees of the Debtors, as of the Petition Dates but prior to the Effective Date, and the Debtors' agents and professionals; (b) and (b) the Committee and the Committee Members; and (c) to the extent that such parties are deemed to be Exculpated Persons, the respective current and former officers, directors, employees, agents, stockholders, managers, members, affiliates, partners, attorneys, advisors and professionals of the parties identified in subclauses (a) through (c).

"File, Filed or Filing" means file, filed or filing with the Bankruptcy Court in the Chapter 11 Cases.

"Final Decree" means the final decree entered by the Bankruptcy Court after the Effective Date and pursuant to section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022.

"Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket of such court, the operation or effect of which has not been stayed, reversed, vacated, modified or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) of the time to appeal, petition for certiorari, or seek review or rehearing has expired and as to which no appeal, petition for certiorari, or petition for review or rehearing was filed or, if filed, remains pending; provided, however, that the possibility that a motion may be filed pursuant to Rules 9023 or 9024 of the Bankruptcy Rules or Rules 59 or 60(b) of the Federal Rules of Civil Procedure shall not mean that an order or judgment is not a Final Order.

"General Overhead" means the general and administrative costs including, rent, payroll, insurance, office expenses and related expenses associated with the operation of the businesses of THP, Inc. and the other reorganized debtors that are not included in the Project Specific Expenses.

"General Unsecured Claims" means all Claims of unsecured creditors that are Allowed and that are not Administrative Claims, Priority Tax Claims, Professional Fee Claims, Miscellaneous Secured or Vendor Claims, Certain Mechanic Lienholders Claims, Priority Employee Wage & Benefit Claims, Deposit Holder Claims, or Intercompany Claims.

"GP Debtor" shall mean TH Properties, LLC, the general partner of TH Properties, L.P.

"Hendricks" means W. Todd Hendricks and Timothy P. Hendricks.

"H&K Entities" means Blooming Glen Contractors, Inc., Reading Materials, Inc., Lehigh Valley Site Contractors, Inc., and Haines & Kibblehouse, Inc.

"Holder" means an Entity holding a beneficial interest in a Claim or Interest and, when used in conjunction with a Class or type of Claim or Interest, means a holder of a beneficial interest in a Claim or Interest in such Class or of such type.

"Impaired" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"Impaired Claim" means a Claim which is Impaired.

"Impaired Interest" means an Interest which is Impaired.

"Insider" shall have the meaning set forth in section 101(31) of the Bankruptcy Code.

"Insider Claims" means any Claim of an Insider against any of the Debtors.

"Intercompany Claims" means any and all claims of a Debtor or related entity against any of the Debtors.

"Interests" means an equity interest in any Debtor or the right to acquire the same, including, without limitation, as a holder of a right to acquire any interest.

"Kingston Hill Project" means Lot 105 of the project commonly known as Kingston Hill and located in New Hanover Township, Pennsylvania.

"Liens" means, with respect to any asset or Property (or the rents, revenues, income, profits or proceeds therefrom), and in each case, whether the same is consensual or nonconsensual or arises by contract, operation of law, legal process or otherwise: (a) any and all mortgages, liens, pledges, attachments, charges, leases evidencing a capitalizable lease obligation, conditional sale or other title retention agreement, or other security interest or encumbrance or other legally cognizable security devices of any kind in respect of any asset or Property, or upon the rents, revenues, income, profits or proceeds therefrom; or (b) any arrangement, express or implied, under which any Property is transferred, sequestered or otherwise identified for the purpose of subjecting or making available the same for the payment of debt or performance of any other obligation in priority to the payment of general unsecured Creditors.

"LP Debtors" shall mean TH Properties, L.P.; TH Properties of New Jersey, L.P.; Northgate Development Company, L.P.; Morgan Hill Drive, L.P.; and Swamp Pike LP.

"Miscellaneous Secured Lender Claims" means any Secured Claim identified in Class 1 herein.

"Miscellaneous Secured Vendor Claims" means any Secured Claim identified in Class 5 herein.

"Management Agreement" means the agreement between the Reorganized Debtors, the Hendricks, and the Committee which provides, inter alia, that the Boards including, the THP, Inc. Board shall be reconstituted, that THP, Inc. shall act as the manger on behalf of all the Reorganized Debtors and that THP, Inc. shall oversee the completion of the projects (as defined in the Management Agreement) and perform the acts required to administer and carry out the provisions of the Plan pursuant to the provisions of this agreement.

"New Value Contribution" means the Hendricks causing title to Northgate Phases IV and V to be contributed under the Plan to the Debtors as provided by Section 7.01 of the Plan.

"Northgate Phase I Project" means the project commonly known as Northgate Phase I and located in Upper Hanover Township, Pennsylvania.

"Northgate Phase IIA Project" means the project commonly known as Northgate Phase IIA and located in Upper Hanover Township, Pennsylvania.

"Northgate Phases II and III Project" means the project commonly known as Northgate Phases II and III and located in Upper Hanover Township, Pennsylvania.

"Northgate Phase IV and V Project" means the projects commonly known as Northgate Phases IV and V and located in Upper Hanover Township, Pennsylvania.

"Objection" means any objection, application, motion, complaint or any other legal proceeding seeking, in whole or in part, to Disallow, determine, liquidate, classify, reclassify or establish the priority, expunge, subordinate or estimate any Claim (including the resolution of any request for payment of any Administrative Claim) or Interest other than a Claim or an Interest that is Allowed.

"Person" means and includes a natural person, individual, partnership, corporation (as defined in section 101 (a) of the Bankruptcy Code), or organization including, without limitation, corporations, limited partnerships, limited liability companies, general partnerships, joint ventures, joint stock companies, trusts, land trusts, business trusts, unincorporated organizations or associations, or other organizations, irrespective of whether they are legal entities, governmental bodies (or any agency, instrumentality or political subdivision thereof), or any other form of legal entities; provided, however, "Person" does not include governmental units, except that a governmental unit that (a) acquires an asset from a Person (i) as a result of the operation of a loan guarantee agreement or (ii) as receiver or liquidating agent of a Person; (b) is a guarantor of a pension benefit payable by or on behalf of a Debtor or an Affiliate of a Debtor of; or (c) is the legal or beneficial owner of an asset of (i) an employee pension benefit plan that

is a governmental plan, as defined in section 414(d) of the Internal Revenue Code of 1986 or (ii) an eligible deferred compensation plan, as defined in section 457(b) of the Internal Revenue Code of 1986, shall be considered for purposes of section 1102 of the Bankruptcy Code to be a Person with respect to such asset or such benefit.

"Petition Date(s)" mean(s) April 30, 2009, the date on which TH Properties, L.P., T.H. Properties of New Jersey, L.P., Northgate Development Company, L.P., Morgan Hill Drive, L.P., and TH Properties, Inc. filed their respective petitions for relief; April 20, 2010, the date on which TH Properties, LLC filed its petition for relief; and September 14, 2010, the date on which Swamp Pike LP filed its petition for relief.

"Plan" means this Third Amended Joint Chapter 11 Plan dated as of December 8, 2011, including all exhibits, appendices, schedules and annexes, if any, attached hereto, as submitted by the Debtors, as such Plan may be altered, amended, supplemented or modified from time to time in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Confirmation Order.

"Priority Claims" means any Claim against the Debtors entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

"Pro Rata Share" means, with respect to any Claim, a proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the consideration distributed on account of all Allowed Claims in that Class is the same as the ratio such Claim bears to the total amount of all Allowed Claims in that Class (plus Disputed Claims in that Class until disallowed).

"Professional Fee Claim" means a claim for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331 or 503(b) of the Bankruptcy Code relating to services incurred on and after the Petition Date and prior to and including the Effective Date in connection with an application made to the Bankruptcy Court by Professionals in the Chapter 11 Cases.

"Professionals" means any professional employed in these Chapter 11 Cases pursuant to sections 327 or 1103 of the Bankruptcy Code or any Professional entitled to compensation pursuant to sections 327, 328, 330, 331, 503(b)(2) or (4), or 1103 of the Bankruptcy Code.

"Project Budget" means the budget prepared by THP, Inc. for each Project that details the estimated projected revenue for the Project, the estimated Project Specific Expenses, the estimated allocation of General Overhead to the Project and the estimated net cash flow from the Project.

"Projects" means collectively, the Biltmore Estates Project, the Coddington View Project, Northgate Phase I Project, Northgate Phase IIA, Project, Northgate Phases II and III Project, the Northgate Phases IV and V Project, the Kingston Hill Project and the Barton Ridge Project.

"Project Specific Expenses" means (a) the costs associated with the development, construction, marketing and sale of homes at a Project including, construction costs, real estate

taxes, broker/realtor commissions, transfer taxes, closing costs, and other related miscellaneous costs, and (b) payments required to satisfy the Allowed Mechanic Lienholders Claims (as defined in the Plan) applicable to the respective Project, if any, and to satisfy the Allowed Secured Lender Claims (as defined in the Plan), applicable to the respective Project, if any.

"Property" means all assets or property of the Debtors' respective Estates of any nature whatsoever, real or personal, tangible or intangible, including contract rights, accounts and Causes of Action, previously or now owned by the Debtors, or acquired by the Debtors' respective Estates, as defined in section 541 of the Bankruptcy Code.

"Reinstated or Reinstatement" means: (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim so as to leave such Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code; or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; and (iv) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitled the Holder of such Claim, provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence or which prohibit certain transactions or actions contemplated by the Plan, or conditioning such transactions or action on certain factors, shall not be required to be reinstated in order to accomplish Reinstatement.

"Rejection Claims" means claims of any non-Debtor counterparty to any unexpired leased of nonresidential real property or any executory contract arising on account of the rejection of such lease or contract during the administration of these Chapter 11 Cases under section 365 of the Bankruptcy Code or pursuant to the Plan.

"Releasees" means: (a) the directors, members, managers, officers and employees of the Debtors, in each case as of the Petition Date(s) or that have become directors, members, managers, officers, or employees thereafter but prior to the Effective Date, and the Debtors' agents and professionals; (b) the Committee and members of the Committee; and (c) to the extent such parties are deemed Releasees, the respective current and former officers, directors, employees, agents, stockholders, managers, members, affiliates, partners, advisors and professionals of the parties identified in subclauses (a) through (c); provided, however, that the foregoing released parties identified in subclauses (a) through (c) above shall be released only from liabilities arising out of actions taken in such capacity and only as specifically set forth herein.

"Reorganized Debtors" mean the Debtors after confirmation of this plan of reorganization.

"Schedule of Assumed Contracts" means the schedule listing certain executory contracts and unexpired leases to be assumed by the Debtors and assigned in connection with the Plan.

"Schedules" means the schedules of assets and liabilities and statements of financial affairs Filed by any of the Debtors in the Chapter 11 Cases, as required by section 521 of the Bankruptcy Code, as the same may have been or may be amended, modified or supplemented.

"Secured Claim" means any Claim arising before the Petition Date that is: (a) secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law on Property in which the Debtors' respective Estates have an interest and are not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law; or (b) subject to setoff under section 553 of the Bankruptcy Code, but, with respect to both case (a) and (b), only to the extent of the value of the assets or Property securing any such Claim or the amount subject to setoff, as the case may be.

