**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| TH PROPERTIES, L.P., *et al.*[1] | : | Case No. 09-13201 (SR) |
| Debtors. | : | (Jointly Administered) |

**ORDER CONFIRMING THIRD AMENDED**
**JOINT CHAPTER 11 PLAN AS OF DECEMBER 8, 2011**

The above-captioned debtors and debtors in possession (each a "Debtor" and, collectively, the "Debtors") having filed with the Bankruptcy Court the Third Amended Joint Chapter 11 Plan of Reorganization Dated as of December 8, 2011 (the "Plan"),[2] attached hereto as Exhibit A; the Debtors and the Official Committee of Unsecured Creditors (together, the "Plan Proponents") having filed the Second Amended Disclosure Statement with Respect to the Third Amended Joint Chapter 11 Plan Dated as of December 8, 2011 [*Docket No. 2085*], the Debtors having provided notice of a hearing to approve the Disclosure Statement in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules (the "Local Rules") of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of Pennsylvania and order of this Bankruptcy Court; the Bankruptcy Court having held a hearing on December 8, 2011 to determine the adequacy of the Disclosure Statement; the

[1] The Debtors and the last four digits of their taxpayer identification numbers are: TH Properties, L.P. (4545); TH Properties of New Jersey, L.P. (5640); Northgate Development Company, LP (8803); Morgan Hill Drive, LP (4624); TH Properties, Inc. (1947); TH Properties, LLC (7147); and Swamp Pike LP (7841). The principal place of business for the Debtors is 345 Main Street, Harleysville, PA 19438.

[2] Each capitalized term used but not otherwise denned herein has the meaning ascribed thereto in the Plan.

Bankruptcy Court having entered an order dated December 14, 2011 [*Docket No. 2087*] (the "Approval Order") Approving (I) the Disclosure Statement, (II) Procedures for the Solicitation and Tabulation of Votes to Accept or Reject the Plan, and (III) Approving Related Notice and Objection Procedures; the Disclosure Statement having been transmitted to all Holders of Claims in Class 9 (collectively, the "Voting Class") as directed by the Approval Order; the Debtors having provided notice of the Confirmation Hearing to Holders of Claims and Interests as directed by the Approval Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules; the Plan Proponents having filed the Memorandum of Law in Support of Confirmation of the Third Amended Joint Chapter 11 Plan of Reorganization [*Docket No. 2126]* (the "Confirmation Memorandum"); Bond Safe Guard Insurance Company and Lexon Insurance Company having filed a Statement [*Docket No. 2116*] with respect to the Plan; Verizon Communications, Inc. having filed a Limited Objection to the Plan [*Docket No. 2120*]; the Debtors having filed a Response To Statement and Limited Objection to Third Amended Joint Chapter 11 Plan and Reservation of Rights [*Docket No. 2123*] (the "Response"); the Bankruptcy Court having held the Confirmation Hearing on January 19, 2011; upon all of the proceedings in the Chapter 11 Cases before the Bankruptcy Court; after full consideration of: (a) the Voting Agent's Report Regarding the Tabulation of Ballots Accepting or Rejecting the Debtors' Third Amended Chapter 11 Plan (the "Voting Agent Report"), [*Docket No. 2122*] (b) the Confirmation Memorandum; (c) the Lexon Statement and Verizon Limited Objection; (d) the Debtors' Response; and (e) all other evidence proffered or adduced, memoranda and objections filed in connection with, and arguments of counsel made at the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor.

**THE BANKRUPTCY COURT HEREBY DETERMINES, FINDS, ADJUDGES, DECREES AND ORDERS THAT:**

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§157(b)(2), 1334(a)). The Bankruptcy Court has jurisdiction over the Chapter 11 Cases pursuant to sections 157 and 1334 of title 28 of the United States Code. Venue of the Chapter 11 Cases in this district is proper pursuant to sections 1408 and 1409 of title 28 of the United States Code. Confirmation of the Plan is a core proceeding pursuant to section 157(b)(2)(L) of title 28 of the United States Code, and the Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B. Commencement and Joint Administration of the Chapter 11 Cases. On the Petition Date, TH Properties, L.P. ("THLP"), TH Properties of New Jersey ("THPNJ"), Northgate Development Company, LP ("Northgate"), Morgan Hill Drive, LP ("Morgan Hill") and TH Properties, Inc. ("THP Inc.") commenced cases under chapter 11 of the Bankruptcy Code in the Bankruptcy Court. TH Properties, LLC ("THP LLC") filed a voluntary petition under chapter 11 of the Bankruptcy Code on April 20, 2010. This was followed by the filing of the voluntary petitions of Swamp Pike, LP ("Swamp Pike") and Wynstone Development Group, LP ("WDG") on September 14, 2010. Thereafter, on February 10, 2011, an Order was entered dismissing the case filed by WDG. By orders of the Bankruptcy Court, all of the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered under the above-referenced caption pursuant to Bankruptcy Rule 1015. The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

C. Judicial Notice. The Bankruptcy Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court, including, without limitation, all pleadings and other documents filed and orders entered thereon. The Bankruptcy Court also takes judicial notice of all evidence proffered or adduced and all arguments made at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases.

D. Burden of Proof. The Debtors have the burden of proving the elements of section 1129 of the Bankruptcy Code by a preponderance of the evidence, and they have met that burden, as further found and determined herein.

E. Notice; Transmittal and Mailing of Materials.

(1) The Debtors provided to all known holders of Claims and Interests due, adequate and sufficient notice of the Disclosure Statement, the Plan and the Confirmation Hearing, along with the deadlines for voting on and filing objections to the Plan, substantially in accordance with the procedures set forth in the Approval Order, and no other or further notice is or shall be required;

(2) the Debtors transmitted and served the Disclosure Statement, Plan, Ballots and Approval Order in compliance with the Approval Order and the Bankruptcy Rules, and such transmittal and service were adequate and sufficient and no further notice is or shall be required;

(3) all procedures used to distribute the solicitation packages to the voting class were fair and conducted in accordance with the Approval Order, the Bankruptcy Code and the Bankruptcy Rules and all other applicable rules, laws and regulations;

(4) the Debtors provided adequate and sufficient notice of the Confirmation Hearing and other dates described in the Approval Order and the Plan, all in compliance with the Bankruptcy Rules and the Approval Order, and no other or farther notice is or shall be required; and

(5) the filing with the Bankruptcy Court and service of the version of the Plan attached as Exhibit A and the disclosure of any farther modifications to the Plan on the record at the Confirmation Hearing constitute due and sufficient notice of the Plan and all modifications thereto.

F. Voting. The Debtors solicited votes on the Plan after the disclosure of "adequate information" as defined in section 1125 of the Bankruptcy Code. As evidenced by the Voting Agent Report (as amended), votes to accept the Plan have been solicited and tabulated fairly, in good faith and in a manner consistent with the Approval Order, the Bankruptcy Code and the Bankruptcy Rules.