"Tax" means any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign governmental authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, *ad valorem*, estimated, severance, stamp, occupation and withholding tax, together with any interest, penalties, fines or additions attributable to, imposed on, or collected by any such federal, state, local or foreign governmental authority.

"TE" means Turnersville Estate, L.P.

"THP, Inc." means TH Properties, Inc. and the construction company for all of the other Debtors.

"THP, Inc. Board" means the Board of Directors of THP, Inc.

"THP, LP" means TH Properties, L.P.

"Unclaimed Property" means any distribution of Cash or any other Property made to the Holder of an Allowed Claim pursuant to the Plan that is returned to the Debtors or the Board as undeliverable and no appropriate forwarding address is received prior to the date on which the Final Decree is entered in the Chapter 11 Cases. In the case of a distribution made in the form of a check, is not negotiated and no request for reissuance is made as provided for in Section 5.06 of the Plan.

"Unimpaired" means any Claim that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

"United States Trustee" means the United States Trustee appointed under section 581(a)(3) of title 28 of the United States Code to serve in the Eastern District of Pennsylvania.

"U.S. Trustee's Fee Claims" means any fees assessed against the Debtors' Estates pursuant to section 1930(a)(6) of title 28 of the United States Code.

"Wynstone Project" means the property known as the Davidheiser tract in New Hanover Township, Montgomery County, Pennsylvania which is presently owned by Wynstone Development Group, LP, a non-debtor affiliate of the Debtors.

Rules of Interpretation. All references to "the Plan" herein shall be construed, where applicable, to include references to this document and all its exhibits, appendices, schedules and annexes, if any (and any amendments thereto made in accordance with the Bankruptcy Code). Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular paragraph, subparagraph, or clause contained in the Plan. The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize or limit the generality of the class within which such things are included. The captions and headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Any term used in the Plan that is not defined in the Plan, either in Article I hereof or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules (with the Bankruptcy Code controlling in the case of a conflict or ambiguity). Without limiting the preceding sentence, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan, unless superseded herein. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) and Section 12.15 hereof shall apply, but Bankruptcy Rule 9006(a) shall govern.

Section 1.02 Exhibits. All Exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full herein, regardless of when Filed.

## ARTICLE 2

## CLASSIFICATION OF CLAIMS AND INTERESTS

Section 2.01 Generally. Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of the Class and is classified in a different Class to the extent the Claim or Interest qualifies within the description of that different Class. A Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, released, settled or otherwise satisfied prior to the Effective Date.

Section 2.02 Unclassified Claims. In accordance with section 1123(a)(l) of the Bankruptcy Code, Administrative Claims (including Claims of the DIP Lenders in connection with the DIP Financing Facilities) and Priority Tax Claims are not classified and are excluded from the Classes designated in this Article II of the Plan. The treatment accorded Administrative Claims and Priority Tax Claims is set forth in Article III of the Plan.

Section 2.03 Unimpaired Classes. The Plan classifies the following Unimpaired Claims and Unimpaired Interests that are not entitled to vote on the Plan. Pursuant to section 1126(f) of the Bankruptcy Code, each Holder of a Claim or Interest in the following Classes is conclusively presumed to have accepted the Plan in respect of such Claims or Interests and is not entitled to vote to accept or reject the Plan:

Class 1 shall consist of all Miscellaneous Secured Lender Claims.

Class 2 shall consist of the Secured Lender Claim of TE at the Northgate Phase I Project and the Northgate Phase IIA Project.

Class 3 shall consist of the Secured Lender Claim of First Niagara Bank, a National Banking Association, successor by merger to Harleysville Bank and Trust Company at Coddington View in Upper Pottsgrove Township.

Class 4 shall consist of Certain Mechanic Lienholders Claims.

Class 5 shall consist of all Miscellaneous Secured Vendor Claims.

Class 6 shall consist of Secured Claims of Taxing Authorities.

Class 7 shall consist of the Priority Employee Wage & Benefit Claims.

Class 8 shall consist of the Deposit Holder Claims.

Class 10 shall consist of the Limited Partner Interests in the LP Debtors.

Class 12 shall consist of the Interests in the GP Debtor and THP Inc.

Section 2.04 Impaired Classes Entitled to Vote. The Plan classifies the following Classes as the only Impaired Classes that may receive a distribution under the Plan and that are entitled to vote to accept or reject the Plan:

Class 9 General Unsecured Claims.

Section 2.05 Impaired Classes Deemed to Reject. The Plan classifies the following Class of Claims as an Impaired Class that is not entitled to vote to accept or reject the Plan. Pursuant to section 1126(g) of the Bankruptcy Code, each Holder of a Claim in this Class is conclusively presumed to have rejected the Plan in respect of such Claim because the Plan does not entitle the Holders of such Claim to receive or retain any property under the Plan on account of such Claim. Accordingly, Holders of such Claim is not entitled to vote to accept or reject the Plan:

Class 11 shall consist of the General Partner Interests in the LP Debtors

Class 13 shall consist of all Intercompany Claims.

## ARTICLE 3

## PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

Section 3.01 Satisfaction of Claims and Interests. The treatment of and consideration to be received by Holders of Allowed Claims or Allowed Interests pursuant to this Article 3 and the Plan shall be in full satisfaction, settlement, release, extinguishment and discharge of their respective Claims against or Interests in the Debtors and the Debtors' respective Estates, except as otherwise provided in the Plan or the Confirmation Order.

Section 3.02 Unclassified Claims, Classified Unimpaired and Impaired Claims and Classified Interests. Administrative Claims and Priority Tax Claims are treated in accordance with section 1129(a)(9)(A) and section 1129(a)(9)(C) of the Bankruptcy Code, respectively. Such Claims are Unimpaired under the Plan and, in accordance with section 1123(a)(l) of the Bankruptcy Code, are not designated as Classes of Claims for purposes of this Plan and for purposes of sections 1123, 1124, 1126 and 1129 of the Bankruptcy Code. In addition, Classes 1 through 8 and Classes 10 and 12 are classified as Classes of Claims or Interests that are Unimpaired. In accordance with section 1126(f) of the Bankruptcy Code, the Holders of Claims in such Classes are conclusively presumed to have accepted the Plan and are not entitled to vote to accept or reject the Plan. Class 9 Claims are Impaired and the Holders thereof are entitled to vote to accept or reject the Plan on account of such Allowed Claims. Class 11 Interests and Class 13 Claims are not receiving any distribution under the Plan and conclusively deemed to have rejected the Plan, and therefore, are not entitled to vote on the Plan.

Section 3.03 Administrative Claims. Administrative Claims are Unimpaired. Unless otherwise provided for herein, each Holder of an Allowed Administrative Claim shall receive in full satisfaction, settlement, release, extinguishment and discharge of such Claim: (a) the amount of such unpaid Allowed Claim in Cash on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Administrative Claim becomes Allowed, or (iii) a date agreed to by the Debtors and the Committee, as the case may be, and the Holder of such Administrative Claim; (b) such other treatment on such other terms and conditions as may be agreed upon by the Holder of such Claim and the Debtors and the Committee, as the case may be, or as the Bankruptcy Court may order or has ordered pursuant to a Final Order; or (c) if such claim is for post petition property or real estate taxes, the Pro Rata Share of said taxes (plus interest) on such lots that remain in the Debtors' estates as homes on such lots are sold under the Plan. To the extent property has been conveyed to another entity pursuant to a section 363 sale, a deed in lieu of foreclosure, or some other mechanism, and such property is no longer property of the Debtors' estate as of the Effective Date of the Plan, the entity to whom such property has been conveyed is solely responsible for payment of any outstanding taxes on such property (other than Biltmore Estates, the Debtors having paid the outstanding taxes in connection with a Final Order authorizing them to be paid when this property was transferred). The current estimated amount of post –petition real estate taxes to be paid under the plan is $288,505.39. All Administrative Claims shall be paid pro rata until paid in full as set forth on the Budgets attached hereto as Exhibit C and in Sections 7.03 and 7.12 hereof.

Section 3.04 Class 1: Miscellaneous Secured Lender Claims. Class 1 Miscellaneous Secured Lender Claims are Unimpaired.[2] The Holders of the Following Miscellaneous Secured Lender Claims (a) Affinity Bank in the amount of $1,088,155.32 relating to the following properties: Arbor Court in Pennsburg Borough ($535,609.63), Stoneacre Ridge (Ellis) ($272,341.25), and Leidy ($280,204.44) in New Hanover Township; (b) Beneficial Savings Bank in the amount of $1,972,782.54 relating to the property at Melbourne Hill in Lower Frederick Township; (c) First Niagara Bank, a National Banking Association, successor by merger to Harleysville Bank and Trust Company in the approximate amount of $19,650,762 relating to the following properties: Newport Landing (Nagdev) ($102,417.18) and Sandanato ($126,773.23) in Bristol Township, Kingston Hill (Lester) ($189,785.69), Normandie in Upper Salford ($9,182,959.54), the Fleet Maintenance Building ($429,316.61) in Lower Salford Township, property located at Village at Wynstone, Swamp Pike in Gilbertsville, New Hanover Township ($5,248,934.37) and certain lots at Coddington View in Upper Pottsgrove Township ($4,370,576); (d) VIST Bank in the amount of $5,410,776.08 relating to the properties at Berwind II in Douglass Township and Edgehill in Upper Frederick Township; (e) Univest National Bank in the amount of $801,031.88 relating to properties at Westport Farm in Franconia Township; (f) Indymac Bank in the amount of $2,563,156.61 relating to property located at Kingston Hill III in New Hanover Township; (g) Wachovia Bank, N.A. in the amount of $7,698,772.06 relating to property located at Village at Wynstone in New Hanover Township; (h) Bucks County Bank in the amount of $285,000 relating to property located at 1104 Berkley Drive, Pennsburg; (i) VIST Bank in the amount of $307,761.68 relating to property located at Kingston Hill Phase IV in New Hanover Township; (j) Wilmington Trust N.A. in the approximate amount of $2,579,046.86 relating to certain property located at Northgate Phase I in Upper Hanover Township in the event the settlement agreement referenced in subsection 3.05 herein is not approved by the Court; (k) 233 Schuylkill Road LP in the amount of $1,897,264.92 relating to property located at Stoneacre Ridge (Brusch) in New Hanover Township; (l) Gehringer Plumbing on Lots 54 through 63 at Cliffside Manor Phase II in Bedminster Township shall receive in full satisfaction, settlement, release, extinguishment and discharge of each such Miscellaneous Secured Lender Claim, the return of the property securing such Miscellaneous Secured Lender Claim (unless such property has already been returned). Any Allowed Claim for a deficiency shall be treated as a Class 9 General Unsecured Claim, unless otherwise waived by the Holder of each such Miscellaneous Secured Lender Claim.

The Holders of the following Miscellaneous Secured Lender Claims (a) National Penn Bank in the amount of $127,773.23 for certain remaining lots in Kingston Hill II in New Hanover Township and $6,511,683.59 for Whitfield Estates I, IIA, IIB, and III in Upper Macungie Township; (b) Susquehanna Bank in the amount of $19,189,314.55 relating to property located at Burbank Grove in Upper Providence Township; and (c) Continental Bank in the amount of $4,955,873.55 relating to the property at Ivywood in East Coventry Township, agreed, during the course of the Debtors' cases in full satisfaction, settlement, release, extinguishment and discharge of each such Secured Claim to permit the sale of each respective

[2] Some of the Claim amounts have been adjusted to reflect post-petition paydowns and some of the Claim amounts listed are as of the Petition Dates. These Claim amounts will ultimately be adjusted based on the status of the sale of the collateral and paydowns on some loans through cross-collateral provisions in the loan documents to the extent the Secured Lender also provided DIP financing or use of Cash Collateral during the Chapter 11 Cases.