G. Plan Modifications (11 U.S.C. §1127). Subsequent to solicitation of the Plan, the Debtors may make certain non-material modifications to the Plan (the "Plan Modifications") to reflect compromises or other appropriate clarifications. Except as provided for by law, contract or prior order of the Bankruptcy Court, none of the modifications made since the commencement of solicitation of the Plan adversely affects the treatment of any Claim or Interest under the Plan. Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, none of these modifications require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

H. Notice of Plan Modifications. The filing with the Bankruptcy Court of the Plan as modified by the Plan Modifications, if any, and the disclosure of the Plan Modifications on the record at the Confirmation Hearing constitute due and sufficient notice thereof.

I. Deemed Acceptance of Plan. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified by the Plan Modifications, if any. No holder of a Claim or Interest shall be permitted to change its vote as a consequence of any Plan Modifications.

J. Plan Compliance with Bankruptcy Code (11 U.S.C. §1129(a)(1)). The Plan complies with the applicable provisions of the Bankruptcy Code. Accordingly, the Plan satisfies section 1129(a)(l) of the Bankruptcy Code.

K. Proper Classification (11 U.S.C. §§1122 and 1123(a)(1)). In addition to Administrative Claims and Priority Tax Claims that need not be classified, the Plan classifies thirteen (13) Classes (including subclasses) of Claims and Interests. The Claims and Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in each such Class. Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Interests under the Plan. The classifications were not done for any improper purpose and such Classes do not unfairly discriminate between or among Holders of Claims or Interests. Accordingly, the Plan satisfies sections 1122 and 1123(a)(l) of the Bankruptcy Code.

L. Specified Unimpaired Classes (11 U.S.C. §1123(a)(2)). Section 2.03 of the Plan specifies that Claims in Class 1 (Miscellaneous Secured Lender Claims),Class 2 (Secured Lender Claim of TE at the Northgate Phase I Project and the Northgate Phase IIA Project), Class 3

(Secured Lender Claim of First Niagara Bank, a National Banking Association, successor by merger to Harleysville Bank and Trust Company at Coddington View in Upper Pottsgrove Township), Class 4 (Certain Mechanic Lienholders Claims), Class 5 (Miscellaneous Secured Vendor Claim, Class 6 (Secured Claims of Taxing Authorities), Class 7 (Priority Employee Wage & Benefit Claims), Class 8 (Deposit Holder Claims), Class 10 (Limited Partner Interests in the LP Debtors), Class 12 (Interests in the GP Debtor and THP, Inc.) are Unimpaired by the Plan. Accordingly, the Plan satisfies section 1123(a)(2) of the Bankruptcy Code.

M. Specified Treatment of Impaired Classes (11 U.S.C. §1123(a)(3)). Sections 2.04 and 2.05 of the Plan designate Class 9 (General Unsecured Claims), Class 11 (General Partner Interests in the LP Debtors) and Class 13 (Intercompany Claims) as Impaired, and Article 3 of the Plan specifies treatment of all of these Classes of Claims and Interests under the Plan. Accordingly, the Plan satisfies section 1123(a)(3) of the Bankruptcy Code.

N. No Discrimination (11 U.S.C. §1123(a)(4)). The Plan provides for the same treatment by the Plan Proponents for each Claim or Interest in each respective Class, unless the Holder of a Claim or Interest has agreed to a less favorable treatment. Accordingly, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

O. Implementation of Plan (11 U.S.C. §1123(a)(5)). The Plan and the various documents and agreements attached to and described in the Plan provide adequate and proper means for the Plan's implementation. Accordingly, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

P. Designation of Directors and Officers (11 U.S.C. §1123(a)(7)). The Plan contains appropriate provisions with respect to the manner of appointment of the officers and directors of the Reorganized Debtors that are consistent with the interests of Creditors, equity security

holders and public policy in accordance with section 1123(a)(7) of the Bankruptcy Code. Accordingly, the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

Q. Additional Plan Provisions (11 U.S.C. §1123(b)(6)). The Plan's provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code.

R. Bankruptcy Rule 3016(a). The Plan reflects the date it was filed with the Bankruptcy Court and identifies the entities submitting it as plan proponents (the "Plan Proponents"). Accordingly, the Plan satisfies Bankruptcy Rule 3016(a).

S. Compliance with Bankruptcy Code (11 U.S.C. §1129(a)(2)). The Debtors have complied with the applicable provisions of the Bankruptcy Code. Accordingly, the Plan satisfies section 1129(a)(2) of the Bankruptcy Code. Specifically, among other things:

(1) the Debtors are proper debtors under section 109(d) of the Bankruptcy Code;

(2) the Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by order of the Bankruptcy Court; and

(3) the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Approval Order in: (i) transmitting the Disclosure Statement, the Plan and related documents and notices; and (ii) soliciting and tabulating votes on the Plan.

T. Plan Proposed in Good Faith (11 U.S.C. §1129(a)(3)). The Plan Proponents have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Plan Proponents' good faith is evident from the facts and records of the Chapter 11 Cases, the Disclosure Statement and the hearing thereon and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Cases. The

Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates and to effectuate the continuation of the Debtors' businesses.

U. Payments for Services or Costs and Expenses (11 U.S.C. §1129(a)(4)). Any payment made or to be made by any of the Debtors for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable. Accordingly, the Plan satisfies section 1129(a)(4) of the Bankruptcy Code.

V. Directors, Officers and Insiders (11 U.S.C. §1129(a)(5)). The Plan Proponents have complied with section 1129(a)(5) of the Bankruptcy Code. The identity and affiliations of the persons currently proposed to serve as members of the Boards of Directors were disclosed in the Plan, and the appointment to, or continuance in, such positions of such persons is consistent with the interests of holders of Claims against, and Interests in, the Debtors and with public policy. The Plan Proponents have further disclosed that as of the Effective Date that: (1) the THP, Inc. Board of Directors shall consist of five (5) members, including Timothy P. Hendricks, W. Todd Hendricks, two Committee members, and one additional member as mutually agreed upon by each member; and (2) the THP, Inc. Board shall have the responsibility for the management and oversight of the completion and sale of all the Projects.

W. No Rate Changes (11 U.S.C. §1129(a)(6)). Section 1129(a)(6) of the Bankruptcy Code requires that any regulatory commission having jurisdiction over the rates charged by a reorganized debtor in the operation of its business approve any rate change provided for in a plan of reorganization. The Debtors are not subject to regulated rates. Accordingly, the Plan satisfies section 1129(a)(6) of the Bankruptcy Code.

X. Best Interests of Creditors (11 U.S.C. §1129(a)(7)). The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis set forth in Appendix B of the Plan and other evidence proffered or adduced at the Confirmation Hearing: (1) are persuasive and credible; (2) have not been controverted by other evidence; and (3) establish that each Holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

Y. Acceptance by Certain Classes (11 U.S.C. §1129(a)(8)). Classes 1-8, 10 and 12 are each Classes of Unimpaired Claims or Interests that are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Class 9 has voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code. In addition, Classes 11 and 13 are not entitled to receive or retain any property under the Plan and, therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Although section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to Classes 11 and 13, the Plan is confirmable pursuant to sections 1129(a)(7)(ii) and 1129(b) of the Bankruptcy Code with respect to each of Classes 11 and 13. The Plan is fair and equitable and does not discriminate unfairly with respect to such Classes because, under a chapter 7 liquidation, the holders of Class 11 and 13 claims would receive no distributions as of the Effective Date of the Plan. Therefore, under the plan, Classes 11 and 13 are receiving the same treatment they would in a liquidation. Accordingly, the Plan satisfies sections 1129(a)(7)(ii) and 1129(b) of the Bankruptcy Code with respect to such Classes.