Property pursuant to Bankruptcy Code section 363 and to receive the proceeds thereof. Any Allowed Claim for a deficiency shall be treated as a Class 9 General Unsecured Claim, unless otherwise waived by the Holder of each such Miscellaneous Lender Secured Claim.

Section 3.05 Class 2 Secured Lender Claim of TE at the Northgate Phase I Project (subject to Reading Materials, Inc. first priority lien as set forth in Class 5) and the Northgate Phase IIA Project. The Class 2 Secured Lender Claim of TE at the Northgate Phase I Project (subject to Reading Materials, Inc. first priority lien as set forth in Class 5) and the Northgate IIA Project in Upper Hanover Township is Unimpaired. The Holder of the Allowed Class 2 Secured Lender Claim of TE at the Northgate I Project shall receive in full satisfaction, settlement, and release, extinguishment and discharge of such Claim on the Northgate Phase I Project (subject to the liens of Reading Materials) the principal amount of $650,000 with interest at the annual fixed rate of ten percent (10%) to be paid from the net proceeds of each closing of the sale of the remaining lots for sale at the Northgate Phase I Project in accordance with the payment scheme set forth in a settlement agreement to be approved by the Court and set forth on the Budgets attached hereto as Exhibit C and Section 7.02 hereof. Pursuant to the terms of that settlement agreement, the interests of Wilmington Trust, N.A., as may be assigned to M&T Bank, in Northgate Phase I Project and the Wynstone Project, will be transferred to TE for cash, subject to all existing loans and approvals. In the event the settlement agreement referenced herein is not approved by the Court, then TE shall have no claim with respect to the Northgate Phase I Project, and Wilmington Trust shall have a Class 1 Miscellaneous Secured Lender Claim with respect to the Northgate Phase I Project (subject to Reading Material, Inc.'s first priority lien as set forth in Class 5), and the Wynstone Project shall remain subject to Wilmington Trust, N.A.'s rights and liens outside of these Chapter 11 Cases since it is owned by a non-debtor entity. The Holder of the Allowed Class 2 Secured Lender Claim of TE at the Northgate Phase IIA Project shall receive in full satisfaction, settlement, and release, extinguishment and discharge of such Claim on the existing Northgate Loan Documents in the principal amount of $750,844.94 over twenty-four months with interest at the annual fixed rate of ten percent (10%) to be paid from the net proceeds of each closing at the Northgate Phase IIA Project in accordance with the Budgets attached hereto as Exhibit C and Section 7.02 hereof.

Section 3.06 Class 3: Secured Lender Claim of First Niagara Bank, a National Banking Association, successor by merger to Harleysville Bank and Trust Company at Coddington View in Upper Pottsgrove Township. Class 3 Secured Lender Claim of First Niagara Bank, a National Banking Association, successor by merger to Harleysville Bank and Trust Company at Coddington View in Upper Pottsgrove Township is Unimpaired. The Holder of the Allowed Class 3 Secured Lender Claim of First Niagara Bank, a National Banking Association, successor by merger to Harleysville Bank and Trust Company shall receive in full satisfaction, settlement, and release, extinguishment and discharge of such Claim: (a) the total amount of $935,680, together with accrued interest, plus a split of the excess depending on the sales of homes from the sale of the homes at Coddington View in Upper Pottsgrove Township in accordance with the DIP Financing Order dated November 5, 2009 [Docket No. 714]; and (b) an amount up to $973,100 for the buildout of fourteen additional homes at Coddington View Upper Pottsgrove Township in accordance with a DIP Financing Order II dated May 24, 2011 [Docket No. 1904]. Pursuant to DIP Financing Order II, First Niagara was granted stay relief to exercise its state law remedies with respect to the balance of lots at Coddington View and shall be treated a Class 1 Miscellaneous Secured Lender Claim with respect to this portion of its claim.

Section 3.07 Class 4: Certain Mechanics Lienholders Claims. Class 4 Certain Mechanics Lienholders Claims consists of the Claims of UGI HVAC Enterprises, Inc., d/b/a ServiceMark ("ServiceMark"), ProBuild Company, LLC ("ProBuild"), Edgemont Stone & Supply Co., the H&K Entities and American Rock Mechanics, Inc. ("AMROC"). Class 4 Certain Mechanics Lienholders Claims shall receive payment or release liens in accordance with the settlements approved by the Bankruptcy Court [Docket Nos. 693, 1305, 1548, 1778, 1780, 1865, and 1872], as well as those that are approved prior to Plan confirmation. With respect to the liens of ProBuild and Servicemark on homes sold by the Debtors pre-petition, said liens are secured by liens granted by the Debtors on its otherwise unencumbered Barton Ridge Project and the liens of these entities on the homes sold pre-petition shall be released by them on or before upon plan confirmation. The remaining liens on the Barton Ridge Project in the first priority amount of $92,576.18 in favor of ProBuild and the second priority amount of $69,306.00 in favor of ServiceMark shall be paid from the pool of funds set aside in Section 7.13 hereof (once funded), or from the proceeds of sales of the units in Barton Ridge, whichever occurs first. With respect to the liens of the H&K Entities, pursuant to the settlement agreements entered into with the Debtor, said liens attach to the Debtors' Biltmore, Northgate and Kingston Hill projects and shall be paid in accordance with the Court approved settlement agreements. In the event of a conflict or contradiction in terms between the Plan, the Confirmation Order and the Orders approving the above referenced settlement agreements, the Orders approving the terms and content of the settlement agreements shall control. Should any of the holders of Certain Mechanics Lienholders Claims have Claims other than the Certain Mechanics Lienholders Claims, they shall be treated in accordance with Section 3.12, as General Unsecured Claims, or as set forth in any Final Order entered by the Bankruptcy Court in the Chapter 11 Cases.

Section 3.08 Class 5: Miscellaneous Secured Vendor Claims. Class 5 Miscellaneous Secured Vendor Claims are Unimpaired. Class 5 consists of the Miscellaneous Secured Vendor Claims of (a) Reading Materials, Inc. first priority lien in the amount of $211,405.94 (granted pursuant to that certain order authorizing DIP Financing [Docket No. 693] and providing for the second priority liens of Wilmington Trust FSB or TE upon Court approval, relating to certain lots in Northgate Phase I in Upper Hanover Township; (b) Hearth & Home Technologies, Inc. at Stoneacre Ridge – Trolley Line ($354,575.00); and (c) Carroll Engineering Corp. at Melbourne Hill Sewer Plant Property ($150,000). In full satisfaction, settlement, release, extinguishment and discharge of each such Miscellaneous Secured Vendor Claim, the Holder of such claim shall (a) retain its lien(s) on each of the respective Properties (absent such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Claim and the Debtors and the Committee, as the case may be); and/or (b) enter into an agreement with the Reorganized Debtors to complete all or a portion of construction on each Property, which shall include a means to satisfy payment of the lien. Any Allowed Claim for a deficiency shall be treated as a Class 9 General Unsecured Claim, unless otherwise waived by the Holder of each such Miscellaneous Secured Claim. Further, in the event any of these Properties are developed as part of the Plan, any net proceeds distributed in accordance with Plan Section 7.12.

Section 3.09 Class 6: Secured Claims of Taxing Authorities. Class 6 consists of the pre-petition secured claims of various Taxing Authorities for property taxes on unsold lots. Each holder of an allowed Class 6 Secured Taxing Authority Claim shall receive in full satisfaction thereof payment of their respective of said taxes (plus statutory interest), on such lots that remain in the Debtors' estates as homes on such lots are sold under the Plan, and they shall retain any

liens on the respective lots until such time as the lots are sold. The estimated aggregate allowed amount of Class 6 Secured Claims of Taxing Authorities is $30,085.34.

Section 3.10 Class 7: Priority Employee Wage & Benefit Claims. Class 7 Priority Employee Wage & Benefit Claims are Unimpaired. This Class consists of Holders of Priority Employee Wage & Benefit Claims. Each Holder of an Allowed Class 6 Priority Employee & Wage Claim shall receive in full satisfaction, settlement, release, extinguishment and discharge of such Claim the amount of such unpaid Allowed Priority Employee Wage & Benefit Claim in Cash with interest at the prime rate set forth in the Wall Street Journal from the Petition Date to the date such distribution is made as sufficient funds are accumulated to pay such claims as set forth on the Budgets attached hereto as Exhibit C in Sections 7.02 and 7.13 hereof. Such Claims shall be paid pro rata as distributions are made along with Administrative Claimants, until paid in full as set forth on the Budgets attached hereto as Exhibit C in Sections 7.02 and 7.13 hereof.

Section 3.11 Class 8: Deposit Holders. Class 8 Deposit Holders are unimpaired. Each Holder of an Allowed Class 8 Deposit Holder claim shall receive in full satisfaction, settlement, release, extinguishment and discharge of such Claim, the full amount of such Allowed Deposit Holder Claim on the Effective Date of the Plan.

Section 3.12 Class 9: General Unsecured Claims. Class 9 General Unsecured Claims are Impaired. This Class consists of General Unsecured Trade Claims, all Mechanics Lienholders Claims on the retained Projects (other than those in Class 4 herein), and all other Claims not otherwise classified in the Plan. Each Holder of an Allowed General Unsecured Claim shall receive in full satisfaction, settlement, release, extinguishment and discharge of such Claim, its Pro Rata Share of the sums available after payment in full of Administrative Claims, the applicable Secured Claims of Lenders and applicable Secured Claims of Taxing Authorities, Deposit Claims, Priority Employee Wage & Benefit Claims and Administrative Claims, as set forth on the Budgets attached hereto as Exhibit C and Sections 7.02 and 7.13 hereof.

Section 3.13 Class 10: Limited Partner Interests in the LP Debtors. Class 10 Interests are Unimpaired. In exchange for the New Value Contribution, the Interests of the Hendricks, as limited partners, in the LP Debtors shall remain equal to the interests they held as of the Petition Date. The Hendricks own all of the Class 10 Limited Partner Interests.

Section 3.14 Class 11: General Partner Interests in the LP Debtors. Class 11 Interests are impaired. The Class 11 Interests in the LP Debtors are held by Northgate Development Company, LLC, Morgan Hill Drive, LLC, Hendricks of NJ, LLC, and Swamp Pike, LLC. All the Class 11 Interests shall be cancelled and extinguished on the Effective Date.

Section 3.15 Class 12: Interests in the GP Debtor and THP, Inc. Class 12 Interests are unimpaired. In exchange for the New Value Contribution, the Class 12 Interests held by the Hendricks in the GP Debtor and THP, Inc. shall remain equal to the interests they held as of the Petition Date. The Hendricks own all of the Class 12 Interests.

Section 3.16 Class 13: Intercompany Claims. Class 13 Intercompany Claims are Impaired. Holders of Class 13 Intercompany Claims shall not receive or retain any property

under the Plan on account of such Intercompany Claims. On the Effective Date, all Intercompany Claims shall be extinguished.