Z. Treatment of Administrative, Tax, and Miscellaneous Secured Claims (11 U.S.C. § 1129(a)(8), 11 U.S.C. §1129(a)(9)). The treatment of Administrative Claims and Deposit Holder priority claims pursuant to Sections 3.02, 3.03 and 3.11 of the Plan and the Stipulation annexed hereto and incorporated herein satisfy the requirements of sections 1129(a)(8)(B) and 1129(a)(9)(A) of the Bankruptcy Code. The treatment of Priority Employee Wage & Benefit Claims pursuant to Section 3.10 of the Plan satisfies the requirements of section 1129(a)(9)(B) of the Bankruptcy Code. The treatment of Secured Tax Claims pursuant to Section 3.09 of the Plan renders the requirements of section 1129(a)(9)(D) of the Bankruptcy Code inapplicable to the treatment of Miscellaneous Secured Lender Claims, Certain Mechanics Lienholder Claims and Miscellaneous Secured Vendor Claims pursuant to Sections 3.04, 3.07 and 3.08 of the Plan satisfy the requirements of section 1129(a)(8)(B) of the Bankruptcy Code. Accordingly, the Plan satisfies the requirements of sections 1129(a)(8) and 1129(a)(9) of the Bankruptcy Code.

AA. Acceptance by Impaired Classes (11 U.S.C. §1129(a)(10)). Class 9 is an Impaired Classes and has voted to accept the Plan, without including any acceptance of the Plan by any Insider. As such, there is at least one Class of Claims against the Debtors that is Impaired under the Plan and has accepted the Plan, determined without including any acceptance of the Plan by any Insider. Accordingly, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

BB. Feasibility (11 U.S.C. §1129(a)(11)). The evidence proffered or adduced at the Confirmation Hearing regarding feasibility: (1) is persuasive and credible; (2) has not been controverted by other evidence; and (3) establishes that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors. Accordingly, the Plan satisfies the requirements of section 1129(a)(l1) of the Bankruptcy Code.

CC. Payment of Fees (11 U.S.C. §1129(a)(12)). As provided in Section 12.09 of the Plan, all fees payable pursuant to section 1930(a) of title 28 of the United States Code, as determined by the Bankruptcy Court, have been paid or shall be paid for each quarter on or prior to the Effective Date and the Debtors shall continue to pay such fees as they become due from and after the Effective Date through the closing of the Chapter 11 Cases. Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

DD. Continuation of Retiree Benefits (11 U.S.C. §1129(a)(13)). Section 1129(a)(13) of the Bankruptcy Code does not apply in the Chapter 11 Cases because, as of the Effective Date, the Debtors are not obligated to pay any retiree benefits subject thereto.

EE. Payment of Domestic Support Obligations (11 U.S.C. §1129(a)(14)). Section 1129(a)(14) of the Bankruptcy Code does not apply in the Chapter 11 Cases because the Debtors are not required to pay any domestic support obligations subject thereto.

FF. Objection to the Plan of an Individual (11 U.S.C. §1129(a)(15)). Section 1129(a)(15) of the Bankruptcy Code does not apply in the Chapter 11 Cases because none of the Debtors is an individual.

GG. Transfers of Property (11 U.S.C. §1129(a)(l6)). Section 1129(a)(16) of the Bankruptcy Code does not apply in the Chapter 11 Cases because each of the Debtors is a moneyed, business or commercial corporation.

HH. No Unfair Discrimination; Fair and Equitable (11 U.S.C. §1129(b)). Based upon the evidence proffered or adduced at the Confirmation Hearing, the Disclosure Statement and all other evidence before the Bankruptcy Court, the Plan does not discriminate unfairly and is fair and equitable with respect to Classes 11 and 13, as required by sections 1129(b)(l) and (2) of the Bankruptcy Code. Thus, the Plan may be confirmed notwithstanding the Plan Proponents'

failure to satisfy section 1129(a)(8) of the Bankruptcy Code. Upon confirmation and the occurrence of the Effective Date, the Plan shall be binding upon the members of all Classes, including those of Classes 11 and 13 and the General Partner Interests in the LP Debtors, as well as the Intercompany Claims, shall be extinguished and cancelled.

II. The Plan is Fair and Equitable. The Plan is fair and equitable with respect to Classes 9, 11 and 13. The Plan is premised in part upon the build out of Northgate Phases IV and V and the proceeds from the build out of the Wynstone project-all of which are owned by non-debtor entities controlled by the Hendricks. In exchange for the contribution of the proceeds from the build out of these projects, the Hendricks shall retain certain ownership interests in the Debtors. In addition, the proposed distributions and treatment to Holders of Claims in Classes 1-8, 10 and 12 is either consented to by the holders of such claims and/or they are unimpaired under the Plan. Further, the Plan is fair and equitable with respect to the Interests in Classes 11 and 13, in that no Holder of any Interest in either class would receive any distribution were the Debtors to liquidate on the Effective Date. Therefore, the Plan satisfies section 1129(b)(2)(C)(i) of the Bankruptcy Code.

JJ. Only One Plan (11 U.S.C. §1129(c)). The Plan, as modified, is the only plan of reorganization filed in the Chapter 11 Cases. Accordingly, section 1129(c) of the Bankruptcy Code is inapplicable.

KK. Principal Purpose of the Plan (11 U.S.C. §1129(d)). Section 1129(d) is inapplicable because the transactions under the plan are not for the principal purpose of the Plan, as evidenced by its terms, is not for the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

LL. Good Faith Solicitation (11 U.S.C. §1125(e)). Based on the record before the Bankruptcy Court in the Chapter 11 Cases, the Exculpated Persons have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code. Accordingly, the Exculpated Persons referenced in Section 10.03 of the Plan are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 10.03 of the Plan.

MM. Satisfaction of Confirmation Requirements. Based upon the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

NN. Implementation. All documents and agreements necessary to implement the Plan and all other relevant and necessary documents described in the Plan, subject to any modifications to any such documents that may be agreed to by the Plan Proponents and other parties thereto, have been negotiated in good faith at arm's length, are in the best interests of the Debtors and their Estates, and shall upon execution be valid, binding and enforceable documents and agreements not in conflict with any federal or state law.

OO. Good Faith. The Exculpated Persons will be acting in good faith if they proceed to: (1) consummate the Plan and the agreements, settlements, transactions and transfers contemplated thereby; and (2) take the actions authorized and directed by this Confirmation Order.

PP. Notice of Assumption and Rejection of Executory Contracts and Unexpired Leases. The filing of the Plan and the schedule of contracts to be assumed (Plan Exhibit "A"),

and service of the Confirmation Hearing Notice and notice of the entry of this Confirmation Order constitute adequate notice of the assumption and rejection of executory contracts and unexpired leases pursuant to Article 6 of the Plan (both for contracts and leases that are listed in the schedule of assumed contracts and for contracts and leases rejected by default). Therefore, no other or further notice is required.