## ARTICLE 4

## ACCEPTANCE OR REJECTION OF THE PLAN; CRAMDOWN

Section 4.01 Acceptance by Impaired Classes of Claims and Interests. Pursuant to section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if: (a) the Holders of at least two-thirds (2/3) in dollar amount of the Allowed Claims actually voting in such Class (other than Claims held by any Holder designated pursuant to section 1126(e) of the Bankruptcy Code) have timely and properly voted to accept the Plan, and (b) more than one-half (1/2) in number of the Holders of such Allowed Claims actually voting in such Class (other than Claims held by any Holder designated pursuant to section 1126(e) of the Bankruptcy Code) have timely and properly voted to accept the Plan. No unimpaired Class of Interests is entitled to vote on the Plan pursuant to section 1126 of the Bankruptcy Code.

Section 4.02 Voting Classes. Except as otherwise required by the Bankruptcy Code or the Bankruptcy Rules or as otherwise provided in this Section 4.02, the Holders of Claims in Class 9 shall be entitled to vote to accept or reject the Plan in accordance with Section 4.01 of the Plan. Classes of Claims Unimpaired under the Plan (Classes 1 through 8 and Classes 10 and 12) shall not be entitled to vote to accept or reject the Plan, and shall be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. The Class of Claims and Interests that are impaired under the Plan and whose Holders neither receive nor retain any property on account of such Claims or Interests under the Plan (Intercompany Claims (Class 13) and General Partner Interests in the LP Debtors (Class 11)) shall not be entitled to vote to accept or reject the Plan and shall be conclusively presumed to have rejected the Plan. Administrative Claims and Priority Tax Claims are Unimpaired and not classified under the Plan, and hence are not entitled to vote to accept or reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

Section 4.03 Ballot Instructions. Each Holder of a Claim or Interest entitled to vote on the Plan will be asked to complete and return a Ballot to the Voting Agent, which will compile the votes so received. Any questions as to the validity, form, and eligibility (including time of receipt) of Ballots will be resolved by the Bankruptcy Court upon application or at the Confirmation Hearing.

Section 4.04 "Cramdown." If all applicable requirements for Confirmation of the Plan are met as set forth in section 1129(a)(l) through (16) of the Bankruptcy Code except subsection (8) thereof, the Debtors may request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the requirements of section 1129(a)(8) thereof, on the bases that the Plan is fair and equitable, and does not discriminate unfairly, with respect to each Class of Claims or Interests that is Impaired under, and has not accepted the Plan.

# ARTICLE 5

## PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN

Section 5.01 Timing of Distributions. Except as specifically set forth in the Plan, distributions of Property will be made to Holders of Allowed Claims in accordance with Article 3 of the Plan. If a Claim is not an Allowed Claim as of the applicable distribution date, distributions will be made only if and when the Claim is Allowed, and then in accordance with Article 3 of the Plan and, with respect to the cure of defaults for assumed executory contracts and unexpired leases, Section 6.02 of the Plan, and in each case, subject to Article 6 of the Plan. Distributions to be made as of the Effective Date on account of Claims that are Allowed as of the Effective Date and are entitled to receive distributions under the Plan shall be made on the Effective Date or as soon as reasonably practicable thereafter.

Section 5.02 Distributions to Holders of Allowed Claims. Except as otherwise provided herein, the Debtors and/or the THP, Inc. Board shall make all distributions required under the Plan in a manner consistent with the Plan. Distributions to Holders of Allowed Claims will be made in accordance with Article 3 of the Plan. Payments and other distributions to be made pursuant to the Plan will be made by the Debtors and will be available from the proceeds of the sale of homes as set forth in Section 7.12 hereof. If any dispute arises as to the identity of a Holder of an Allowed Claim who is to receive any distribution, the Debtors, in lieu of making such distribution to such Holder, may delay such distribution until the disposition thereof shall be determined by Final Order of the Bankruptcy Court or by written agreement among the interested parties to such dispute.

Section 5.03 Delivery of Distributions. With respect to General Unsecured Claims, distributions to Holders of Allowed Claims shall be made by the Debtors or the Boards: (a) at the last known addresses of such Holders or (b) at the addresses set forth in any written notices of address changes delivered to the Debtors. If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made unless and until the Debtors are notified of such Holder's then current address, at which time all missed distributions shall be made to such Holder without interest.

Section 5.04 Method of Cash Distributions. Any Cash payment to be made pursuant to the Plan may be made by Cash, draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law at the option of the Debtors.

Section 5.05 Failure to Negotiate Checks. Checks issued in respect of distributions under the Plan shall be null and void if not negotiated within sixty (60) days after the date of issuance. Any amounts returned to the Debtors in respect of such non-negotiated checks shall be forwarded to (if necessary) and held by the Debtors. Requests for reissuance for any such check shall be made directly to the issuer of the check by the Holder of the Allowed Claim with respect to which such check originally was issued. All amounts represented by any voided check will be held until the earlier of: (a) one (1) month after date on which the check is voided, or (b) the date on which the Bankruptcy Court enters the Final Decree, and all requests for reissuance by the Holder of the Allowed Claim in respect of a voided check are required to be made prior to such date. Thereafter, all such amounts shall be deemed to be Unclaimed Property, in accordance

with Section 5.06 of the Plan, and all Holders of Claims in respect of void checks shall be forever barred, estopped and enjoined from asserting a claim to such funds in any manner against the Debtors or their respective assets.

Section 5.06 Unclaimed Distributions. All Property distributed on account of Claims must be claimed prior to the date on which the Bankruptcy Court enters the Final Decree, or, in the case of a distribution made in the form of a check, must be negotiated and a request for reissuance be made as provided for in Section 5.05 of the Plan. All Unclaimed Property will be retained by and will vest in such funds being held for the benefit of distributions to Class 9 General Unsecured Creditors under the Plan. All full or partial payments made by the Debtors and received by the Holder of a Claim prior to the Effective Date will be deemed to be payments under the Plan for purposes of satisfying the obligations of the Debtors pursuant to the Plan. Nothing contained in the Plan shall require the Debtors to attempt to locate any Holder of an Allowed Claim other than by reviewing the records of the Debtors and any Claims filed in the Chapter 11 Cases. Pursuant to section 1143 of the Bankruptcy Code, all claims in respect of Unclaimed Property shall be deemed Disallowed and the Holder of any Claim Disallowed in accordance with this Section 5.06 will be forever barred, expunged, estopped and enjoined from asserting such Claim in any manner against the Debtors or their respective assets.

Section 5.07 Limitation on Distribution Rights. If a claimant holds more than one Claim in any one Class, all Claims of the claimant in that Class will be aggregated into one Claim and one distribution will be made with respect to the aggregated Claim.

Section 5.08 Fractional Dollars. Notwithstanding any other provision of the Plan, Cash distributions of fractions of dollars will not be made; rather, whenever any payment of a fraction of a dollar would be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down. To the extent that Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as Unclaimed Property pursuant to Section 5.06 of this Plan.

Section 5.09 Compliance With Tax Requirements. In connection with each distribution with respect to which the filing of an information return (such as an Internal Revenue Service Form 1099 or 1042) or withholding is required, the Debtors shall file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution or effect any such withholding and deposit all moneys so withheld as required by law. With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law to avoid withholding has not been received by the Debtors within thirty (30) days from the date of such request, the Debtors may, at their or its option, withhold the amount required and distribute the balance to such Person or decline to make such distribution until the information is received.

Section 5.10 Character of Distributions. The Debtors shall treat all distributions to Holders of Secured Claims as repayments of principal amounts due with respect to such Claims, with no amounts allocable to the payment of any accrued but unpaid interest thereon. Consistent with that treatment, Holders of Secured Claims covenant and agree to treat the entire amount of such distributions as repayments of principal amounts due on their claims and shall not allocate

any portion of such distributions to accrued but unpaid interest. The parties may modify this treatment by written agreements to the contrary.

Section 5.11 De Minimis Distributions. No Cash payment of less than twenty-five ($25.00) dollars shall be made to any Holder of an Allowed Claim on account of such Allowed Claim.

## ARTICLE 6

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES; INDEMNIFICATION OBLIGATIONS; BENEFIT PROGRAMS

Section 6.01 Treatment of Executory Contracts and Unexpired Leases. All executory contracts and unexpired leases of the Debtors shall be deemed rejected by the Debtors as of the Effective Date, except for any executory contract or unexpired lease that: (a) has previously been assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court on or prior to the Confirmation Date; (b) is the subject of a pending motion to assume, assume and assign, or reject as of the Confirmation Date; or (c) is listed on the Schedule of Assumed Contracts attached hereto as Exhibit A.

Section 6.02 Cure of Defaults for Assumed Contracts and Leases. The cure of all defaults under executory contracts and unexpired leases to be assumed and assigned under the Plan, including the resolution of all objections to the adequacy of assurance of future performance under such contracts and leases and as to the adequacy of amounts proposed to cure defaults under such contracts and leases, shall be governed by the terms of this Plan.

Section 6.03 Bar Date for Claims for Rejection Damages. Claims arising out of the rejection of any executory contract or unexpired lease pursuant to Article 6 of the Plan must be filed with the Bankruptcy Court no later than the later of (a) twenty (20) days after the Effective Date, or (b) thirty (30) days after the entry of an order rejecting such executory contract or unexpired lease. Any Claim not filed within such time period shall be forever barred. The Debtors and the THP, Inc. Board shall have the right to object to any Claim arising out of the rejection of an executory contract or unexpired lease.

Section 6.04 Treatment of Rejection Claims. The Bankruptcy Court shall determine any objections Filed in accordance with Section 6.01 hereof at a hearing to be held on a date to be determined by the Bankruptcy Court. Subject to any statutory limitation, including, but not limited to the limitations contained in sections 502(b)(6) and 502(b)(7) of the Bankruptcy Code, any Claims arising out of the rejection of executory contracts and unexpired leases shall, pursuant to section 502(g) of the Bankruptcy Code, be Impaired and treated as Class 9 General Unsecured Claims in accordance with Section 3 of the Plan.