QQ. Assumption or Rejection of Executory Contracts and Unexpired Leases. The Debtors have exercised reasonable business judgment in determining whether to assume, assume and assign, reject or allow to expire each of their executory contracts and unexpired leases as set forth in Article 6 of the Plan. Each assumption, assumption and assignment, or rejection of an executory contract or unexpired lease as provided in Article VI of the Plan shall be legal, valid and binding upon the Debtors, their Estates, and all non-Debtor parties to such executory contract or unexpired lease to the same extent as if such assumption, assumption and assignment, or rejection had been effectuated pursuant to an appropriate separate authorizing order of the Bankruptcy Court entered before the Confirmation Date under section 365 of the Bankruptcy Code. The assumption or rejection of certain executory contracts is further clarified in paragraph 18, below.

RR. Adequate Assurance. The Debtors have cured or provided adequate assurance that the Purchaser will cure defaults (if any) under or relating to each of the assumed executory contracts and unexpired leases that are being assumed by the Debtors.

SS. Transfers by Debtors; Vesting of Assets. All transfers of property of the Estates shall be free and clear of all liens, claims, encumbrances and other interests, except as expressly provided in the Plan or this Confirmation Order. Pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all Property of each of the Debtors (excluding property that has been

abandoned pursuant to the Plan or an order of the Bankruptcy Court, or except as otherwise provided for in the Plan) shall vest in the Debtors, free and clear of all liens, claims, encumbrances and other interests, except as expressly provided in the Plan or this Confirmation Order. Such vesting does not constitute a voidable transfer under the Bankruptcy Code or applicable nonbankruptcy law.

TT. Transfer and Development Agreement. The Transfer and Development Agreement ("TDA"), as defined herein, was negotiated, proposed, and entered into by the parties thereto without collusion, in good faith, and from an arm's length bargaining position. There is no insider relationship between New Stream Real Estate, LLC ("NSRE") or its affiliates and the Debtors. The parties to the TDA have not engaged in any conduct that would cause or permit the TDA or any transfer contemplated thereby to be avoided under 11 U.S.C. § 363(n). The contemplated Transfers (as hereinafter defined) have been undertaken by the parties to the TDA at arm's length, without collusion, and the transferees in connection therewith shall acquire the Mortgaged Property (as hereinafter defined) pursuant to the TDA in good faith under 11 U.S.C. § 363(m), and such transferees are and shall be entitled to all of the protections in accordance therewith. The consideration provided pursuant to the TDA for the Transfers is fair and reasonable and constitutes reasonably equivalent value, and the Transfers may not be avoided under 11 U.S.C. § 363(n), or under the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, or any similar laws of any state or jurisdiction whose law is applicable to the Transfers. In connection with the Transfer Out (as hereinafter defined), one or more of the standards set forth in 11 U.S.C. §§ 363(f)(1)-(5) has been satisfied.

UU. Conditions to Confirmation. The conditions to Confirmation set forth in Section 9.01 of the Plan: (1) have been satisfied or waived; or (2) will be satisfied by entry of this Confirmation Order.

VV. Conditions to Consummation. The conditions to the Effective Date are set forth in Section 9.02 of the Plan. Such conditions (other than those in Sections 9.02(a), (b), and (e) of the Plan) may be waived at any time by an authorized representative of each of the Debtors and the Committee without notice or order of the Bankruptcy Court or any further action other than proceeding to consummation of the Plan; provided, however, that in the event the Debtors determine in good faith that any such waiver would constitute a breach of the Debtors' fiduciary duties, the Debtors may seek to prevent any such waiver by seeking an order of the Bankruptcy Court on an expedited basis.

WW. Retention of Jurisdiction. The Bankruptcy Court properly may retain jurisdiction over the matters set forth in Article 11 of the Plan.

XX. Releases and Discharges. The discharge, release, indemnification and exculpation provisions set forth in Article 10 of the Plan are made in exchange for consideration, are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests, are fair, equitable, reasonable, and are integral and necessary elements of the restructuring and resolution of the Chapter 11 Cases in accordance with the Plan. The discharge, release, indemnification and exculpation provisions set forth in Article 10 of the Plan are; (1) the result of a carefully-negotiated good-faith settlement among the Debtors and their major stakeholders; (2) meant to provide relief from future litigation, and the prospect of future litigation, that could have derailed the Debtors' restructuring efforts and possibly resulted in the shutdown and liquidation of their businesses; (3) fair and necessary for successful Plan Confirmation; and (4) accepted by those

Class 9 Claims voting in favor of the Plan. Among other things, and without limitation, the consideration provided under the Plan is adequate and fair consideration in exchange for the provisions set forth in Articles 7 and 10 of the Plan.

YY. Preservation of Causes of Action. It is in the best interests of the Holders of Claims and Interests that all Causes of Action (including Avoidance Actions) that are not expressly released under the Plan be retained and preserved by the Plan Proponents, pursuant to Article 8 of the Plan to maximize the value of the Estates.

## DECREES

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. Confirmation. The Plan is approved and confirmed under section 1129 of the Bankruptcy Code.

2. Objections. For the reasons stated on the record at the Confirmation Hearing, all objections that have not been withdrawn or deemed to be withdrawn at the Confirmation Hearing, waived or settled, and all reservations of rights pertaining to Confirmation of the Plan, are overruled on the merits.

3. Provisions of Plan and Order Nonseverable and Mutually Dependent. The provisions of the Plan, and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

4. Solicitation and Notice. Notice of the Confirmation Hearing complied with the terms of the Approval Order, was appropriate and satisfactory based on the circumstances of the Chapter 11 Cases, and complied with the provisions of the Bankruptcy Code and the Bankruptcy Rules. The solicitation of votes on the Plan complied with the solicitation procedures in the

Approval Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and complied with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

5. Plan Classifications Controlling. The classification of Claims and Interests for purposes of distributions made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots tendered to or returned by Creditors in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for distribution purposes; and (c) shall not be binding on the Plan Proponents.

6. Effects of Confirmation; Immediate Effectiveness; Successors and Assigns. The stay provided by Bankruptcy Rule 3020(e) shall not apply to this Confirmation Order. Immediately upon occurrence of the Effective Date, this Confirmation Order and the terms of the Plan shall be deemed binding upon: (a) the Debtors; (b) all Holders of Claims and Interests, whether or not Impaired under the Plan and whether or not, if Impaired, such Holders accepted the Plan; (c) each Person acquiring Property under the Plan; (d) any other party in interest in the Chapter 11 Cases; (e) any Person making an appearance in the Chapter 11 Cases; and (f) each of the foregoing's respective heirs, successors, assigns, agents, attorneys, affiliates and beneficiaries.