## ARTICLE 7

## MEANS FOR IMPLEMENTATION OF THE OF THE PLAN

Section 7.01 The Contribution and Buildout of Northgate Phases IV and V. The Plan is premised in part on the buildout of the Northgate Phases IV and V Project which are not owned

by the Debtors. Pursuant to a transfer and development agreement (the "TDA," a true copy of which is annexed hereto as Exhibit "B") among the Debtors, the Hendricks, individually, the entities that own Northgate Phases IV, V and VI, namely the Hills at Perkiomen LP ("HP") and Keystone Land Acquisition, Inc. ("KLA"), both owned by the Hendricks, and their lender and/or its affiliates, Newstream Real Estate, LLC, ("NSRE"), HP and KLA shall, by deed, on the Effective Date or on such later date as permitted or required under the TDA and pursuant to the Plan, transfer Northgate Phases IV and V and Northgate Phase VI to the Debtors, subject to all existing liens, claims and interests including those of NSRE on these phases. To the extent Lexon Insurance Co. bonds any of the Projects retained under the Plan, such bonds may not be transferred to any third party without the consent of Lexon Insurance Co. Pursuant to the Plan and in accordance with Bankruptcy Code section 1146, and the TDA also on the Effective Date or on such later date as permitted or required by the TDA, the Debtors will then immediately transfer Northgate Phases IV and V and Northgate Phase VI to NSRE or its designee, free and clear of all liens, other encumbrances, Claims and Interests, subject only to the permitted exceptions set forth on Exhibit C to the TDA. Thereafter, in accordance with the TDA, the Debtors shall have no further rights or interests in Northgate Phase VI or in the proceeds thereof and the Phase VI new owner may develop or otherwise dispose of Northgate Phase VI in its sole and absolute discretion. Also pursuant to the TDA, THP, Inc. shall serve as general contractor for the completion of Northgate Phases IV and V and shall hire a site contractor to complete and post bonds securing completion of the site work and site contractor shall also complete the site work and receive a first priority security interest in certain lots as set forth in the TDA. All net profits from the sale of the homes at Northgate Phase IV and V shall be contributed to the Reorganized Debtors for distribution to creditors under Section 7.12 of the Plan. The transfer of Northgate Phase IV and V and the subsequent contribution of net profits from the sale of homes at Northgate Phase IV and V to the Reorganized Debtors by the Hendricks are in exchange for the Hendricks retaining all of their Interests in the Debtors and for the interests being granted in the new general partners and shall constitute the New Value Contribution which, as set forth in Exhibit C, show a net cash flow of $8,603,526 to the Debtors' estates for distribution under the Plan. Finally, the TDA provides that the Debtors may exercise a purchase option for Northgate phases IV and V, and also that if certain conditions arise that prevent the Debtors from completing the buildout of these phases, they will revert back to NSRE or its designee.

Section 7.02 The Buildout of the Real Property Owned by the Debtors. The Plan is also premised on the buildout of a number of Projects, as follows: Barton Ridge Project, Biltmore Estates Project, Coddington View Project, Kingston Hill Project, the Northgate Phase I Project (subject to Court approval), the Northgate Phase IIA Project, and the Northgate Phases II, and III Project. Additionally, once the issues regarding certain preferential transfers are either resolved or disposed of by the Bankruptcy Court with respect to the adversary proceedings commenced against ProBuild East, LLC (Adv. Pro No. 11-00354-SR) regarding property located at Keen Road, East Vincent Township, Chester County, PA, and Broc Supply Company, Inc. (Adv. Pro. No. 11-00340-SR) regarding property located at 517 Fifth Avenue, Bristol Township, Bucks County, PA, these properties shall also be developed as part of the Plan, with the net proceeds distributed in accordance with Plan Section 7.12. To the extent Lexon Insurance Co. bonds any of the Projects retained under the Plan, such bonds may not be transferred to any third party without the consent of Lexon Insurance Co

Section 7.03 Project Budgets. The Projects shall be built out in accordance with the Project Budgets which are comprised of the global net cash flow and summary and project disclosure summaries attached hereto as Exhibit C. The Project Budgets have been approved by the Committee and shall govern implementation of the Plan as set forth herein.

Section 7.04 No Substantive Consolidation and New General Partners. The Debtors and their Estates shall not be substantively consolidated. On or before the Effective Date, four Pennsylvania limited liability companies shall be formed which shall become the new general partners of each reorganized LP Debtor except, for the GP Debtor, which shall continue as the general partner of THP, L.P. The Hendricks shall retain all their interests in the Reorganized Debtors and either they, or their designees, shall own all interests in the new general partners to be formed. The management of each Debtor entity and the new general partners shall be controlled by the Boards, and the overall management, oversight, completion and sale of the Projects shall be controlled by the THP, Inc. Board in accordance with the provisions of the Management Agreement.

Section 7.05 Abandoned Projects. The Debtors and the Committee have jointly determined that the following projects (the "Abandoned Projects") have no value to the Debtors' Estates: Arbor Court in Pennsburg Borough; Stoneacre Ridge (Ellis and Leidy) in New Hanover Township; Melbourne Hill In Lower Frederick Township; Ivywood in East Coventry Township; Newport Landing (Nagdev and Sandanato) in Bristol Township; Kingston Hill (Lester) in New Hanover Township; Normandie, in Upper Salford Township; the Fleet Maintenance Building in Lower Salford Township; certain remaining lots in Kingston Hill II in New Hanover Township; Whitfield Estates I, IIA, IIB, and III in Upper Macungie Township; Berwind II in Douglass Township; Edgehill in Upper Frederick Township; Westport Farm in Franconia Township, Kingston Hill III in New Hanover Township; Village at Wynstone in New Hanover Township (subject to the Debtors' developing the Wynstone Project upon Court approval of the settlement described in section 3.05 above), 1104 Berkley Drive, Pennsburg; Burbank Grove in Upper Providence Township; Kingston Hill Phase IV in New Hanover Township; Stoneacre Ridge (Brusch) in New Hanover Township; and Stoneacre Ridge – Trolley Line and Melbourne Hill Sewer Plant Property, and Lots 54 through 63 at Cliffside Manor Phase II in Bedminster Township. The Abandoned Projects shall be abandoned or turned over to the Miscellaneous Secured Party with a first priority lien on the Abandoned Property, or such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Miscellaneous Secured Claim, the Debtors and the Committee, as the case may be, including a sale pursuant to Section 363 of the Bankruptcy Code with such Miscellaneous Secured Party to bear the costs of such sale.

Section 7.06 The Board/Boards. In accordance with the Management Agreement, the Confirmation Order shall authorize the Debtors to take the necessary corporate action with respect to all Debtor-entities to reconstitute the existing board of directors of each Debtor and the new general partner of each Debtor limited partnership as provided by the provisions of the Management Agreement. As of the Effective Date, the board of each Debtor entity and the general partner of each Debtor limited partnership shall be, or changed so as to be, comprised of the same five (5) members as follows: Timothy P. Hendricks, W. Todd Hendricks, two Committee members, and one additional member as mutually agreed upon by each member. During the term of the Management Agreement: (a) if, Timothy P. Hendricks or W. Todd

Hendricks is unable or unwilling to continue to serve on the Boards, the remaining Hendrick's board member shall have the exclusive right to appoint a successor to the Boards; or (b) if, either of the two Committee members become unable or unwilling to serve on the Boards, the remaining Committee board member shall have the exclusive right to appoint a successor to the Boards; the agreement being that both the Hendricks and the Committee shall each have selected two members that are prepared to serve on the reconstituted Boards at all times during the term of this Agreement. Likewise, if during the term of this Plan, the fifth independent member of the Boards is unable or unwilling to serve on the Boards, the Hendricks board members and the Committee board members shall jointly select a new fifth independent member to the Boards. The Hendricks, directly or indirectly, may retain all of their interests in a voting trust. The Boards may retain professionals to carry out their duties.

Section 7.07 Management Agreement. Pursuant to a Management Agreement to be entered into upon Plan confirmation, by and among the Debtors, Timothy Hendricks, Todd Hendricks, the Committee, and the THP, Inc. Board shall have the responsibility for the management and oversight of the completion and sale of all the Projects. A copy of the Management Agreement is attached hereto as Exhibit D and made a part hereof. The THP, Inc. Board in its business judgment, prior to completion of any Project, may sell a Project if it is determined that the distribution to Class 9 General Unsecured Creditors will be maximized by such sale.

Section 7.08 Salary. The Project Budgets provide that after the Effective Date, W. Todd Hendricks and Timothy P. Hendricks will continue to be paid the same salary that was approved by the Committee at the commencement of Chapter 11 Cases, which is $130,000 each annually. The Management Agreement also includes a management fee (the "Management Fee") payable to the Hendricks, consisting of: (a) an annual bonus to the Hendricks if the sales projections are met and/or if the actual expenses are less than the projected expenses for that year (in a formula to be determined by the THP, Inc. Board post-confirmation); and (b) a portion of the annual net profit of each project shall be paid annually as performance bonuses to the Hendricks if certain targets (to be determined post-confirmation by the THP, Inc. Board) for (i) distributions to creditors and/or (ii) sales of completed homes are met.

Section 7.09 Reconstitution of the THP, Inc. Board. Subject to the provisions of the Management Agreement, if annual sales or expense targets of the Project Budgets are not met as determined by the THP, Inc. Board, the THP, Inc. Board may replace the Hendricks as board members and the other individual Boards may do the same, subject to paying the Hendricks all outstanding payments due them, including any accrued salary and Management Fee, and any other expenses due that have accrued but not been paid as of the termination date, after which the Hendricks shall not be entitled to any further payments.

Section 7.10 Other Projects. So long as THP, Inc. is performing services for the Debtor entities and is in compliance with the Budgets and sales targets, it may take on other work or projects unrelated to the Debtors. Such projects may not compete geographically with the Projects and may not affiliate or market with any Projects.

Section 7.11 Powers of the THP, Inc. Board. As provided by the provisions of the Management Agreement, the THP, Inc. Board shall administer the Plan and shall be responsible

for, among other things, performing all acts of the Debtors necessary to carry out the Plan. From and after the Effective Date and continuing through the date of entry of a Final Decree, the THP, Inc. Board shall: (a) possess the rights of a party in interests pursuant to section 1109(b) of the Bankruptcy Code for all matters arising in, arising under, or related to the Chapter 11 Cases and, in connection therewith, shall (i) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts, (ii) be entitled to notice and opportunity for hearing on all such issues, (iii) participate in all matters brought before the Bankruptcy Court, and (iv) receive notice of all applications, motions, and other papers and pleadings filed in the Bankruptcy Court; (b) have the authority to act on behalf of the Debtors in all adversary proceedings and contested matters pending in the Bankruptcy Court and in all actions and proceedings pending elsewhere; and (c) have the authority to retain such personnel or professionals (including, without limitation, legal counsel, financial advisors or other agents) as it deems appropriate and compensate such personnel and professionals as it deems appropriate, all without prior notice to or approval of the Bankruptcy Court. Professionals and personnel retained or employed by the THP, Inc. Board need not be disinterested as that term is defined in the Bankruptcy Code.

Section 7.12 Disbursement of Proceeds from the Projects. As provided by Section 5.02 of the Management Agreement, THP, Inc. with the services of any of the third party subcontractors and vendors selected by its Board shall complete the Barton Ridge Project, Biltmore Estate Project, Coddington View Project, Kingston Hill Project, Northgate Phase I Project (upon Court approval), Northgate Phases IIA, II and III Project, and the Northgate Phase IV and V Project. The proceeds from these Projects shall be used to pay the following amounts in the following order of priority: (i) first, to the extent applicable, to pay all amounts due in accordance with the Court approved settlement agreements referenced in Classes 2 and 4 of the Plan; (ii) second, to pay the Project Specific Expenses and General Overhead identified in the Project Budgets; (iii) third, the next six million dollars ($6,000,000.00) of proceeds generated, (a) Seventy Five per cent (75%) to pay Administrative Claims, and General Unsecured Claims, (b) fifteen per cent (15%) to THP, L.P. and (c) ten percent (10%) to the Hendricks as the Management Fee; (iv) fourth, the next four million dollars ($4,000,000.00) of proceeds generated, (a) sixty per cent (60%) to pay Administrative Claims and General Unsecured Claims, (b) thirty percent (30%) to THP, L.P., and (c) ten per cent (10%) to the Hendricks as the Management Fee; and (v) fifth, the remainder of proceeds generated, (a) forty per cent (40%) to pay Administrative Claims and General Unsecured Claims and (b) fifty per cent (50%) to THP, L.P. and ten percent (10%) to the Hendricks as the Management Fee. In connection with the agreements and Plan treatment set forth in section 3.05 above, and pursuant to agreement between TE and the Debtors (subject to court approval) the Reorganized Debtors are to develop the Wynstone Project in New Hanover Township. The Debtors and New Hanover Township disagree as to the status of the existing permits and approvals with respect to the Wynstone Project. Pursuant to the Management Agreement, all gross proceeds generated from the Wynstone Project shall be divided fifty per cent (50%) to pay Administrative Claims and General Unsecured Claims and forty per cent (40%) to THP, L.P. and ten percent (10%) to the Hendricks as the Management Fee. It is understood and agreed that the proceeds distributed under sub-sections 5.02(iii)(a), 5.02(iv)(a), 5.02(v)(a) of the Management Agreement and any additional projects added as provided by section 5.02 of the Management Agreement, shall be paid first, on a pro-rata basis, to the holders of Allowed Administrative Claims until the Allowed Administrative Claims are paid in full and then, on a pro-rata basis to holders of Allowed General Unsecured Claims.