7. Cancellation of Notes and Instruments. Upon the occurrence of the Effective Date, except to the extent otherwise provided in this Confirmation Order or the Plan, all notes, instruments, certificates and other documents evidencing, among other things (a) the prepetition Secured Claims and (b) prepetition General Unsecured Claims against the Debtors shall be cancelled, and the obligations of the Debtors thereunder, and in any way related thereto, shall be

fully satisfied, released and discharged in exchange for the treatment provided under the Plan for Allowed Claims, if any, arising thereunder. Upon the occurrence of the Effective Date, except to the extent otherwise provided in this Confirmation Order or the Plan, any credit agreement, indenture or similar agreement relating to any of the foregoing, shall be deemed to be cancelled, as permitted by section 1123(a)(5)(F) of the Bankruptcy Code, and discharged: (a) with respect to all obligations owed by any Debtor under any such agreement; and (b) in general as to all other parties hereto except to the extent provided herein and in the Plan.

8. Northgate Phases IV and V Build Out and Contributions.

(a) The TDA in substantially the form annexed as Exhibit "B" to the Plan and the terms and conditions contained therein are authorized and approved in all respects, and execution thereof, with such modifications, amendments, or supplementation as do not have a material adverse effect on the Debtors or their estates to which the parties thereto may heretofore or hereafter agree, is hereby authorized, directed, and ratified in all respects.

(b) In accordance with the TDA and pursuant to section 7.01 of the Plan, as of the Effective Date of the Plan or such later date as is set forth in the TDA, the Debtors are hereby authorized and directed to accept a transfer (the "Transfer In") of the Mortgaged Property (as defined in the TDA, including without limitation Northgate Phases IV, V, and VI, together with any and all buildings improvements and fixtures located thereon, and all personal property located thereon) from Keystone Land Acquisitions, Inc. and The Hills at Perkiomen, LP (collectively, the "Transferors"), and to immediately further transfer the Mortgaged Property to NRSE or its designees (the "Transfer Out" and, with the Transfer In, the "Transfers").

(c) The Transfer In shall be under and subject to all liens, claims, and other encumbrances, including, without limitation, the Mortgage (as defined in the TDA). Except for

Permitted Exceptions (as defined in the TDA), the Transfer Out shall be, in accordance with 11 U.S.C. § § 105(a) and 363, free and clear of all liens, claims, interests, encumbrances, obligations, liabilities, demands, guarantees, options, rights, restrictions, contractual commitments, rights of first refusal, rights of setoff, or interests of any kind or nature that have been, are or could be asserted against the Debtors, the Transferors, or any of them, whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise, and any and all rights and claims under any bulk transfer statutes and related laws, including, without limitation, all Claims and Interests (collectively, the "Obligations").

(d) Without limiting in any manner the effect of the other provisions of this Order, all persons and entities that assert liens, encumbrances or any other interest in or against the Mortgaged Property (other than the holders of Permitted Exceptions) shall be, and hereby are, directed to deliver to the Debtors, prior to closing under the TDA, in proper form for filing after such closing, and executed by the appropriate parties, any and all instruments as appropriate to cause the release of such lien, encumbrance, or other interest, and in the event any such persons or entities fail to comply with the direction set forth in this paragraph, then, at the option of NSRE, NSRE either may seek to have such persons or entities held in contempt of this Court or shall be hereby authorized, without the requirement of any further action (including order of this Court), to execute, file, or otherwise record such statements, instruments, releases, and other documents on behalf of such persons or entities releasing such asserted liens, encumbrances, or other interests, or to file, register, or otherwise record a certified copy of this Order, which shall constitute conclusive evidence of the termination or release of such liens, claims, or other

interests. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Transfers as contemplated hereby and by the TDA.

(e) Notwithstanding the Transfers, neither NRSE nor any of its designees, employees, officers, directors, advisors, lenders, affiliates, owners, successors or assigns shall be deemed a successor to the Debtors or the Transferors for any purpose. Without limiting the generality of the foregoing, NRSE and its designees, employees, officers, directors, advisors, lenders, affiliates, owners, successors and assigns shall have no successor or vicarious liabilities with respect to the Obligations, including, but not limited to, under any theory of successor or transferee liability, de facto merger, or substantial continuity.

(f) All transfers, including, without limitation, the Transfers, effected or contemplated under the TDA shall be exempt from any transfer or similar tax in accordance with Bankruptcy Code §1146.

(g) All persons and entities asserting or holding any Obligations against the Debtors, the Transferors, or any of them, or in or with respect to the Mortgaged Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), however arising, shall be and hereby are forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Obligations (other than Permitted Exceptions) against NRSE or any of its designees, employees, officers, directors, advisors, lenders, affiliates, owners, successors and assigns.

(h) The Debtors are hereby authorized to serve as general contractor for the completion of Northgate Phases IV and V pursuant to the terms and conditions set forth in the TDA. All net profits from the sale of homes in Northgate Phases IV and V payable to the

Debtors under the terms of the TDA shall be contributed to the Reorganized Debtors for distribution pursuant to Section 7.12 of the Plan. The contributions of these profits are in exchange for the Hendricks retaining all of their Interests in the Debtors and for the interests being granted in the Debtors' new general partners and shall constitute the New Value Contribution set forth in section 7.01 of the Plan.

9. Build Out of Real Property Owned by the Debtors. The debtors are hereby authorized to continue the build out and development of certain Projects, defined in Section 7.2 of the Plan. These projects shall be developed in according to the Plan and in compliance with the Project Budgets referred to in Section 7.03 of the Plan, with all proceeds distributed according to Section 7.12 of the Plan.

10. Abandoned Projects. Upon the occurrence of the Effective Date, the projects set forth in Section 7.05 of the Plan shall be abandoned, turned over, or otherwise treated according to the aforementioned section of the Plan, subject to the existing liens, claims, interests and encumbrances on each of the Abandoned Projects. Pursuant to Sections 544(d) and 362(c)(1), all of the Abandoned Projects shall no longer be property of the Debtors' bankruptcy estates or subject to the automatic stay. Further, the amount of the mortgage set forth in Section 3.08 of the Plan relating to the Class 5 Secured Vendor Claims of Carroll Engineering Corp. at Melbourne Hill Sewer Plant Property shall reflect a mortgage in the amount of $200,000.00 on this Abandoned Project.

11. Sales Free and Clear. The sale or transfer of homes and/or properties pursuant to the Plan and/or after the Effective Date of the Plan to third parties or transfers pursuant to a deed-in-lieu, including without limitation the transfers of homes and/or properties in the Coddington View Project shall be free and clear of all liens, claims, interests and encumbrances pursuant to

sections 363(b) and/or 1123 of the Bankruptcy Code, with all liens, claims, interests and encumbrances attaching to the proceeds of sale and paid in accordance with the terms of the Plan (including Plan Section 10.09).

12. Mechanic's Liens. Other than those Certain Mechanic Lien Holders identified in Class 4 and subject to Plan Section 10.09, all allowed claims for Mechanic's Liens on retained Projects shall be treated as Class 9 General Unsecured Claims. And the Debtors or their designee is authorized to file a Notice of Release in Accordance with the Confirmed Amended Chapter 11 Plan in substantially the same form as Exhibit "E" attached to the Plan in the appropriate Recorder of Deeds Office. Such filing, along with a copy of the Confirmation Order, shall satisfy the requirements of clearing title.