Section 7.13 Project Budgets. Each Project shall have a Project Budget. As provided by the Management Agreement, THP, Inc. shall continue to act as the common paymaster for all the Debtors and may maintain one concentration bank account into which proceeds from all Projects will be deposited and from which all Project Specific Expenses, General Overhead expenses including, vendor invoices, overhead expenses, costs for labor and materials, and transfers for gross payroll shall be paid; provided, however THP, Inc. shall maintain separate books and records for each Debtor and shall account for each Debtor's deposits into, and disbursements from, the concentration bank account. In addition, THP, Inc. may also maintain one payroll account from which gross payroll shall be paid; provided, however THP, Inc. shall allocate the payroll expenses among each Debtor, as may be applicable. The THP, Inc. Board shall retain the right to modify the common paymaster business model including, the single concentration bank account and single payroll account as it deems appropriate in its sole business judgment, in order, to allow THP, Inc. to operate in the most efficient and cost effective manner. The payment to THP, Inc. for overhead under the Management Agreement at each closing shall not exceed twenty percent (20%) of the net sales price (gross sale price less closing costs, commissions, real estate taxes and promotions) of each home and shall be capped at $17,000.00 per condominium unit and $20,000.00 per single family home; provided, however, the maximum General Overhead for each month shall not exceed $200,000 and the THP, Inc. Board shall retain the right to increase this amount as it deems appropriate in its sole business judgment. Additionally, the Project Specific Expenses of each of the Projects shall include a pro-ration of funds up to $500,000 in the aggregate as determined to be necessary by the THP, Inc. Board to address (in no particular order of priority) (a) warranty, maintenance work on homes sold prior to the petition date, including driveway toppings, and other customer service items in any non-dedicated Project; and (b) mechanics liens on homes that were conveyed by any of the Debtors to a buyer prior to the Petition Date.

Section 7.14 Completion of Projects and Option to Purchase Projects. Upon completion (or if applicable, the abandonment of any portion) of the Projects and the disbursements of the funds from these Projects in accordance with the Management Agreement and the Plan, the Debtors and the Hendricks will be released and discharged of any and all further obligations under the Plan and the Management Agreement and the Management Agreement shall terminate, all the board members appointed by the Committee shall resign from all the Boards and full control of the Boards will be relinquished to the Hendricks. At anytime prior to the completion of all the Projects, Hendricks shall have the option to purchase the Projects, by paying an amount equal to the sale price determined by the THP, Inc. Board for the Projects less the aggregate amount of all prior distributions paid under the Management Agreement and Plan (the "Purchase Price"). Subject to the Purchase Price being paid and distributed under the provisions of the Management Agreement and Plan, the Debtors and the Hendricks will be released and discharged of any and all further obligations under the Plan and the Management Agreement and the Management Agreement shall terminate, all the board members appointed by the Committee shall resign from all the Boards and full control of the Boards will be relinquished to the Hendricks.

Section 7.15 Release by the Debtors, the Estates and the Committee of Hendricks and the Affiliated Entities. Upon the Effective Date of the Plan, each Debtor, each Estate, and the Committee for itself and its past, present and future successors and assigns (collectively, the "Releasors") hereby release, acquit and forever discharge each of the Hendricks and his past,

present and future agents, heirs, successors and assigns and each of the Affiliated Entities and each of their past, present and future agents, heirs, successors, assigns, officers, directors, and members (collectively, the "Hendricks Released Parties") from and of any and all Causes of Action, Avoidance Actions, damages, suits, debts, dues, accounts, bonds, agreements, contracts, covenants, promises, judgments, costs, attorneys' fees, claims and demands whatsoever, of every nature, kind and description, known or unknown, arising from the beginning of the world until the date of such release, which the Releasors had, now have or claim to have against the Hendricks Released Parties, or any of them, for, upon or by reason of any matter, act or thing whatsoever. In addition, within seven (7) days after the Effective Date, the Debtors, the Estates and the Committee shall take whatever action is necessary to cause all Causes of Action and Avoidance Actions previously filed against the Hendricks Release Parties to be dismissed with prejudice.

Section 7.16 Corporate Action. The entry of the Confirmation Order shall constitute authorization for the Debtors to take or to cause to be taken all limited liability company actions necessary or appropriate to consummate and implement the provisions of the Plan prior to, on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court, including, without limitation, the execution and delivery of all documents in connection therewith. Subject to the terms and conditions of the Plan, all such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action by the stockholders or directors of the Debtors. On the Effective Date, the appropriate officers and managers of the Debtors are authorized and directed to execute and deliver the agreements, documents and instruments contemplated by the Plan in the name and on behalf of the Debtors.

Section 7.17 Income Taxes. Income Taxes and/or tax savings generated by the operations of the Debtors shall be allocated to the Hendricks. This is subject to further review by tax professionals on the structure of the transaction and as deemed appropriate by the THP, Inc. Board.

Section 7.18 Revesting of Assets. Except as otherwise expressly provided in the Plan (and subject to Plan Section 10.09), pursuant to sections 1123(a)(5), 1123(b)(3) and 1141(b) of the Bankruptcy Code, all Property comprising the Estates of each Debtor shall automatically vest in the Debtors, free and clear of all Claims, Liens, contractually-imposed restrictions, charges, encumbrances and Interests of Creditors and equity security holders on the Effective Date, with all such Claims, Liens, contractually-imposed restrictions, charges, encumbrances and Interests being extinguished except as otherwise provided in the Plan.

## ARTICLE 8

## PRESERVATION OF CAUSES OF ACTION AND RIGHT TO DEFEND AND CONTEST

Section 8.01 Preservation of Rights. Except to the extent that any Claim is Allowed during the Chapter 11 Cases or expressly by this Plan (including Plan Section 10.09), the documents attached to the Plan, or the Confirmation Order, nothing, including, but not limited to,

the failure of the Debtors to object to a Claim or Interest for any reason during the pendency of the Chapter 11 Cases, shall affect, prejudice, diminish or impair the rights and legal and equitable defenses of the Debtors, with respect to any Claim or Interest, including, but not limited to, all rights of the Debtors, to contest or defend themselves against such Claims or Interests in any lawful manner or forum when and if such Claim or Interest is sought to be enforced by the Holder thereof.

Section 8.02 Rights of Action. Except as otherwise provided in the Plan or the Confirmation Order, pursuant to section 1123(b)(3) of the Bankruptcy Code, the Debtors or their designee will have the right to enforce and prosecute such Causes of Action against any Entity, that arose before the Effective Date, other than those expressly conveyed, released or compromised as part of or pursuant to the Plan; provided, however, if the Class 9 General Unsecured Claims, votes to accept this Plan and this Plan is confirmed by the Court, then, upon the occurrence of the Effective Date of the Plan, the Debtors, their Estates and the THP, Inc. Board may abandon and choose not to pursue some or all of the Avoidance Actions.

Section 8.03 Setoffs. Except to the extent that any Claim is Allowed, the Debtors, as applicable, may, but shall not be required to, set off against any Claims (and may withhold the payments or distributions to be made pursuant to the Plan in respect of such Claims until such setoff rights are effectuated or resolved between the parties with respect to such Claims) any and all debts, liabilities, Causes of Action and claims of every type and nature whatsoever which the Estates, the Debtors may have against such Creditors, but neither the failure to do so nor the allowance of any such Claims, whether pursuant to the Plan or otherwise, shall constitute a waiver or release by the Debtors of any such claims or Causes of Action the Debtors, may have against such Creditors, and all such claims and Causes of Action which are not expressly released, conveyed or compromised pursuant to the Plan shall be conveyed to the Debtors.

Section 8.04 No Payment or Distribution Pending Allowance. All references to Claims and amounts of Claims refer to the amount of the Claim Allowed by agreement of the Debtors, the Committee and the Holder of such Claim, by operation of law, by Final Order, or by this Plan. Notwithstanding any other provision in the Plan, no payment or distribution shall be made on account of or with respect to any Claim to the extent it is a Disputed Claim unless and until the Disputed Claim becomes an Allowed Claim.

Section 8.05 Objections to Claims. Unless otherwise ordered by the Court after notice and a hearing, the Debtors and the THP, Inc. Board shall have the right, on and after the Effective Date, to File objections to Claims (except those specifically Allowed by this Plan, including those deemed allowed pursuant to Plan Section 10.09) and shall serve a copy of each such objection upon the holder of the Claim to which the objection is made as soon as practicable, but in no event later than the applicable Claims Objection Deadline. The foregoing deadlines may be extended by order of the Court. An objection to any Claim shall be deemed properly served on the Holder thereof if the Debtors or the THP, Inc. Board effects service in any of the following manners: (a) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Federal Rule of Bankruptcy Procedure 7004; (b) by first class mail, postage prepaid, on the signatory on the proof of claim or other representative identified in the proof of claim or any attachment thereto; or (c) by first class mail, postage prepaid, on any counsel that has appeared on the Holder's behalf in the Chapter 11 Cases.

# ARTICLE 9

## CONDITIONS TO CONSUMMATION OF THE PLAN

Section 9.01 Confirmation Order. The Confirmation Order shall not be entered unless and until all conditions to entry of the Confirmation Order have been met.

Section 9.02 Conditions to Effective Date. The Plan shall not be consummated, and the Effective Date shall not occur, unless and until the following conditions have occurred or been duly waived (if waivable) pursuant to Section 9.03 below:

(a) the Bankruptcy Court shall have approved the information contained in the Disclosure Statement as adequate;

(b) the Confirmation Order shall have been entered and shall not be stayed by order of a court of competent jurisdiction;

(c) all conditions precedent to the obligations of the Debtors and the under the Plan have occurred;

(d) the transactions contemplated in the Plan have been or will be consummated on or before the Effective Date;

(e) the Bankruptcy Court shall have entered an order (contemplated to be part of the Confirmation Order) authorizing and directing the Debtors to take all actions necessary or appropriate to enter into, implement, and consummate the documents created, amended, supplemented, modified or adopted in connection with the Plan;

(f) all authorizations, consents and regulatory approvals required, if any, in connection with the Plan's effectiveness shall have been obtained;

(g) the Debtors shall have appointed the Boards and all documents pertinent thereto shall have been executed; and

(h) no order of a court shall have been entered and shall remain in effect restraining the Debtors from consummating the Plan.