13. Corporate or Limited Partnership Actions. The entry of this Confirmation Order authorizes the Debtors to take or to cause to be taken all corporate or limited partnership actions necessary or appropriate to consummate and implement the provisions of the Plan prior to, on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court, including, without limitation, the consummation of the transactions contemplated by the Plan. All such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action by the Debtors. On the Effective Date, the appropriate officers and directors of the Debtors are authorized and directed to execute and deliver the agreements, documents and instruments contemplated by the Plan in the name and on behalf of the Debtors to effect the actions detailed herein.

14. Officers and Boards of Directors. The Management Agreement annexed as Exhibit "D" to the Plan and the terms and conditions contained therein are authorized and

approved in all respects. On the occurrence of the Effective Date, pursuant to the Management Agreement, the Debtors are hereby authorized to reconstitute each of their Boards of directors to consist of five (5) members, including Timothy P. Hendricks, W. Todd Hendricks, two Committee members, and one additional member as mutually agreed upon by each member; and Timothy Hendricks, Todd Hendricks, and the Committee, and the THP, Inc. Board shall manage and oversee the Projects. Further, each Reorganized LP Debtor is authorized to take on a new general partner pursuant to section 7.04 of the Plan.

15. Distributions Under the Plan . All distributions under the Plan shall be made in accordance with Article 5 of the Plan.

16. Disputed Claims. The provisions of Article 8 of the Plan, including, without limitation, the provisions governing procedures for resolving Disputed Claims, are fair and reasonable and are approved.

17. Distributions to Holders of Allowed Administrative Claims. Pursuant to Article 3 of the Plan, each Holder of an Allowed Administrative Claim shall receive: (a) the amount of such unpaid Allowed Claim in Cash on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Administrative Claim becomes Allowed, or (iii) a date agreed to by the Debtors and the Committee, as the case may be, and the Holder of such Administrative Claim; (b) such other treatment on such other terms and conditions as may be agreed upon by the Holder of such Claim and the Debtors and the Committee, as the case may be, or as ordered by the Bankruptcy Court. Further, the Stipulation annexed hereto at Exhibit "B" and the terms and conditions contained therein are authorized and approved in all respects and is hereby made a part of this Order.

18. Class 9 Allowed Claims. Unless objected to in accordance with section 8.05 of the Plan, the Class 9 Claims are hereby allowed.

19. Approval of Assumption or Rejection of Executory Contracts and Additional Procedures. Entry of this Confirmation Order shall, subject only to the occurrence of the Effective Date, constitute the approval pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of executory contracts and unexpired leases assumed pursuant to Article 6 of the Plan and the schedule of assumed contracts, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of executory contracts and unexpired leases pursuant to Article 6 of the Plan. The Contracts with Verizon Communications, Inc. (“Verizon”), that are the subject of Verizon’s Limited Objection are to be treated as follows:

(a) With respect to the Barton Ridge Project there is no executory contract and it is hereby deemed removed from Exhibit “A” to the Plan.

(b) The Verizon contract concerning the Cliffside Manor Project shall be assumed, with no cure amount payable.

. (c) The Verizon contract with respect to the Biltmore Estates Project shall be assumed (subject to payment of a cure amount to be agreed upon without further order of the court) or rejected (by written notice provided to counsel to Verizon) within 30 days after the Effective Date. Should Verizon or the Debtors not come to an agreement with respect to the cure amount, each reserves all rights to request a hearing to allow the Bankruptcy Court to adjudicate any such dispute.

20. Inclusiveness. Unless otherwise specified in the Plan or a notice sent to a given party, each executory contract and unexpired lease assumed or rejected under or in accordance with the Plan shall include any and all modifications, amendments, supplements, restatements

and other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed thereon or identified therein, provided that such agreement has not expired pursuant to its terms.

21. Assumption of Executory Contracts and Unexpired Leases. The executory contract and unexpired lease provisions of Article 6 of the Plan are approved. Subject to paragraph 19 above with respect to the Verizon contracts, all executory contracts and unexpired leases that exist between the Debtors and any Person or Entity shall be deemed rejected by the Debtors as of the Effective Date, except for any executory contract or unexpired lease that: (a) has previously been assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court on or prior to the Confirmation Date; or (b) is listed on the schedule of assumed contracts annexed as Plan Exhibit "A." Each of the Rejected Contracts and Leases and any Assumed Contracts shall be assumed or rejected, as applicable, only to the extent that any such contract or lease constitutes an executory contract or unexpired lease. Assumption or rejection of an executory contract or unexpired lease under Section 6 of the Plan does not constitute an admission of the Debtors that such contract or lease is an executory contract or unexpired lease or that the Debtors have any liability hereunder. All executory contracts and unexpired leases assumed hereby or in the Chapter 11 Cases shall be assumed under their present terms at the time of assumption or upon such terms as are agreed to in writing between the applicable Debtor and the counterparty to the executory contract or unexpired lease.

22. Adequate Assurance for Counterparties to Executory Contracts Assumed under the Plan. Subject only to the occurrence of the Effective Date, all counterparties to all Assumed

Contracts and Leases are deemed to have been provided with adequate assurance of future performance pursuant to section 365(f) of the Bankruptcy Code.

23. Cure of Defaults. Subject to paragraph 19 above with respect to the Verizon contracts, all defaults, to the extent they exist with respect to any executory contract, have been cured by the Debtors.

24. Notice to Contract Counterparties. The non-Debtor parties to each of the contracts and leases assumed under the Plan were afforded good and sufficient notice of such assumption and were provided with an opportunity to object and to be heard.

25. Rejection Claims and Bar Date. Claims arising out of the rejection of any executory contract or unexpired lease pursuant to Section 6.01 of the Plan must be filed, no later than twenty (20) days after the Effective Date or thirty (30) days after the entry of an order rejecting such executory contract or unexpired lease. Any Claim not filed within such time period shall be forever barred and shall not be enforceable against the Debtors or their respective Estates or properties.

26. Operation as of the Effective Date. As of the Effective Date, unless otherwise provided in the Plan or this Confirmation Order, the Reorganized Debtor may operate the businesses and may use, acquire and dispose of property and settle and compromise Claims and Interests without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and, in all respects, as if there were no pending cases under any chapter or provision of the Bankruptcy Code.

27. Injunction. Except as otherwise expressly provided for in the Plan or this Confirmation Order and to the fullest extent authorized or provided by the Bankruptcy Code, including sections 524 and 1141 thereof, the entry of this Confirmation Order shall, provided that

the Effective Date occurs, permanently enjoin each Holder of a Claim against any Debtor from, on account of such Claim, seeking or receiving any payment or other distribution from, or seeking recourse against, any of the Debtors' or the Debtors' respective successors or their respective property, except as expressly provided herein. Accordingly, except as otherwise provided herein or in the Plan, including without limitation pursuant to Plan section 10.09, no Holder of a Claim against any Debtor may, on account of such Claim, seek or receive any payment or other distribution from, or seek recourse against, any of the Debtors, the Disbursing Agent or the Debtors' respective successors or their respective property, except that from and after the Confirmation Date, all Persons who have held, hold, or may hold Claims against or Interests in the Debtors are permanently enjoined from taking any of the following actions against the Debtors, or any of their Property on account of such Claims or Interests: (A) commencing or continuing, in any manner or in any place, any action or other proceeding; (B) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (C) creating, perfecting, or enforcing any Lien or encumbrance; and (D) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of the Plan.