Section 9.03 Waiver of Conditions to Consummation. The conditions to consummation in Section 9.02 (other than Sections 9.02(a), (b) and (e)) may be waived at any time by a writing signed by an authorized representative of each of the Debtors and the Committee without notice or order of the Bankruptcy Court or any further action other than proceeding to consummation of the Plan.

Section 9.04 Effect of Failure or Absence of Waiver of Conditions Precedent to the Effective Date of the Plan. In the event that one or more of the conditions specified in Section 9.02 of the Plan have not occurred (or been waived), upon notification submitted by the Debtors and the Committee to the Bankruptcy Court: (a) the Confirmation Order, automatically and

without further order of the Bankruptcy Court, shall be, and shall be deemed, vacated, null and void, with no force or legal effect whatsoever; (b) no distributions under the Plan shall be made; (c) all Property of the Estates shall revest in the Debtors' Estates; (d) the Debtors and all Holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred; and (e) the Debtors' obligations with respect to the Claims and Interests shall remain unchanged and nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Interests by or against the Debtors or any other Person or Entity or to prejudice in any manner the rights of the Debtors or any Person or Entity in any further proceedings involving the Debtors.

## ARTICLE 10

## EFFECTS OF CONFIRMATION

Section 10.01 Discharge. To the fullest extent permitted by applicable law (including, without limitation, section 105 of the Bankruptcy Code), and except as otherwise provided in the Plan (including Plan Section 10.09) or in the Confirmation Order, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims of any nature whatsoever against the Debtors or any of their assets or properties, regardless of whether any Property shall have been distributed or retained pursuant to the Plan on account of such Claims. Upon the Effective Date, and except as expressly contemplated in this Plan, the Debtors, and each of them, shall be deemed discharged and released under section 1141(d)(l)(A) of the Bankruptcy Code from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, debts (as such term is defined in section 101(12) of the Bankruptcy Code), Liens, security interests, and encumbrances of and against all Property of the respective Estates or the Debtors that arose prior to the Effective Date, including without limitation, all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) such Claim has been Allowed pursuant to section 502 of the Bankruptcy Code, or (ii) the Holder of such Claim has voted to accept the Plan. Further, as of the Effective Date, all entities, including, without limitation, all Holders of Claims or Interests, shall be barred and enjoined from asserting against the Debtors, their property or their successors or assigns any other or further Claims, debts, rights, Causes of Action, liabilities or Interests relating to the Debtors based upon any act, omission, transaction or other activity of any nature that occurred prior to the Effective Date, except for those obligations expressly created by, or reserved in, this Plan. In accordance with the foregoing, except as provided in the Plan (including Plan Section 10.09) or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtors and termination of all Interests, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge and termination shall void any judgment obtained against the Debtors, to the extent that such judgment relates to a discharged Claim or terminated Interest.

Section 10.02 Injunction.

(a) Discharged Claims and Terminated Interests. Except as otherwise expressly provided for in the Plan (including Plan Section 10.09) or the Confirmation Order and to the fullest extent authorized or provided by the Bankruptcy Code, including sections 524 and

1141 thereof, the entry of the Confirmation Order shall, provided that the Effective Date occurs, permanently enjoin all Persons that have held, currently hold or may hold a Claim or other debt or liability that is discharged or an Interest or other right of an equity security holder that is Impaired or terminated pursuant to the terms of the Plan from taking any of the following actions against the Debtors, Property of any of the foregoing on account of any such discharged Claims, debts or liabilities or such terminated Interests or rights: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind; (ii) enforcing, levying, attaching, collecting or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree or order; (iii) creating, perfecting or enforcing in any manner, directly or indirectly, any Lien or encumbrance of any kind; (iv) asserting any setoff, offset, right of subrogation or recoupment of any kind, directly or indirectly, against any debt, liability or obligation due to the Debtors; and (v) proceeding in any manner in any place whatsoever, including employing any process, that does not conform to or comply with or is inconsistent with the provisions of the Plan.

(b) Released Claims. As of the Effective Date, except as set forth in the Plan, the Confirmation Order shall constitute an injunction permanently enjoining any Person that has held, currently holds or may hold a Claim, demand, debt, right, Cause of Action or liability that is released pursuant to the Plan from enforcing or attempting to enforce any such Claim, demand, debt, right, Cause of Action or liability against (i) any Debtor, (ii) the Committee, (iii) any Releasee, or (iv) any Exculpated Person, or any of their respective Property, based on, arising from or relating to, in whole or in part, any act, omission, or other occurrence taking place on or prior to the Effective Date with respect to or in any way relating to the Chapter 11 Cases, all of which claims, demands, debts, rights, Causes of Action or liabilities shall be deemed released on and as of the Effective Date; provided, however, that with respect to the former directors, officers and employees of the Debtors, this injunction shall apply only to the enforcement of Claims, demands, debts, rights, Causes of Action or liabilities with respect to which such former directors, officers and employees would be entitled to indemnification from the Debtors under contract or law; and, provided further, however, that this injunction shall not apply to (a) any claims Creditors may assert under the Plan to enforce their rights thereunder to the extent permitted by the Bankruptcy Code or (b) any claims Creditors or other third parties may have against each other, which claims are not related to the Debtors, it being understood, however, that any defenses, offsets or counterclaims of any kind or nature whatsoever which the Debtors may have or assert in respect of any of the claims of the type described in (a) or (b) of this provision are fully preserved.

Section 10.03 Exculpation. None of the Debtors, the Committee, or any Exculpated Person shall have or incur any liability to any Person, including, without limitation, any Holder of a Claim or Interest or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or affiliates or any of their successors or assigns, for any act taken or omission made in connection with, relating to, or arising out of, the Chapter 11 Cases, Filing, negotiating, prosecuting, administering, formulating, implementing, confirming or consummating this Plan, or the Property to be distributed under this Plan, including all activities leading to the promulgation and confirmation of the Plan, the Disclosure Statement (including any information provided or statement made in the Disclosure Statement or omitted therefrom), or any contract, instrument, release or other agreement or document created in connection with or related to the Plan or the administration of the Debtors or these Chapter 11 Cases, provided,

however, that the foregoing exculpation shall not apply to any act of gross negligence, willful misconduct, criminal conduct or acts of intentional fraud.

Section 10.04 Releases.

Releases by Holders of Claims and Interests. Effective as of the Effective Date, and except as otherwise provided in the Plan or the Confirmation Order, to the fullest extent permitted under applicable law, in consideration for the obligations of the Persons set forth below under the Plan and, if applicable, the cash, contracts, releases and other agreements or documents to be delivered in connection with the Plan, each Holder of a Claim or Interest who votes in favor of the Plan, and any Affiliate of any such Holder (as well as any trustee or agent on behalf of each such Holder) shall be deemed to have forever waived, released and discharged (i) the Debtors, (ii) the Committee, and (iii) the Releasees from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities (other than the rights of the Debtors or the Committee to enforce the Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered thereunder), whether for tort, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence, including actions in connection with indebtedness for money borrowed by the Debtors, taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, or the Plan. The releases set forth in this paragraph are effective only as to those creditors who cast a ballot voting to accept the Plan. Creditors who cast a vote to reject the Plan or who do not cast a vote at all are not bound by these release provisions.

Section 10.05 Other Documents and Actions. The Debtors are authorized to execute such documents and take such other action as is necessary to effectuate the transactions provided for in the Plan.

Section 10.06 Term of Injunctions or Stays. Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105(a) or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

Section 10.07 Preservation of Insurance. Except as necessary to be consistent with the Plan, the Plan and the discharge provided herein shall not diminish or impair (a) the enforceability of insurance policies that may cover Claims against the Debtors or any other Person or Entity or (b) the continuation of workers' compensation programs in effect, including self-insurance programs.

Section 10.08 Claims Against Multiple Debtors. All Claims against multiple Debtors based upon a guaranty provided by a Debtor or otherwise, individually or jointly with other Debtors, and/or with non-debtor Entities, to the extent allowed shall be satisfied, discharged and released in the manner provided by the Plan; provided, however, there shall be only a single recovery on account of such Claims and any distribution by one of the Debtors on account of such Claims shall take into account any distribution to be made by other Debtors on account of

such Claims pursuant to the Plan. No holder of a Claim against multiple Debtors shall receive more than 100% on account of such Claim.

Section 10.09 Final Orders to Remain in Effect. All Final Orders entered by the Bankruptcy Court in the Chapter 11 Cases shall remain in effect unless otherwise set forth in this Plan.

## ARTICLE 11

## RETENTION OF JURISDICTION

Section 11.01 Exclusive Jurisdiction of Bankruptcy Court. Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain after the Effective Date exclusive jurisdiction of all matters arising out of, arising in or related to the Chapter 11 Cases to the fullest extent permitted by applicable law, including, without limitation, jurisdiction to:

(a) classify or establish the priority or secured or unsecured status of any Claim (whether Filed before or after the Effective Date and whether or not contingent, Disputed or unliquidated) or resolve any dispute as to the treatment of any Claim pursuant to the Plan;

(b) grant or deny any applications for allowance of compensation or reimbursement of expenses pursuant to sections 330, 331 or 503(b) of the Bankruptcy Code or otherwise provided for in the Plan, for periods ending on or before the Effective Date;

(c) determine and resolve any matters related to the assumption and assignment or rejection of any executory contract or unexpired lease to which any Debtor is a party or with respect to which any Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(d) ensure that all payments due under the Plan and performance of the provisions of the Plan are accomplished as provided herein and resolve any issues relating to distributions to Holders of Allowed Claims pursuant to the provisions of the Plan;

(e) construe, take any action and issue such orders, prior to and following the Confirmation Date and consistent with section 1142 of the Bankruptcy Code, as may be necessary for the enforcement, implementation, execution and consummation of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, including, without limitation, the Disclosure Statement and the Confirmation Order, for the maintenance of the integrity of the Plan in accordance with sections 524 and 1141 of the Bankruptcy Code following consummation;

(f) determine and resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, implementation or enforcement of the Plan (and all Exhibits to the Plan) or the Confirmation Order, including the indemnification and injunction provisions set forth in and contemplated by the Plan or the

Confirmation Order, or any Entity's rights arising under or obligations incurred in connection therewith;

(g) hear any application of the Debtors or the Committee to modify the Plan after the Effective Date pursuant to section 1127 of the Bankruptcy Code and Section 12.04 hereof or modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code and the Plan;

(h) issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

(i) enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(j) determine any other matters that may arise in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order, except as otherwise provided in the Plan;

(k) determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(l) hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Bankruptcy Code;

(m) hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(n) enter one or more Final Decrees closing each of the Chapter 11 Cases;

(o) determine and resolve any and all controversies relating to the rights and obligations of the party disbursing funds in connection with the Chapter 11 Cases;

(p) allow, disallow, determine, liquidate or estimate any Claim, including the compromise, settlement and resolution of any request for payment of any Claim, the resolution of any Objections to the allowance of Claims and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any Objection to such Claim (to the extent permitted under applicable law);

(q) permit the Debtors to the extent provided for in the Plan to recover all assets of the Debtors and Property of their respective Estates, wherever located;

(r) hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar or related matters with respect to the Debtors or the Debtors' respective Estates arising prior to the Effective Date or relating to the period of administration of the Chapter 11 Cases, including, without limitation, matters concerning federal, state and local taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(s) hear and determine any motions, applications, adversary proceedings, contested matters and other litigated matters pending on, Filed or commenced after the Effective Date that may be commenced by the Debtors or the Committee thereafter, including Avoidance Actions, proceedings with respect to the rights of the Debtors to recover Property under sections 542, 543 or 553 of the Bankruptcy Code, or proceedings to otherwise collect to recover on account of any claim or Cause of Action that the Debtors may have had; and

(t) hear any other matter not inconsistent with the Bankruptcy Code.