28. Released Claims. As of the Effective Date, this Confirmation Order shall constitute an injunction permanently enjoining any Person that has held, currently holds or may hold a Claim, demand, debt, right, Cause of Action or liability that is subject to exculpation under Section 10.03 of the Plan or released pursuant to Section 10.04 of the Plan from enforcing or attempting to enforce any such Claim, demand, debt, right, Cause of Action or liability against any (a) Debtor, (b) Releasee, or (c) Exculpated Person, or any of their respective property, based

on, arising from or relating to, in whole or in part, any act, omission, or other occurrence taking place on or prior to the Effective Date with respect to or in any way relating to the Debtors, the Chapter 11 Cases, the Plan, or the Disclosure Statement all of which claims, demands, debts, rights, or Causes of Action or liabilities shall be deemed released on and as of the Effective Date; provided, however, that this injunction shall not apply to (a) any claims Creditors may assert under the Plan to enforce their rights thereunder to the extent permitted by the Bankruptcy Code or (b) any claims Creditors or other third parties may have against each other that are not related to the Debtors, the Chapter 11 Cases, the Plan, the Disclosure Statement or the Asset Purchase Agreement; it being understood, however, that any defenses, offsets or counterclaims of any kind or nature whatsoever which the Debtors may have or assert in respect of any of the claims of the type described in (a) or (b) of this paragraph are fully preserved. Further, notwithstanding any language to the contrary in the Plan or this Confirmation Order: (i) Bond Safeguard Insurance Company's and Lexon Insurance Company's claims as to any non-Debtor third-parties shall not be subject to the Injunction, Exculpation and Release provisions set forth in Sections 10.02, 10.03 and 10.04 of the Plan; and (ii), the Hendricks are not released or otherwise discharged from their respective obligations to IFIC under that certain Promissory Note executed by the Hendricks in favor of IFIC pursuant to the Stipulation and Agreed Order entered by the Court on May 11, 2011.

29. Term of Injunction or Stays. Unless otherwise provided herein or in the Plan, all injunctions or stays provided for in the Chapter 11 Cases under sections 105(a) or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

30. Exculpation. None of the Debtors or Exculpated Persons shall have or incur any liability to any Person, including, without limitation, any Holder of a Claim or Interest or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or affiliates or any of their successors or assigns, for: (a) any act taken or omission made in connection with, relating to, or arising out of, the Chapter 11 Cases; (b) filing, negotiating, prosecuting, administering, formulating, implementing, confirming or consummating the Plan; or (c) the Property to be distributed under the Plan, including all activities leading to the promulgation and confirmation of the Plan, the Disclosure Statement (including any information provided or statement made in the Disclosure Statement or omitted therefrom), or any contract, instrument, release or other agreement or document created in connection with or related to the Plan or the administration of the Debtors or the Chapter 11 Cases, provided, however, that the foregoing exculpation shall not apply to any act of fraud, gross negligence or willful misconduct.

31. Release by the Debtors. As provided for in Section 10.02(a) of the Plan and subject to Section 10.09 of the Plan, as of the Effective Date, and except as otherwise provided in the Plan or this Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, in their individual capacities and as debtors in possession, will be deemed to have forever released, waived and discharged the Releasees from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights. Causes of Action and liabilities (other than the rights of the Debtors or the Distribution Agent to enforce the Plan and the contracts, instruments, releases, indentures and other agreements or documents delivered thereunder), whether for tort, contract, violations of federal or state securities laws, or otherwise, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or

unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence, including actions in connection with indebtedness for money borrowed by the Debtors, taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, or the Plan.

32. Releases by Holders of Claims and Interests. Effective as of the Effective Date, and except as otherwise provided in the Plan or this Confirmation Order, in consideration for the obligations of the Debtors under the Plan and the payments, contracts, instruments, releases, agreements or documents to be entered into or delivered in connection with the Plan, each Person (excluding any of the Debtors) that has held, currently holds or may hold a Claim or Interest, and any Affiliate of any such Person (as well as any trustee or agent on behalf of each such Person), shall be deemed to have forever waived, released and discharged the Releasees from any and all Claims, obligations, suits, judgments, damages, or rights. Causes of Action and liabilities whatsoever (other than the right to enforce the performance of their respective obligations, if any, to the Debtors or the Distribution Agent under the Plan and the contracts, instruments releases and other agreements delivered under the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, the Plan, the Disclosure Statement or the Asset Purchase Agreement other than Claims or liabilities arising out of or relating to any act or omission that constitutes a failure to perform the duty to act in good faith and where such failure to perform constitutes willful misconduct, gross negligence, or fraud; provided, that this

Confirmation Order shall not release any Person from any Claim or Cause of Action existing as of the Effective Date, based on (x) the Internal Revenue Code or any other domestic state, city or municipal tax code, (y) any liability that the Person may have as an owner or operator of real property after Confirmation under the environmental laws of the United States or any domestic state, city or municipality or (z) any criminal laws of the United States or any domestic state, city or municipality; provided further, however, that Plan Section 10.02(b) shall not release any natural person Releasee under subsection (i) of the defined term Releasees in the Plan from any Claim or Cause of Action asserted against such natural person only if such Claim or Cause of Action was pending as of April 30, 2010 and is covered by insurance, to the extent of such insurance coverage. Notwithstanding any language to the contrary in the Plan or this Confirmation Order: (i) Bond Safeguard Insurance Company's and Lexon Insurance Company's claims as to any non-Debtor third-parties shall not be subject to the Injunction, Exculpation and Release provisions set forth in Sections 10.02, 10.03 and 10.4 of the Plan; and (ii), the Hendricks are not released or otherwise discharged from their respective obligations to IFIC under that certain Promissory Note executed by the Hendricks in favor of IFIC pursuant to the Stipulation and Agreed Order entered by the Court on May 11, 2011. In addition, Bond Safeguard's claims against any Non-Debtor third party are not released pursuant to Section 10.4 of the Plan.

33. Preservation of Insurance. Except as necessary to be consistent with the Plan, the Plan shall not diminish or impair: (a) the enforceability of insurance policies that may cover Claims against the Debtors or any other Person or Entity; or (b) the continuation of workers' compensation programs in effect, including self-insurance programs. No provider of insurance to any Debtor may use (i) any order of the Bankruptcy Court establishing a bar date for filing or otherwise presenting a Claim or a proof of claim or (ii) the failure of any party to file or assert a

Claim or a proof of claim in the Chapter 11 Cases as a defense to providing insurance coverage to or on account of any such Claim.

34. Preservation of Causes of Action. Except to the extent that any Claim is Allowed during the Chapter 11 Cases or expressly by the Plan, nothing, including, but not limited to, the failure of the Debtors to object to a Claim or Interest for any reason during the pendency of the Chapter 11 Cases, shall affect, prejudice, diminish or impair the rights and legal and equitable defenses of the Debtors with respect to any Claim or Interest, including, but not limited to, all rights of the Debtors to contest or defend themselves against such Claims or Interests in any lawful manner or forum when and if such Claim or Interest is sought to be enforced by the Holder thereof.