Section 11.02 Failure of Bankruptcy Court to Exercise Jurisdiction. If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, arising in or related to the Debtors, including with respect to the matters set forth above in Section 11.01 hereof, this Article 11 shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

## ARTICLE 12

## MISCELLANEOUS PROVISIONS

Section 12.01 Binding Effect of Plan. The provisions of the Plan shall be binding upon and inure to the benefit of the Debtors, the Estates, any Holder of any Claim or Interest treated herein or any Person named or referred to in the Plan, and each of their respective heirs, executors, administrators, representatives, predecessors, successors, assigns, agents, officers and directors, and, to the fullest extent permitted under the Bankruptcy Code and other applicable law, each other Person affected by the Plan.

Section 12.02 Withdrawal of the Plan. The Debtors and the Committee reserve the right, at any time prior to Confirmation of the Plan, to withdraw the Plan. If the Plan is withdrawn, the Plan shall be null and void and have no force and effect. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

Section 12.03 Final Order. Except as otherwise expressly provided in the Plan, any requirement in the Plan for a Final Order may be waived by the Debtors and the Committee upon written notice to the Bankruptcy Court. No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

Section 12.04 Modification of the Plan. The Debtors and the Committee may alter, amend or modify the Plan in accordance with section 1127 of the Bankruptcy Code or as otherwise permitted at any time prior to the Confirmation Date. After the Confirmation Date and prior to the substantial consummation of the Plan, and in accordance with the provisions of section 1127(b) of the Bankruptcy Code and the Bankruptcy Rules, the Debtors may, so long as the treatment of Holders of Claims or Interests under the Plan is not adversely affected, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order and any other matters as may be necessary to carry out the purposes and effects of the Plan; provided, however, prior notice of such proceedings shall be served in accordance with Bankruptcy Rules 2002 and 9014.

Section 12.05 Business Days. If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

Section 12.06 Severability. Should the Bankruptcy Court determine, prior to the Confirmation Date, that any provision of the Plan is either illegal on its face or illegal as applied to any Claim or Interest, such provision shall be unenforceable as to all Holders of Claims or Interests or to the specific Holder of such Claim or Interest, as the case may be, as to which such provision is illegal. Unless otherwise determined by the Bankruptcy Court, such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan. The Debtors reserve the right not to proceed with Confirmation or consummation of the Plan if any such ruling occurs.

Section 12.07 Governing Law. EXCEPT TO THE EXTENT THAT THE BANKRUPTCY CODE OR BANKRUPTCY RULES OR OTHER FEDERAL LAWS ARE APPLICABLE, AND SUBJECT TO THE PROVISIONS OF ANY CONTRACT, INSTRUMENT, RELEASE, INDENTURE OR OTHER AGREEMENT OR DOCUMENT ENTERED INTO IN CONNECTION WITH THE PLAN, THE CONSTRUCTION, IMPLEMENTATION AND ENFORCEMENT OF THE PLAN AND ALL RIGHTS AND OBLIGATIONS ARISING UNDER THE PLAN SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE COMMONWEALTH OF PENNSYLVANIA, WITHOUT GIVING EFFECT TO CONFLICTS-OF-LAW PRINCIPLES WHICH WOULD APPLY THE LAW OF A JURISDICTION OTHER THAN THE COMMONWEALTH OF PENNSYLVANIA.

Section 12.08 Dissolution of Committee. On the Effective Date, the Committee shall be automatically dissolved and all of its members, Professionals and agents shall be deemed released of their duties, responsibilities and obligations, and shall be without further duties, responsibilities and authority in connection with the Debtors, the Chapter 11 Cases, the Plan or its implementation.

Section 12.09 Payment of Statutory Fees. All U.S. Trustee's Fee Claims, as determined, if necessary, by the Bankruptcy Court at the hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid on or before the Effective Date by the Debtors.

Section 12.10 Post-Confirmation Operating Reports. The Debtors shall file quarterly operating reports as required by the United States Trustee until such time as a Final Decree or other order is entered under section 350(a) of the Bankruptcy Code closing the Bankruptcy Cases.

Section 12.11 Notices. Any notice required or permitted to be provided under this Plan to the Debtors, or any request for information with respect to the Plan, shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight delivery service, freight prepaid, to be addressed as follows:

TH Properties
345 Main Street
Harleysville, PA 19438
Attn: Timothy P. Hendricks

With a copy to:

Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109
Attn.: Joseph O'Neil, Jr.

With a copy to:

Steven Nelson
c/o The H&K Group
2052 Lucon Road
P.O. Box 196
Skippack, PA 19474

With a copy to:

Paul R. Ober & Associates
234 North Sixth Street
Reading, PA 19601
Attn.: Joseph A. La Flamme

Section 12.12 Filing of Additional Documents. On or before substantial consummation of the Plan, the Debtors and the Committee shall issue, execute, deliver, and File with the Bankruptcy Court or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

Section 12.13 Section 1125 of the Bankruptcy Code.

(a) The Debtors and the Committee have, and upon Confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code; and

(b) The Debtors and the Committee (and each of their respective Affiliates, officers, directors, employees, consultants, agents, advisors, members, attorneys, accountants, financial advisors, other representatives and Professionals), have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, and purchase of the securities offered and sold under the Plan, and are not, and on account of such offer, issuance, sale, solicitation, and/or purchase will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of the securities offered and sold under the Plan.

Section 12.14 Section 1146 Exemption. To the fullest extent permitted under section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan, if any, or the execution, delivery or recording of an instrument of transfer under the Plan, or the revesting, transfer or sale of any real or other Property of or to the Debtors shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee. This exemption shall apply to all homes and properties sold under the Plan after the Effective Date to third parties or transfers pursuant to a deed-in-lieu. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax or similar tax.

Section 12.15 Sales Free and Clear. The sale or transfer of homes and/or properties pursuant to the Plan and/or after the Effective Date of the Plan to third parties or transfers pursuant to a deed-in-lieu shall be free and clear of all liens, claims, interests and encumbrances pursuant to sections 363(b) and/or 1123 of the Bankruptcy Code, with all liens, claims, interests and encumbrances attaching to the proceeds of sale and paid in accordance with the terms of the Plan (including Plan Section 10.09).

Section 12.16 Mechanic's Liens. Other than those Certain Mechanic Lien Holders identified in Class 4 and subject to Plan Section 10.09, all allowed claims for Mechanic's Liens on retained Projects shall be treated as Class 9 General Unsecured Claims. In order to provide for release of such liens in accordance with this Plan, the Debtors or some other party as they so direct shall file a Notice of Release in Accordance with the Confirmed Amended Chapter 11 Plan in substantially the same form as Exhibit E attached hereto in the appropriate Recorder of Deeds Office. Such filing, along with a copy of the Confirmation Order, shall satisfy the requirements of clearing title.

Section 12.17 Time. Unless otherwise specified herein, in computing any period of time prescribed or allowed by the Plan, the day of the act or event from which the designated period begins to run shall not be included. The last day of the period so computed shall be included,

unless it is not a Business Day, in which event the period runs until the end of next succeeding day that is a Business Day. Otherwise, the provisions of Bankruptcy Rule 9006 shall apply.

Section 12.18 No Attorneys' Fees. No attorneys' fees will be paid by the Debtors with respect to any Claim or Interest except as expressly specified herein or by any orders of the Bankruptcy Court.

Section 12.19 No Injunctive Relief. Subject to Plan Section 10.09, no Claim or Interest shall under any circumstances be entitled to specific performance or other injunctive, equitable or other prospective relief.

Section 12.20 Continued Confidentiality Obligations. Pursuant to the terms thereof, members of and advisors to any Committee, any other Holder of a Claim or Interest, and their respective predecessors, successors and assigns shall continue to be obligated and bound by the terms of any confidentiality agreement executed by them in connection with these Chapter 11 Cases or the Debtors, to the extent that such agreement, by its terms, may continue in effect after the Confirmation Date.

Section 12.21 No Admissions or Waivers. Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed an admission or waiver by the Debtors with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of any classification of any Claim or Interest.

Section 12.22 Entire Agreement. The Plan (and all Exhibits to the Plan) sets forth the entire agreement and undertakings relating to the subject matter hereof and supersedes all prior discussions and documents. The Debtors and the Committee shall not be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

Section 12.23 Waiver. The Debtors reserve the right to waive any provision of this Plan to the extent such provision is for the sole benefit of the Debtors and/or their officers or directors.

Section 12.24 Bar Date for Professionals. Applications for compensation for services rendered and reimbursement of expenses incurred by Professionals from the Petition Date through the Effective Date shall be Filed no later than ninety (90) days after the Effective Date or such later date as the Bankruptcy Court approves. Such applications shall be served on: (a) TH Properties, 345 Main Street, Harleysville, PA 19438, Attn: Timothy P. Hendricks; (b) counsel for the Debtors, Joseph O'Neil, Jr., Montgomery, McCracken, Walker & Rhoads, LLP, 123 South Broad Street, Philadelphia, PA 19109; (c) Steven Nelson, Chairperson of the Committee, c/o The H&K Group, 2052 Lucon Road, P.O. Box 196, Skippack, PA 19474; and (d) the Office of the United States Trustee. Applications that are not timely Filed will not be considered by the Court. The Debtors may pay any Professional fees and expenses incurred after the Effective Date without any application to the Bankruptcy Court.

**CONFIRMATION REQUEST**

The Debtors and the Committee hereby request confirmation of the Plan pursuant to section 1129(a) or section 1129(b) of the Bankruptcy Code.

Dated: December 8, 2011

**TH PROPERTIES, L.P.**

By: */s/ Timothy P. Hendricks*
Name: Timothy P. Hendricks
Title: Member

**T.H. PROPERTIES OF NEW JERSEY, L.P.**

By: */s/ Timothy P. Hendricks*
Name: Timothy P. Hendricks
Title: Member

**NORTHGATE DEVELOPMENT COMPANY, L. P.**

By: */s/ Timothy P. Hendricks*
Name: Timothy P. Hendricks
Title: Member

**MORGAN HILL DRIVE, L.P.,**

By: */s/ Timothy P. Hendricks*
Name: Timothy P. Hendricks
Title: Member

**TH PROPERTIES, INC.**

By: */s/ Timothy P. Hendricks*
Name: Timothy P. Hendricks
Title: Member

**TH PROPERTIES, LLC**

By: */s/ Timothy P. Hendricks*
Name: Timothy P. Hendricks
Title: Member

**SWAMP PIKE, LP**

By: */s/ Timothy P. Hendricks*
Name: Timothy P. Hendricks
Title: Member

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By: */s/ Steven Nelson*
Company: Reading Materials, Inc.
Title: Chairperson of the Committee