35. Rights of Action. Except as otherwise provided in the Plan or the Confirmation Order, pursuant to section 1123(b)(3) of the Bankruptcy Code, the Debtors or their designee will have the right to enforce and prosecute such Causes of Action against any Entity, that arose before the Effective Date, other than those expressly conveyed, released or compromised as part of or pursuant to the Plan; provided, however, that if this Plan is confirmed by the Court upon the Class 9 Claimants having voted to accept the Plan, then, upon the occurrence of the Effective Date of the Plan, the Debtors, their Estates and the THP, Inc. Board may abandon and choose not to pursue some or all of the Avoidance Actions.

36. Retention of Jurisdiction. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of this Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction as provided in Article 11 of the Plan over all matters arising out of, arising in or related to, the Chapter 11 Cases and the Plan.

37. Enforceability of Plan Documents. Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan, and, subject to their execution, all Plan-related documents, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

38. Section 1146 Exemption. To the fullest extent permitted under section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any property under the Plan, or the execution, delivery or recording of an instrument of transfer under the Plan, or the revesting, transfer or sale of any real or other Property of or to the Debtors, or the Distribution Agent, shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee. Each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded is ordered and directed to accept such instrument without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax or similar tax.

39. Effectiveness of All Actions. All actions authorized to be taken pursuant to the Plan shall be effective on, prior to, or after the Effective Date pursuant to this Confirmation Order, without farther application to or order of the Bankruptcy Court, or further action by the respective officers, directors or stockholders of the Debtors, and with the effect that such actions had been taken by unanimous action of such officers, directors or stockholders.

40. Approval of Consents. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any

other acts and transactions referred to in or contemplated by the Plan, the Disclosure Statement, instruments or agreements, and any amendments or modifications thereto.

41. Payment of Professionals. Upon occurrence of the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after the Effective Date shall terminate, and the Debtors, or the Disbursing Agent may employ and pay all Professionals in the ordinary course of business without any further notice to, action by or order or approval of the Bankruptcy Court or any other party.

42. Bar Date for Professionals. Applications for compensation for services rendered and reimbursement of expenses incurred by Professionals (a) from the Petition Date through the Effective Date, or (b) at any time during the Chapter 11 Cases, when such compensation is sought pursuant to sections 503(b)(2) through (b)(5) of the Bankruptcy Code, shall be Filed no later than ninety (90) days after the Effective Date or such later date as the Bankruptcy Court approves. Such applications shall be served in accordance with Section 12.24 of the Plan and other orders of the Bankruptcy Court. Applications that are not timely Filed will not be considered by the Bankruptcy Court.

43. Dissolution of Committee. On the Effective Date, the Committee shall be automatically dissolved and all of its members, professionals and agents shall be deemed released of their duties, responsibilities and obligations, and shall be without further duties, responsibilities and authority in connection with the Debtors, the Chapter 11 Cases, the Plan or its implementation.

44. Final Decree. Effective as of the Effective Date, this Confirmation Order shall constitute a final decree with respect to all of the Chapter 11 Cases except for the Chapter 11

Case of TH Properties, L.P, which Chapter 11 Case shall remain open for the purposes set forth in section 11 of the Plan. All other Chapter 11 Cases of the other Debtors shall be deemed closed as of the Effective Date. Notwithstanding the foregoing, on and after the Effective Date, the Bankruptcy Court will retain jurisdiction to resolve disputes as to all Debtors and the Debtors or their designees shall be entitled to prosecute actions with respect to any Debtor; all such actions shall be administered under the caption for TH Properties, L.P., Case No. 09-13201 (SR) (Jointly Administered).

45. Binding Effect. The provisions of the Plan shall be binding upon and inure to the benefit of the Debtors, the Estates, the Distribution Agent, any Holder of any Claim or Interest treated therein or any Person named or referred to in the Plan, and each of their respective heirs, executors, administrators, representatives, predecessors, successors, assigns, agents, officers and directors, and, to the fullest extent permitted under the Bankruptcy Code and other applicable law, each other Person affected by the Plan.

46. Governing Law. Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other federal laws are applicable, and subject to the provisions of any contract, instrument, release or other agreement or document entered into in connection with the Plan, the construction, implementation and enforcement of the Plan and all rights and obligations arising under the Plan shall be governed by, and enforced in accordance with, the laws of the State of Pennsylvania, without giving effect to conflicts of law principles which would apply the law of a jurisdiction other than the State of Pennsylvania.

47. Notice of Entry of Confirmation Order and Effective Date. Pursuant to Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c), the Debtors shall file and serve notice of entry of this Confirmation Order and occurrence of the Effective Date (the "Notice of

Confirmation") on all Holders of Claims and Interests, the United States Trustee for the Eastern District of Pennsylvania and other parties in interest by causing the Notice of Confirmation to be delivered to such parties by first-class mail, postage prepaid, within ten business days after the Effective Date. Such notice is adequate under the particular circumstances and no other or farther notice is necessary.

48. Substantial Consummation. Upon the occurrence of the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code. Debtors shall file and serve a notice of the occurrence of the Effective Date.

49. References to Plan Provisions. The failure to include or specifically describe or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court that the Plan be approved and confirmed in its entirety.

50. Findings of Fact. The determinations, findings, judgments, decrees and orders set forth and incorporated herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law. Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

51. Confirmation Order and Plan Consistent. The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each. Notwithstanding any provision of this Confirmation Order, the liens and interests granted to the H&K Entities pursuant to sections 3.05, 3.07, 3.08 and 10.09 of the Plan

with respect to the Biltmore Estates Project, the Northgate Phase I Project, the Northgate Phase IIA Project and the Northgate Phases II and III Project shall not be altered, extinguished or otherwise modified by this Confirmation Order.

52. Timing of Estate Distributions for Purposes of 28 U.S.C. §1930(a)(6)). The transfers by the Debtors on the Effective Date shall be deemed to be the "distributions" upon which fees owed to the United States Trustee are calculated pursuant to 28 U.S.C. §1930(a)(6) and no subsequent distributions shall be deemed to be "distributions" for purposes of 28 U.S.C. §1930(a)(6).

53. Separate Confirmation Orders. This Confirmation Order is and shall be deemed to be a separate Confirmation Order with respect to each of the Debtors in each Debtor's separate Chapter 11 Cases. The Clerk of Bankruptcy Court is directed to file and docket this Confirmation Order in each Debtor's Chapter 11 Cases.

54. Final Order. This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof. This Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, or otherwise, and the Debtors may take any action authorized under this Order immediately. The automatic stay of 11 U.S.C. § 362(a) shall not apply to and otherwise shall not prevent the exercise or performance by any party of its rights or obligations under the TDA.



Dated: January 20, 2012
Philadelphia, Pennsylvania

THE HONORABLE STEVEN RASLAVICH
CHIEF UNITED STATES BANKRUPTCY JUDGE



2896041v2